RECEIVED
JAN 1 7 2008

530

FILED
JAN 2 5 2008
NORTHERN DISTRICT OF CALIFORNIA

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name KING THEODORE F.
(Last) (First) (Initial)

Prisoner Number V# 30188

Institutional Address SAN QUENTIN STATE PRISON
SAN QUENTIN, CA. 94964

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SI

(PR)

THEODORE FRANK KING
Full Name of Petitioner

Case No.(To be provided by the clerk of court)

vs.

(BPH) BOARD OF PRISON HEARINGS
Name of Respondent
(Warden or jailor)

PETITION FOR A WRIT OF HABEAS CORPUS

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

CASE NOTE; THE STATE COURTS RELINQUISHED ITS JURISDICTION TO HEAR THIS CASE DUE TO THE ORDER IN THE VALDIVIA V. SCHWARZENEGGER INJUNCTION CASE# E.D. Cal. No. S-94-0671 LKK/GGH. (ALSO SEE, ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AS EXHIBIT # P)

THIS PETITION FOR WRIT OF HABEAS CORPUS IS AN APPEAL TO AN ILLEGAL PAROLE BOARD HEARING IN VIOLATION OF MY DUE PROCESS OF LAW RIGHTS, WHICH PREJUDICED ME BY LOSE OF WITNESSES AND TO CONFRONT SAID WITNESS IN A TIMELY MANNER SET FORTH UNDER THE VALDIVIA GUIDELINES AND INJUNCTION.

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition? ONE YEAR FLAT TIME PAROLE VIOLATION GIVEN BY CALIFORNIA BOARD OF PRISON HEARING'S

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

BOARD OF PRISON HEARINGS — SAN QUENTIN STATE PRISON
Court — Location

(b) Case number, if known ______

(c) Date and terms of sentence 9/27/07 - ONE YEAR FLAT TIME PAROLE VIOLATION

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) (Yes) No

Where? SAN QUENTIN STATE PRISON / THEODORE KING # V30188 SAN QUENTIN STATE PRISON SAN QUENTIN, CA. 94964
(Name of Institution) (Address)

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

PAROLE VIOLATION / (1) RESISTING ARREST (938) (2) POSS OF KNIFE (034) (3) POSS OF ~~[illegible]~~ HEROIN FOR SALE (701) (4) POSS OF COCAINE FOR SALE (711)

3. Did you have any of the following?

Arraignment: Yes X No ___ Preliminary Hearing: Yes X No ___ Motion to Suppress: Yes X No ___

4. How did you plead? ALL CHARGES DISMISSED IN SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO (SEE EXHIBIT #J - MINUTES)

Guilty ______ Not Guilty ______ Nolo Contendere ______

Any other plea (specify) MOTION TO SUPRESSS (ALL CHARGES DISMISSED)

5. If you went to trial, what kind of trial did you have? N/A LATE PAROLE REVOCATION HEARING = FINAL DATE WAS 9-27-07 (17 DAYS LATE)

Jury ______ Judge alone ______ Judge alone on a transcript ______

6. Did you testify at your trial? Yes __ No __

7. Did you have an attorney at the following proceedings:

(a) Arraignment Yes __ No __
(b) Preliminary hearing Yes __ No __
(c) Time of plea Yes __ No __
(d) Trial Yes __ No __
(e) Sentencing Yes __ No __
(f) Appeal Yes __ No __
(g) Other post-conviction proceeding Yes __ No __

8. Did you appeal your conviction? Yes X No __ PAROLE VIOLATION

(a) If you did, to what court(s) did you appeal? MARIN COUNTY SUPERIOR COURTS.

Court of Appeal Yes __ No __ ______ (Year) ______ (Result)

Supreme Court of California Yes __ No __ ______ (Year) ______ (Result)

Any other court Yes X No __ MARIN COUNTY SUPERIOR COURT. 12/3/07 RESPONCE (Year) DENIED (Result)

(b) If you appealed, were the grounds the same as those that you are raising in this petition? Yes X No __

(c) Was there an opinion? (Yes) No __

(d) Did you seek permission to file a late appeal under Rule 31(a)? Yes __ (No)

If you did, give the name of the court and the result:

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal? (Yes) ~~No~~

YES

(1) I FILED A PETITION FOR WRIT OF HABEAS CORPUS IN MARIN COUNTY SUPERIOR COURT. CASE NO# SC 156010A

(2) PETITION WAS DENIED ON 12-3-07 (SEE EXHIBIT # P)

(3) DENIAL STATED; DUE TO THE VALDIVIA INJUNCTION, THE FEDERA COURTS RETAIN JURISDILTION TO GRANT THE RELEAF I SOUGHT. THERE FOR STATE COURTS RELINQUISHED JURISDICTION OVER TO FEDERAL COURTS; (SEE EXHIBIT #P Pg#2 LINES #1 THROUGH # 4)

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I. Name of Court MARIN COUNTY SUPERIOR COURT. CASE NO# SC156010A

Type of Proceeding PETITION FOR WRIT OF HABEAS CORPUS

Grounds raised (Be brief but specific):

a. 35 DAY TIME RESTRAINTS NOT MET

b. WITNESSES FAILED TO SHOW FOR LATE HEARING

c.

d.

Result DENIED Date of Result 12/3/07

II. Name of Court

Type of Proceeding

Grounds raised (Be brief but specific):

a.

b.

c.

d.

Result Date of Result

III. Name of Court

Type of Proceeding ______________________________

Grounds raised (Be brief but specific):

a. ______________________________

b. ______________________________

c. ______________________________

d. ______________________________

Result ____________________ Date of Result ______________

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court? Yes __ No __

______________________________

(Name and location of court)

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: (BPH) FAILED TO MEET 35 DAY TIME ~~[illegible]~~ RESTRAINTS FOR PAROLE REVOCATION HEARING, SAID MISCONDUCT

RESULTED IN PREJUDICE, AND DEPRIVED ME OF MY DUE PROCESS OF LAW RIGHT'S SET FORTH UNDER THE VALDIVIA V. SCHWARZENEGGER INJUNCTION; RELIEF SOUGHT IS RELEASE FROM CUSTODY AS REQUIRED BY VALDIVIA INJUNCTION AND DISMISSAL OF ALL CHARGES AND RE-INSTATEMENT OF PAROLE.

Supporting Facts: PLEASE NOTE; ALL STATEMENTS OR FACTS USED IN EXHIBITS ARE HIGHLIGHTED IN PINK HIGHLIGHTER; SEE ATTACHED PAGES #1 EIGHT OF ONE THROUGH #8 OF #6.

Claim Two: WITNESSES FAILED TO SHOW FOR LATE HEARING 9-19-07,

Supporting Facts: SEE ATTACHED PAGES; #8 OF #7 THROUGH #8 OF #8

Claim Three:

Supporting Facts:

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why.

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases: MCRESY .V. BREWER

VACDIVIA .V. SCHWARZENEGGER # CASE NO# E.D. Cal. No. S-94-0671 LKK/GGH IN RE; VALRIE, SUPRA 12, Cal 3d At p.139 SEE; 15 CCR § 2641 (b)

Do you have an attorney for this petition? Yes __ No X

If you do, give the name and address of your attorney:

N/A PRO PER

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on 1/2/08 (Date) Theodore F. King (Signature of Petitioner)

(rev 5/96)

(CLAIM ONE / SUPPORTING FACTS)

THE BOARD OF PRISON HEARINGS FAILED TO MEET THE 35 DAY TIME RESTRAINTS FOR PAROLE REVOCATION HEARING. SAID MISCONDUCT RESULTED IN LOSS OF WITNESSES IN MY OWN DEFENCE AND PREJUDICED MY CASE TO DEPRIVE ME OF DUE PROCESS OF LAW RIGHT'S SET FORTH UNDER THE VALDIVIA V. SCHWARZENEGGER INJUNCTION.

ON 7-3-07 I WAS ARRESTED IN SAN FRANCISCO COUNTY AND A PAROLE HOLD WAS PLACED ON ME AT THIS TIME. (SEE EXHIBIT # D) - ON 7-19-07 I FILED AN OPTIONAL WAIVER AT MY PROBABLE CAUSE HEARING (SEE EXHIBIT # F. Pg # 4 OF 5 AT TOP RIGHT CORNER MARKED "OPTIONALLY WAIVE") DUE TO THESE CRIMINAL CHARGES PENDING.

ON 8-3-07 ALL CRIMINAL CHARGES WHERE DISMISSED THROUGH A MOTION TO SUPRESS HEARING. (SEE EXHIBITS # J & # K MINUTES FROM SAN FRANCISCO SUPERIOR COURT; DISMISSAL, AND POINTS AND AUTHORITIES TO SUPPORT SAID HEARING.)

ON 8-5-07 I REASSERTED MY RIGHTS TO A PAROLE REVOCATION HEARING. (SEE EXHIBIT # I. Pg # 5 OF 5 TOP OBJECTION AND THE DATE NOTED; 8-5-07 AS THE DATE OF REASSERTION AND ACTIVATION OF MY RIGHT TO A TIMELY HEARING WHICH IS 35 DAYS.)

THE DEPUTY COMISSIONER SEEMED TO FEEL THAT THE REASSERTION OF MY RIGHTS TO A TIMELY HEARING HAD NO TIME RESTRAINTS. BUT, IN THE PAROLEES RIGHTS HAND BOOK (SEE EXHIBIT # L. Pg # 25 FIFTH PARAGRAPH) IT CLEARLY STATES (IF THE PAROLEE WAIVES A HEARING PENDING THE RESOLUTION OF CRIMINAL CHARGES, THE TIME FOR CALCULATING THE DELAY DOES NOT START UNTIL THE PAROLEE REASSERTS THE RIGHT TO A HEARING) ALSO SEE; EXHIBIT # I. Pg # 5 OF # 5 FOR DATE

OF ACTIVATION OF OPTIONAL WAIVER WHICH IS 8-5-07 AND REASSERTION OF RIGHT TO A TIMELY HEARING OF WHICH THE BPH FAILED TO MEET. SEE EXHIBIT # J # A # H FOR VERIFICATION OF HEARING DATE AS 9-14-07 WHICH WAS INFACT 40 DAYS TO MY PAROLE REVOCATION HEARING AND IN VIOLATION OF MY DUE PROCESS RIGHTS, WHICH DEPRIVED ME OF MY RIGHT TO A TIMELY HEARING AND THIS DELAY COST ME WITNESSES IN MY OWN DEFFENCE AND PREJUDICED MY INTIRE CASE AT THAT TIME OF 9-14-07

ALSO NOTE THAT IN EXHIBIT # P ORDER DENYING MY PETITION FOR WRIT OF HABEAS CORPUS.

THE COURT DOES NOT DENY THE TIME RESTRAINTS VIOLATIONS, BUT ON Pg # 1 LINES 24 TO 25 STATES THAT THE COMMISSIONER FOUND GOOD CAUSE TO CONTINUE THE HEARING ANOTHER TWO WEEKS BECAUSE THE OFFICER WAS IN COURT ON ANOTHER MATTER, BUT THIS WAS ON 9-14-07 AND THE HEARING WAS ALREADY 5 DAYS OVER DUE.

THE BPH ONLY HAD UNTIL 9-9-07 TO HOLD MY REVOCATION HEARING, AND IF THEYED HAVE SCHEDULED IT IN THE 35 DAY TIME FRAME AS AGREED UPON WITHIN THE VALDIVIA INJUNCTION, MAYBE THERE WITNESS COULD HAVE SHOWEN UP TO MAKE THERE CASE.

ANYTHING AFTER 9-9-07 IS IN VIOLATION OF MY RIGHTS UNDER THE VALDIVIA INJUNCTION AND WARRENTS DISMISSAL OF ALL CHARGES AGAINST ME.

UNDER VALDIVIA V. SCHWARZENEGGER IT CLEARLY STATES (UNDER NO REASON WILL THE

CASE BE HELD PAST 35 DAYS) THE BPH OR THE COURTS GAVE NO REASON AS TO WHY THE HEARING WAS LATE 5 DAYS IN THE FIRST PLACE DID THEY? THEY ONLY GAVE REASON AS TO THE 9-14-07 HEARING DATE THAT THE OFFICER WAS IN COURT. THEY HAD EVERY OPPERTUNIETY TO SCHEDULE MY HEARING IN A TIMELY MANNER BUT REFUSSED.

(ALSO SEE EXHIBIT # C. WHICH IS THE PAROLE REVOCATION HEARING TAPE FROM 9-14-07 WHICH SHOWS I RAISED THESE ISSUES AND THAT THE DEPUTY COMMISSIONER A. SILVER SHOWED PREJUDICE DUE TO THE NATURE OF THE CHARGES WHICH WERE ALL DISMISSED THROUGH A MOTION TO SUPRESS HEARING AS SHOWEN IN EXHIBITS # D & # K # IN SAN FRANCISCO COUNTY SUPERIOR COURT.)

ALSO NOTE ON EXHIBITS # A & # H # THAT THE TARGET DATE FOR MY REVOCATION HEARING WAS 9-12-07 AS NOTED ON THE TOP OF EACH SLIP BY THE DEPUTY COMMISSIONER AND THE DATE OF 9-14-07 WAS IN FACT ALREADY 2 DAYS LATE FOR MY REVOCATION HEARING. THEY GAVE NO REASON FOR SCHEDULEING LATE IN THE FIRST PLACE! THERE WAS INFACT NO GOOD CAUSE SHOWEN FOR THE DELAY ON 9-14-07 SO HOW CAN THEY GIVE GOOD CAUSE FOR A HEARING THATS ALREADY LATE AND IN VIOLATION OF THE 35 DAY TIME FRAME?

ALSO NOTE ON EXHIBIT # B # THAT I ARRIVED AT SAN QUENTIN STATE PRISON ON 8-8-07 AND THIS WAS THE DATE THE 35 DAY TIME RESTRAINTS BEGAN FOR THE SECOND TIME. (SUPPRESSED PAROLE HOLD DATE)

BUT EVEN GIVEN THE 8-8-07 DATE THE BPH FAILED TO MEET THE 35 DAY TIME RESTRAINTS AGREED UPON WITHIN THE VALDIVIA -V- SCHWARZENNEGGER INJUNCTION.

ALSO SEE EXHIBIT #M# VALDIVIA-V- SCHWARZENEGGER FREQUENTLY ASKED QUESTIONS PACKETT, Pg#4 QUESTION #7 WHAT IF MY FINAL REVOCATION WAS LATE? (IT CLEARLY STATES) IF YOU HAVE NOT HAD YOUR FINAL REVOCATION HEARING WITHIN 35 DAYS OF THE PAROLE HOLD, THEN THE DEPUTY COMMISSIONER IS SUPPOSED TO DISMISS THE PAROLE REVOCATION CHARGES, UNLESS HE OR SHE FINDS "GOOD CAUSE" FOR THE DELAY. "GOOD CAUSE" IS ONLY SUPPOSED TO BE FOUND IN EXTRAORDINARY CASES.

THERE WAS NO GOOD CAUSE SHOWEN IN MY CASE BECOUSE THE HEARING WAS SCHEDULED LATE AS THE PAPER WORK SHOWS AND THERE WAS NO EXTRAORDINARY CASE.

HERE ON ONE HAND I'M EXPECTED TO OBAY RULES AND LAWS BUT THE BPH IS BEING ALLOWED TO DO WHATEVER THEY WANT. THE CHARGES SHOULD HAVE BEEN DISMISSED LONG AGO BECOUSE THE BPH SCHEDULED THE HEARING LATE THEMSELFS (FROM 8-5-07 TO 9-9-07) WAS THE 35 TIME FRAME AND I'M BEING FORCED TO LANGUISH IN PRISON ILLEGALY.

THE BPH FAIL TO SHOW ANY REASON AS TO WHY THE HEARING WAS LATE PAST 35 DAY (40 DAYS ON 9-14-07) ONLY ON THE 40th DAY AT A LATE HEARING DID THEY STATE THE OFFICER IS IN COURT

TODAY 9-14-07 ; WHAT ABOUT THE 5 DAY'S PRIOR TO 9-14-07 OR AS EARLY AS 9-9-07 AND EARLYER. THE HEARING WAS TO BE HELD 9-9-07 AND EARLYER (NO LATER) (ALSO SEE EXHIBIT #I# Pg #5 of 5# OBJECTIONS/BASIS FOR RULEING) WHERE THE BPH CLEARLY STATED (OPTIONAL WAIVER NOT SUBJECT TO 35 DAY TIME FRAME) THIS IS NOT GOOD CAUSE BUT STRAIGHT FAILURE TO COMPLY WITH THE VALDIVIA GUIDELINES AND INJUNCTION.

ALSO LISTEN TO EXHIBIT #C# THE HEARING TAPE FROM 9-14-07 WHERE D.C. SILVER STATES, HE'S UNDER THE GUIDELINES OF MORRISSEY V. BREWER AND HAS 60 DAYS, WHEN IN FACT AT THIS PRESENT DATE THE VALDIVIA V. SCHWARZENEGGER INJUNCTION IS THE CONTROLLING CASE LAW IN THIS MATTER.

ALSO SEE EXHIBIT #N# Pg #C OF THE VALDIVIA REMEDAL PLAN POLICY OUTLINE "REVOCATION HEARING" WHICH CLEARLY STATE (THE REVOCATION HEARING WILL BE HELD AT THE EARLIEST POSSIBLE TIME AND IN NO CASE LATER THAN 35 CALENDER DAYS AFTER THE PAROLE HOLD HAS BEEN PLACED.)

AND EXHIBIT #N# IS IN FACT A COPY OF THE VALDIVIA V. SCHWARZENEGGER INJUNCTION. EVEN IF GIVEN THE 8-8-07 DATE OF ~~[illegible]~~ ARIVAL TO SAN QUENTIN STATE PRISON AS THE HOLD DATE AND BEGINING THE 35 DAY TIME RESTRAINTS THE BPH STILL FAILED TO MEET THE GUIDELINES SET FORTH UNDER THE VALDIVIA INJUNCTION. FURTHER MORE EXHIBIT #I# CLEARLY SHOWS 8-5-07 AS THE DATE I REASSERTED MY RIGHT TO A TIMELY HEARING AND MY 35 DAYS BEGAN.

AND THE BPH CAN NOT IN NO WAY SHOW GOOD CAUSE TO A HEARING THATS ALREADY LATE. THERE IS NO GOOD CAUSE FOR SOMETHING THAT WAS SCHEDULED LATE AND WRONG IN THE FIRST PLACE.

THESE DUE PROCESS OF LAW RIGHTS VIOLATIONS INJURED MY RIGHT TO DEFEND MYSELF AND HAVE A HEARING AND CROSS EXAMEN WITNESS IN A TIMELY MANNER AS PERSCRIBED BY LAW. THESE VIOLATIONS PREJUDICED MY CASE AND CAUSED WITNESS TO NOT SHOW UP AND ONCE A HEARING WAS HELD TO LOOSE SOME MEMORIES OF THE CASE.

THE CONTINUED INCARSIRATION OF MYSELF MAKES THESE ACTS ILLEGAL.

SO I PRAY THE COURTS WILL FIND GOOD CAUSE WITHIN THIS PETITION FOR WRIT OF HABEAS CORPUS, TO GRANT MY RELEASE FROM COUSTODY AT THE EARLIEST POSSIBLE TIME AND DATE.

THE DELAY ALSO MADE WITNESSES UNAVAILABLE FOR THE HEAR AS CLEARLY SHOWEN ON EXHIBITS #A & #H THE TARGET DATE WAS ~~[illegible] AND [illegible]~~ 9-12-10 AND 9-14-07 WAS BEYOND LATE.

WE WON'T EVEN GO INTO THE ILLEGAL 9-27-07 HEARING BECAUSE CHAGES SHOULD HAVE BEED DISMISSED ON 9-14-07 — GOOD CAUSE CAN NEVER BE FOUND FOR A HEARING THATS ALREADY SCHEDULED DATE IS LATE.

CLAIM TWO / SUPPORTING FACTS

WITNESSES FAILED TO SHOW FOR LATE HEARING WHICH DENIED ME DIRECT DUE PROCESS OF LAW AND MY RIGHT TO CONFRONT WITNESS IN MY OWN DEFENCE.

ON 7-3-07 I WAS ARRESTED IN SAN FRANCISCO COUNTY ON CRIMINAL CHARGES, A PAROLE HOLD WAS PLACE ON ME AT THIS TIME. SEE EXHIBIT # D) ON 7-19-07 I FILED AN OPTIONAL WAIVER AT MY PROBABLE CAUSE HEARING. SEE EXHIBIT # F # Pg. 4 OF 5 MARKED OPTIONAL WAIVE AT TOP RIGHT HAND CORNER, DUE TO CRIMINAL CHARGES PENDING.

ON 8-3-07 ALL CRIMINAL CHARGES WHERE DISMISSED DUE TO A MOTION TO SUPRESS HEARING (SEE EXHIBITS # J & # K MINUTES FROM SAN FRANCISCO SUPERIOR COURT, DISMISSAL, AND POINTS AND AUTHORITIES TO SUPPORT SAID HEARING)

ON 8-5-07 I REASSERTED MY RIGHTS TO A PAROLE REVOCATION HEARING (SEE EXHIBIT # I # Pg. # 5 OF # 5 TOP OBJECTION AND DATE OF 8-5-07 AS THE DATE OF REASSERTION OF MY RIGHT TO A TIMELY HEARING) AND TO CONFRONT WITNESSES IN MY OWN DEFENCE UNDER DUE PROCESS OF LAW.

PLEASE NOTE THAT ON EXHIBIT # A & # 4 AT THE VERY TOP THAT THE DEPUTY COMMISSIONER PUT THE TARGET DATE OF MY HEARING AS 9-12-07 BUT THEN WENT AHEAD ANY HOW AND SCHEDULED THE HEARING ON 9-14-07 (2 DAYS LATE AND PAST THE TARGET DATE) ON 9-14-07 THE STATES ADVERSE WITNESS FAILED TO SHOW FOR THE REVOCATION HEARING WHICH DENIED ME DIRECT DUE PROCESS OF LAW AND MY RIGHT TO CONFRONT WITNESS IN MY OWN DEFENCE AND IN A TIMELY MANER.

IF THE HEARING HAD BEEN SCHEDULED WITHIN THE 35 DAY TIME FRAME AND BEFORE THE TARGET DATE OF 9-12-07 MAYBE THERE WITNESS COULD AND WOULD HAVE SHOWEN UP TO MAKE THERE CASE.

MY LAWYER CHRISTINE GARCIA TOLD ME BEFORE THE HEARING THAT THERE HAD BEEN (NO WORD) FROM THE WITNESS. AT THIS TIME THE HEARING WAS ALREADY LATE.

AT THE HEARING THE DEPUTY COMMISSIONER SILVA STATED THE OFFICER WAS IN COURT ON 9-14-07 - BUT, THE HEARING WAS ALREADY 5 DAYS LATE AND THERE WAS NO REASON TO THIS DAY GIVEN AS TO WHY THE HEARING WAS LATE. GOOD CAUSE WAS NOT SHOWEN.

THE FACT OF THE MATER WAS THE HEARING WAS ALREADY IN VIOLATION OF MY RIGHTS AND NOT BEING HELD WITHIN 35 DAYS, IN FACT IT WAS 40 DAYS ON 9-14-07 AND 5 DAYS PAST OVER DUE.

GOOD CAUSE WAS NOT SHOWEN FOR THE LATE HEARING AND THE WITNESSES FAILURE TO SHOW ONLY COMPOUNDED MY DUE PROCESS OF LAW RIGHTS VIOLATIONS EVEN MORE.

I AM BEING FORCE TO LANGUISH IN PRISON THROUGH CONTINUED VIOLATIONS OF MY RIGHTS AND DUE PROCESS SET FORTH UNDER THE VALDIVIA INJUNCTION AND I PRAY UPON REVIEW OF THIS PETITION THE COURTS WILL RELEASE ME FROM CUSTODY AND REINSTATE MY PAROLE AT THE EARLYEST TIME AND DATE.

# PRAYER FOR RELIEF

COMES NOW THE PETITIONER, THEODORE F. KING IN PRO SE, WHO IS A LAYMEN TO THE LAW, AND DOING THE BEST OF HIS ABILITY TO FILE THIS PETITION FOR WRIT OF HABEAS CORPUS, AND ALL EXHIBITS AND DOCUMENTS CONTAINED WITHIN.

I PRAY THAT UPON REVIEW OF THIS PETITION, THAT THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, FINDS GOOD CAUSE TO GRANT MY PETITION FOR WRIT OF HABEAS CORPUS, AND TO DISMISS ALL CHARGE'S AGAINST ME, AND TO REINSTATE MY STATUS AS PAROLEE IN ALAMEDA COUNTY AT THE EARLYEST POSSIBLE TIME AND DATE.

I REQUEST THAT ALL ACTION TAKEN AGAINST ME BY THE BPH ON 9-27-07 BE REVERSED AND REMOVED FROM MY CENTRAL FILE AND PAROLEE FILE. THAT I MAYBE STILL BE ELIGABLE FOR RELEASE OF PAROLE AT MY EARLYEST POSSIBLE DATE OF REVIEW.

PETITIONER IS WITHOUT REMEDY SAVE BY WRIT OF HABEAS CORPUS.

WHEREFORE PETITIONER PRAYS THE COURT; (1) ISSUE A WRIT OF HABEAS CORPUS (2) DISMISS ALL CHARGES THE BOARD OF PRISON HEARINGS HAS HELD AGAINST ME AND FOUND ME GUILTY

OF ON 9-27-07, WHEN IN FACT ALL MY VALDIVIA .V. SCHWARZENEGGER INJUNCTION RIGHTS AND DUE PROCESS WAS VIOLATED.

(3) I PRAY THE COURT ORDER MY RELEASE FROM COUSTODY AT THE EARLYEST POSSIBLE TIME AND DATE,

(4) ORDER THE REMOVEL OF ALL DOCUMENTATION OF THIS ACTION FROM MY CENTRAL FILE.

(5) REINSTATE MY PAROLE IN ALAMEDA COUNTY.

(6) REVERSE ALL FINDINGS HELD AGAINST ME ON 9-27-07 IN REGARDS TO THIS PAROLE VIOLATION,

(7) GRANT ANY OTHER FURTHER RELIEF THE COURT DEEM PROPER,

(8) AND APPOINT COUNSEL SHOULD FURTHER PROCEEDINGS BE NESSISARY IN THIS MATER.

RESPECTFULLY SUBMITTED

THEODORE F. KING

DATED: 1/2/08

Theodore F. King

#V30188

FILED
NOV 30 2007
KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. ..., Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MARIN

| | |
|---|---|
| IN THE MATTER OF<br>Theodore F. King<br>V-30188<br>Petitioner,<br>FOR WRIT OF HABEAS CORPUS. | Case No.: SC156010A<br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, an inmate confined at San Quentin Prison, filed a petition for *writ of habeas corpus* with this court on October 22, 2007. Petitioner alleges that his parole hearing was unfairly conducted, in that the time requirements pursuant to *Valdivia v. Schwarzenegger* (E.D. Cal. No. S-94-0671 LKK/GGH) were not met, and that he was denied the opportunity to confront and cross examine a witness against him at the parole revocation hearing. For the reasons stated below, the Petition is denied.

1. Timing Requirements

According to documents submitted by Petitioner, he was arrested on July 3, 2007. He entered an optional waiver, which was withdrawn on August 5, 2007. His hearing was set on September 14, 2007 (40 days after reasserting right to parole revocation hearing). The commissioner at the hearing found good cause to continue the hearing two weeks based on the arresting officer's inability to appear, as the officer was apparently due in court on another matter. Petitioner asserts that since more than 35 days had passed between his withdrawal of the optional waiver and the hearing, he should be released.

In support of his argument, Petitioner cites *Valdivia v. Schwarzenegger* (E.D. Cal. No. S-94-0671 LKK/GGH). The order in the *Valdivia* injunction specifically states that "[t]he Court shall retain jurisdiction to enforce the terms of this Order." Thus, the requested relief must be sought in federal court. Moreover, the terms of the stipulated permanent injunction in *Valdivia* do not provide for relief after a probable cause hearing has been held, regardless of how late the hearing was conducted. Also see *Cross v. Board of Prison Terms,* 2005 WL 3081109, E.D.Cal., November 15, 2005 (NO. CIVS051756FCDDADP). Here, Petitioner has been granted a hearing and has not established how the delay has prejudiced him. Consequently, Petitioner has not asserted a cognizable claim relating to the timing of the parole revocation hearing.

2. Claimed denial of the ability to confront and cross examine adverse witness

Petitioner next claims that he was unable to cross examine the witness called against him at the September 14, 2007 parole revocation hearing. However, according to the tape recording of that hearing, the officer did not testify against him on that date. On September 14, 2007, the case was continued. Presumably, the officer testified at the ultimate hearing two weeks later. Petitioner has failed to present any evidence relating to the ultimate parole revocation hearing. It appears from his prayer for relief that such hearing took place on September 27, 2007. Petitioner has failed to establish that his rights were violated at such hearing. As it appears good cause existed to continue the hearing from September 14, 2007 to September 27, 2007, Petitioner has failed to state a cognizable claim.

The burden is on Petitioner to establish a prima facie case for relief. (see *People v. Romero* (1994) 8 Cal.4th 728, 737; *People v. Duvall* (1995) 9 Cal.4th 464, 474.) "Conclusory allegations made without any explanation of the basis for the allegations doe not warrant relief, let alone an evidentiary hearing." (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) A petition for a writ of habeas corpus must clearly state a request for relief that is cognizable on a petition for a writ of habeas corpus. (See *In re Lawler* (1979) 23 Cal.3d 190, 194.) Here, Petitioner has failed to meet that burden.

//

//

//

Consequently, the petition for *writ of habeas corpus* is denied.

Dated: November 29, 2007

PAUL M. HAAKENSON
Judge of the Superior Court

Cc: Petitioner
Warden
Attorney General

STATE OF CALIFORNIA )
COUNTY OF MARIN )

IN RE: **THEODORE F. KING**

ACTION NO.: **SC156010A**

(PROOF OF SERVICE BY MAIL – 1013A, 2015.5 C.C.P.)

I AM AN EMPLOYEE OF THE SUPERIOR COURT OF MARIN; I AM OVER THE AGE OF EIGHTEEN YEARS AND NOT A PARTY TO THE WITHIN ABOVE-ENTITLED ACTION; MY BUSINESS ADDRESS IS CIVIC CENTER, HALL OF JUSTICE, SAN RAFAEL, CA 94903. ON **November 30, 2007** I SERVED THE WITHIN ***ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS*** IN SAID ACTION TO ALL INTERESTED PARTIES, BY PLACING A TRUE COPY THEREOF ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PREPAID, IN THE UNITED STATES POST OFFICE MAIL BOX AT SAN RAFAEL, CA ADDRESSED AS FOLLOWS:

| | |
|---|---|
| ***THEODORE F. KING***<br>***CDC#: V-30188***<br>***SAN QUENTIN STATE PRISON***<br>***SAN QUENTIN, CA 94974*** | ***WARDEN***<br>***SAN QUENTIN STATE PRISON***<br>***SAN QUENTIN, CA 94974*** |
| | ***ATTORNEY GENERAL***<br>***DEPARTMENT OF JUSTICE***<br>***ATTN: ANYA BINSACCA***<br>***CORRECTIONAL LAW SECTION***<br>***455 GOLDEN GATE AVENUE, 12TH FL.***<br>***SAN FRANCISCO, CA 94102*** |

*I CERTIFY (OR DECLARE), UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.*

DATE: 11/30/07 M Murphy

From; THEODORE FRANKLYO KING # V-30782
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA
94964

Re; RETURN OF EVIDENCE AND EXHIBITS (A) THROUGH (N) PLUSS HEARING TAPE THAT WAS ATTACHED TO PETITION FOR WRIT OF ~~[illegible]~~ HABEAS CORPUS IN CASE NO# SC156010 A.

12/4/07

DEAR CLERK OF THE COURT,

I RECIVED AN ORDER DENYING MY PETITION FOR WRIT OF HABEAS CORPUS # CASE NO# [illegible] ON [illegible].

ATTACHED TO THIS PETITION FOR WRIT OF HABEAS CORPUS, WAS EVIDSNCE AS EXHIBITS (A) THROUGH (N) AND A HEARING CASSATE TAPE FROM MY PAROLE REVOCATION HEARING.

[illegible]

[illegible] APPEAL, AND I ONLY HAD ONE [illegible] OF SAID DOCUMENTS AND HEARING TAPE WHICH IS STILL A PART OF MY CASE AND APPEAL. (ON GOING APPEAL)

I AM REQUESTING THE CLERK OF THE COURT TO PLEASE LOCATE THESE DOCUMENTS AND EXHIBITS, AND THE HEARING TAPE, AND RETURN THEM TO ME AT SAN QUENTIN STATE PRISON AT THE EARLYEST POSSIBLE TIME SO I MAY PURSUE MY CASE IN FEDERAL COURTS? YOUR EFFORTS

AND ASSISTANCE IN THIS MATTER IS GREATLY APPRECIATED.

I WOULD LIKE THE RETURN OF ALL DOCUMENTS AND EXHIBITS (INCLUDEING HEARING TAPE FROM MY PAROLE REVOCATION HEARING) EXHIBITS (A) THROUGH (N) FROM CASE NO# SC 15LUIC A ?

THANK YOU FOR YOUR TIME AND UNDERSTANDING IN THESE MATTERS AND HAPPY HOLIDAYS TO YOU AND YOURS

MINDS BODY & SOUL'S

RESPECTFULLY SUBMITTED
THEODORE FRANKLYN KING

RETURN TO,

THEODORE FRANKLYN KING
#V30188
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA
94964

**MARIN COUNTY SUPERIOR COURT**
**3501 Civic Center Drive – Rm C-10**
**P.O. Box 4988**
**San Rafael, Ca 94912-4988**
**County of Marin**

December 11, 2007

Theodore Franklin King
V-30188
San Quentin State Prison
San Quentin, CA 94974

Case No. SC156010A

Dear Mr. King:

We received your letter (dated December 4, 2007) requesting return of exhibits (A) through (N) plus the Parole Hearing tape from the original Petition for Writ of Habeas Corpus that you submitted. Enclosed please find the documents you requested.

If you have any questions regarding the above, please do not hesitate to contact this office at (415) 499-6225.

Kim Turner,
Court Executive Officer

By: ______________________
Court Processing Specialist II

**MARIN COUNTY SUPERIOR COURT**
**3501 Civic Center Drive – Rm C-10**
**P.O. Box 4988**
**San Rafael, Ca 94912-4988**
**County of Marin**

October 22, 2007

Theodore F. King
V-30188
San Quentin State Prison
San Quentin, CA 94974

Case# SC156010A

Dear Mr. King:

We received your correspondence dated October 15, 2007 requesting to substitute your original petition (filed on October 12, 2007) with a newer version (with Prayer for Relief, Exhibits and a Parole Hearing Tape, etc.) Per your request, we have filed your newer version on October 22, 2007. However, as a reminder, the official file date for this petition will remain the original October 12, 2007 file date.

If you have any questions regarding the above, please do not hesitate to contact this office at (415) 499-6225.

Kim Turner,
Court Executive Officer

By: [signature]
Court Processing Specialist II

MC-275

Name THEODORE, KING

Address SAN QUENTIN STATE PRISON

SAN QUENTIN CA, 94964

CDC or ID Number V# 30188

FILED

OCT 2 2 2007

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Tai, Deputy

MARIN COUNTY SUPERIOR COURT

(Court)

THEODORE KING
Petitioner

vs.

(BPH) OF CALIFORNIA
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. SC156010 A

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**
- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.
- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.
- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the Judicial Council of California MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.; Cal. Rules of Court, rule 60(a)

American LegalNet, Inc. www.USCourtForms.com

MC-275

**This petition concerns:**

- [ ] A conviction
- [x] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other *(specify)*: ______

1. Your name: THEODORE KING
2. Where are you incarcerated? SAN QUENTIN STATE PRISON
3. Why are you in custody? [x] Criminal Conviction [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
AUTO BURGLARY / PAROLE VIOLATION

b. Penal or other code sections: 459 / 664 / 10851 (A)

c. Name and location of sentencing or committing court: HAYWARD SUPERIOR COURT
24405 AMADOR St. ROOM #104 HAYWARD CA, 94544

d. Case number: H-34762

e. Date convicted or committed: 3-08-04

f. Date sentenced: 3-08-04

g. Length of sentence: 4 YEARS AT 80%

h. When do you expect to be released? ? UNKNOWEN

i. Were you represented by counsel in the trial court? [x] Yes. [ ] No. If yes, state the attorney's name and address:

4. What was the LAST plea you entered? *(check one)*

[ ] Not guilty [ ] Guilty [x] Nolo Contendere [ ] Other: ______

5. If you pleaded not guilty, what kind of trial did you have?

[ ] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

(6TH) FAILED TO MEET 35 DAY TIME RESTRAINTS FOR PAROLEE REVOCATION HEARING, SAID MISCONDUCT RESULTED IN PREJUDICE AND DEPRIVED ME OF DUE PROCESS OF LAW RIGHTS SET FORTH UNDER VALDIVIA V. SCHWARZENEGGER INJUNCTION, RELIEF SOUGHT; RELEASE FROM CUSTODY AS REQUIRED BY VALDIVIA INJUNCTION AND DISMISSAL OF ALL CHARGES AND RE-INSTATEMENT OF PAROLE.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

PLEASE NOTE; ALL STATEMENTS OR FACTS USED IN EXHIBITS ARE HIGHLIGHTED IN PINK HIGHLIGHTER. ON 7-3-07 I WAS ARRESTED IN SAN FRANCISCO COUNTY CALIFORNIA ON CRIMINAL CHARGES AND A PAROLEE HOLD WAS PLACED ON ME AT THIS ~~TIME~~ TIME. (SEE EXHIBIT (D)) - ON 7-19-07 I FILED AN OPTIONAL WAIVER AT MY PROBABLE CAUSE HEARING (SEE EXHIBIT (F) PG.#4 OF #5 AT TOP RIGHT CORNER MARKED "OPTIONALLY WAIVE") DUE TO THESE CRIMINAL CHARGES PENDING. ON 8-3-07 ALL CRIMINAL CHARGES WHERE DISMISSED THROUGH MOTION TO SUPRESS HEARING. (SEE EXHIBITS (J) & (K) MINUTES FROM SAN FRANCISCO SUPERIOR COURT, DISMISSAL, AND POINTS AND AUTHORITIES TO SUPPORT SAID HEARING) ON 8-5-07 I REASSERTED MY RIGHTS TO A PAROLEE REVOCATION HEARING (SEE EXHIBIT (I) PG.#5 OF #5 TOP OBJECTION AND THE DATE OF 8-5-07 NOTED AS THE DATE OF REASSERTION AND ACTIVATION OF MY RIGHT TO A TIMELY HEARING WHICH IS 35 DAY'S. SEE ATTACED PAGES ONE OF THREE # TWO OF THREE AND THREE OF THREE.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

SEE; VALDIVIA V. SCHWARZENEGGER # CASE NO# CIV. S-94-0671 LKK/GGH

SEE: In re VALRIE, Supra, 12 Cal.3d at p. 139

SEE: 15 CCR § 2641 (b)

7. **Ground 2 or Ground** ______ *(if applicable):* **MC-275**

WITNESSES FAILED TO SHOW FOR LATE HEARING WHICH DENIED ME DIRECT DUE PROCESS OF LAW AND MY RIGHT TO CONFRONT WITNESSES IN MY OWN DEFENCE; RELIEF SOUGHT IS DISMISSAL OF ALL CHARGES AND RELEASE FROM COUSTODY; REINSTATEMENT OF PAROLEE

a. Supporting facts:

ON 7-3-07 I WAS ARRESTED IN SAN FRANCISCO CALIFORNIA ON CRIMINAL CHARGES AND A PAROLEE HOLD WAS PLACED. (SEE EXHIBIT (D)) ON 7-19-07 I FILED AN OPTIONAL WAIVER AT MY PROBABLE CAUSE HEARING (SEE EXHIBIT (F) Pg. 4 OF 5 AT TOP RIGHT CORNER MARKED "OPTIONALLY WAIVE" DUE TO THESE CRIMINAL CHARGES PENDING. ON ~~[illegible]~~ 8-3-07 ALL CRIMINAL CHARGES WHERE DISMISSED THROUGH A MOTION TO SUPRESS HEARING. (SEE EXHIBITS (J) & (K) MINUTES FROM SAN FRANCISCO SUPERIOR COURT, DISMISSAL, AND POINTS AND AUTHORITIES TO SUPPORT SAID HEARING) ON 8-5-07 I ~~[illegible]~~ REASSERTED MY RIGHTS TO A PAROLEE REVOCATION HEARING. (SEE EXHIBIT (I) Pg. #5 OF #5 TOP OBJECTION AND THE DATE OF 8-5-07 NOTED AS THE DATE OF REASSERTION AND ACTIVATION OF MY RIGHT TO A TIMELY HEARING A WELL AS MY RIGHT TO CONFRONT WITNESSES IN MY OWN DEFENCE UNDER DUE PROCESS OF LAW. PLEASE NOTE THAT ON EXHIBIT (A) & (H) VERY TOP THAT THE DEPUTY COMISSIONER PUT THE TARGET DATE OF MY HEARING AS 9-12-07 BUT THEN WENT AHEAD ANY HOW TO SCHEDULE THE HEARING ON 9-14-07 (2 DAYS PAST THE TARGET DATE) ON 9-14-07 THE STATES ADVERSE WITNESS FAILED TO SHOW FOR THE REVOCATION HEARING WHICH DENIED ME

= SEE ATTACHE PAGE# ONE OF FOUR =

b. Supporting cases, rules, or other authority:

VALDIVIA V. SCHWARZENEGGER (E.D. Cal. 2002) 206 F. Supp 2d 1068

PEOPLE V. ARREOLA, Supra 7 CAL 4th at p. 1154; PEOPLE V. VICKERS, supra 8 Cal. 3d at p. 459

Gholston V. JONES (11th Cir 1988) 848 F.2d 1156.

in re Carroll, supra, 80 Cal. App. 3d at pp. 34-35

UNITED STATES V. Comito (9th Cir. 1999) 177 F.3d 1166

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☑ No. If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   ______________________________

   b. Result ______________________________ c. Date of decision: ______________

   d. Case number or citation of opinion, if known: ______________________________

   e. Issues raised: (1) ______________________________

   (2) ______________________________

   (3) ______________________________

   f. Were you represented by counsel on appeal? ☐ Yes. ☑ No. If yes, state the attorney's name and address, if known:

   ______________________________

9. Did you seek review in the California Supreme Court? ☐ Yes ☑ No. If yes, give the following information:

   a. Result ______________________________ b. Date of decision: ______________

   c. Case number or citation of opinion, if known: ______________________________

   d. Issues raised: (1) ______________________________

   (2) ______________________________

   (3) ______________________________

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    ______________________________

    ______________________________

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    ______________________________

    ______________________________

    ______________________________

    ______________________________

    ______________________________

    ______________________________

    ______________________________

    ______________________________

    b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.*

**MC-275**

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: ______

(2) Nature of proceeding (for example, "habeas corpus petition"): ______

(3) Issues raised: (a) ______

(b) ______

(4) Result *(Attach order or explain why unavailable):* ______

(5) Date of decision: ______

b. (1) Name of court: ______

(2) Nature of proceeding: ______

(3) Issues raised: (a) ______

(b) ______

(4) Result *(Attach order or explain why unavailable):* ______

(5) Date of decision: ______

c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

______

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

______

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

______

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

______

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

______

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 10/12/07

▶ Theodore J. King
(SIGNATURE OF PETITIONER)

THE DEPUTY COMMISSIONER SEEMED TO FEEL THAT THE REASSERTING OF MY RIGHTS TO A TIMELY HEARING HAD NO TIME RESTRAINTS.

BUT IN THE PAROLEE'S RIGHTS HAND BOOK (SEE EXHIBIT (L) Pg.# 25 FIFTH PARAGRAPH) IT CLEARLY STATES (IF THE PAROLEE WAIVES A HEARING PENDING RESOLUTION OF CRIMINAL CHARGES, THE TIME FOR CALCULATING THE DELAY DOES NOT START UNTIL THE PAROLEE REASSERTS THE RIGHT TO A HEARING) SEE EXHIBIT (I) Pg.# 5 OF #5 FOR DATE OF ACTIVATION OF OPTIONAL WAIVER WHICH IS 8-5-07 AND REASSERTION OF RIGHT TO A TIMELY HEARING OF WHICH THE BPH FAILED TO MEET. (SEE EXHIBIT (I) (A) AND (H) FOR VERIFICATION OF HEARING DATE 9-14-07) WHICH WAS IN FACT 40 DAYS TO MY PAROLEE REVOCATION HEARING AND IN VIOLATION OF MY DUE PROCESS RIGHTS, WHICH DEPRIVED ME OF MY RIGHT TO A TIMELY HEARING AND WITNESSES IN MY DEFENCE AT THAT TIME OF 9-14-07. (ALSO SEE EXHIBIT (C) WHICH IS THE PAROLEE REVOCATION HEARING TAPE FROM 9-14-07 WHICH CLEARLY SHOWS I RAISED THESE ISSUES AND THAT THE DEPUTY COMMISSIONER A. SILVER SHOWED PREJUDICE DUE TO THE NATURE AND SERIOUSNESS OF THE CHARGES WHICH WHERE ALL DISMISSED THROUGH A MOTION TO SUPPRESS HEARING AS SHOWN IN EXHIBITS (J) & (K) IN SAN FRANCISCO COUNTY SUPERIOR COURT.)

ALSO NOTE ON EXHIBITS (A) & (H) THAT THE TARGET DATE FOR MY REVOCATION HEARING WAS 9-12-07 AS NOTED ON THE TOP OF EACH SLIP BY THE D.C. AND THE DATE OF 9-14-07 WAS IN FACT ALREADY 2 DAYS LATE FOR REVOCATION.

ALSO NOTE ON EXHIBIT (B) THAT I ARRIVED AT SAN QUENTIN STATE PRISON ON 8-8-07 AND THIS WAS THE DATE THE 35 DAY TIME RESTRAINTS BEGAN FOR THE SECOND TIME (SUPPOSED PAROLEE HOLD DATE) BUT EVEN WITH THE 8-8-07 DATE THE BPH FAILED TO MEET THE 35 DAY TIME RESTRAINT AGREED UPON WITHIN THE VALDIVIA V.

SCHWARZENEGGER INJUNCTION.

ALSO SEE EXHIBIT (M) VALDIVIA V. SCHWARZENEGGER FREQUENTLY ASKED QUESTIONS PACKET, Pg. #4 QUESTION #7, (WHAT IF MY FINAL REVOCATION WAS LATE?) THE BPH FAILED TO SHOW GOOD CAUSE OF WHY THE HEARING WAS LATE (SEE EXHIBIT (I) Pg. #5 OF #5; OBJECTIONS/BASIS FOR RULING) WHERE THE BPH CLEARLY STATED (OPTIONAL WAIVER ACTIVATION NOT SUBJECT TO 35 DAY TIME FRAME) THIS IS NOT GOOD CAUSE BUT STRAGHT FAILURE TO COMPLY WITH THE VALDIVIA GUIDELINES AND INJUNCTION.

ALSO LISTEN TO EXHIBIT (C) (THE HEARING TAPE FROM 9-14-07) WHERE D.C. SILVER STATE'S, HE'S UNDER THE GUIDELINES OF MORRISSEY V. BREWER AND HAS 60 DAYS WHEN INFACT AT THIS PRESENT DATE THE VALDIVIA V. SCHWARZENEGGER INJUNCTION IS THE CONTROLLING CASE LAW IN THIS MATTER.

ALSO SEE EXHIBIT (N) Pg. #6 OF THE VALDIVIA REMEDAL PLAN POLICY OUTLINE "REVOCATION HEARING" WHICH CLEARLY STATES (THE REVOCATION HEARING WILL BE HELD AT THE EARLIEST POSSIBLE TIME AND IN NO CASE LATER THEN 35 CALENDER DAYS AFTER PAROLEE HOLD HAS BEEN PLACED) AND EXHIBIT (N) IS IN FACT A COPY OF THE VALDIVIA V. SCHWARZENEGGER INJUNCTION. EVEN IF GIVEN THE 8-8-07 DATE OF ARIVAL TO SAN QUENTIN STATE PRISON AS THE HOLD DATE AND BEGINING THE 35 DAY TIME RESTRAINTS THE BPH STILL FAILED TO MEET THE GUIDELINES SET FORTH UNDER THE VALDIVIA INJUNCTION. FURTHER MORE EXHIBIT (I) CLEARLY SHOWS 8-5-07 AS THE DATE I REASSERTED MY RIGHT TO A TIMELY HEARING AND MY 35 DAYS BEGAN.

THESE DUE PROCESS OF LAW RIGHTS VIOLATIONS INJURED MY RIGHT TO DEFEND MYSELF AND HAVE A HEARING AND CROSS EXAMEN WITNESSES IN A TIMELY MANNER AS PERSCRIBE BY LAW.

AND THE CONTINUED INCARSIRATION OF MYSELF MAKES THESE ACTS ILLEGAL.

SO I PRAY THE COURT WILL RELEASE ME FROM CUSTODY UPON REVIEW OF THIS PETITION AND FACTS PROVEN WITHIN.

THE DELAY ALSO MADE WITNESSES UNAVAILABLE FOR THE HEARING AS CLEARLY SHOWEN ON EXHIBITS (A) & (H) THE TARGET DATE WAS 9-12-07 AND 9-14-07 WAS BEYOND LATE.

DIRECT DUE PROCESS OF LAW AND MY RIGHT TO CONFRONT WITNESSES IN MY OWN DEFENCE AND IN A TIMELY MANNER.

IF THE HEARING HAD BEEN SCHEDULED WITHIN THE 35 DAY TIME FRAME BEFORE THE TARGET DATE OF 9-20 MAYBE THERE WITNESS COULD AND WOULD HAVE SHOWEN TO MAKE THERE CASE.

MY LAWYER CHRISTINE GARCIA TOLD ME BEFORE THE HEARING THERE HAD BEEN (NO WORD) FROM THE WITNESSES.

AT THE HEARING THE DEPUTY COMISSIONER SILVA STATED THE OFFICER WAS IN COURT ON 9-19-07.

BUT THE FACT OF THE MATTER WAS THE HEARING WAS ALREADY IN VIOLATION OF MY RIGHTS AND NOT BEING HELD WITHIN 35 DAY'S.

IN FACT IT WAS 40 DAYS ON 9-19-07 AND 5 DAY'S PAST OVER DUE.

GOOD CAUSE WAS NOT SHOWEN FOR THE LATE HEARING AND THE WITNESSES FAILURE TO SHOW ONLY COMPOUNDED MY DUE PROCESS OF RIGHTS VIOLATIONS EVEN MORE.

I AM BEING FORCE TO LANGUISH IN PRISON THROUGH CONTINUED VIOLATIONS OF MY DUE PROCESS RIGHTS SET FORTH UNDER THE VALDIVIA INJUNCTION AND I PRAY UPON REVIEW OF THIS PETITION THE COURTS WILL RELEASE ME FROM CUSTODY AND REINSTATE MY PAROLEE.

(ONE OF FOUR)

# PRAYER FOR RELIEF

COMES NOW THE PETITIONER, THEODORE KING IN PRO SE, WHO IS A LAYMEN TO THE LAW AND DOING THE BEST OF HIS ABILITY TO FILE THIS PETITION FOR WRIT OF ~~HEA~~ HABEAS CORPUS, AND ALL EXHIBITS AND DOCUMENT'S CONTAINED WITHIN.

I PRAY THAT UPON REVIEW OF THIS PETITION, THE SUPERIOR COURT OF MARIN COUNTY, FINDS GOOD CAUSE TO DISMISS ALL CHARGES AGAINST ME, AND TO REINSTATE MY STATUS OF PAROLEE IN ALAMEDA COUNTY AT THE EARLYEST POSSIBLE TIME AND DATE.

I REQUEST THAT ALL ACTION TAKEN AGAINST ME BY THE (BPH) BE REVERSED AND REMOVED FROM MY PAROLEE FILE SO I MAYBE STILL ELIGABLE FOR RELEASE OF PAROLEE AT MY EARLYEST POSSIBLE DATE OF REVIEW.

PETITIONER IS WITHOUT REMEDY SAVE BY WRIT OF HABEAS CORPUS.

WHEREFORE, PETITIONER PRAYS THE COURT;
(1) ISSUE A WRIT OF HABEAS CORPUS (2) DISMISS ALL CHARGES THE BOARD OF PRISON HEARINGS HAS HELD AGAINST ME AND FOUND ME GUILTY OF ON 9-27-07, WHEN IN FACT ALL MY VALDIVIA V. SCHWARZENEGGER INJUNCTION RIGHTS

AND DUE PROCESS WAS VIOLATED.

(3) I PRAY THE COURT ORDER MY RELEASE FROM CUSTODY AT THE EARLIEST POSSIBLE TIME AND DATE.

(4) ~~REMOVE~~ ORDER THE REMOVEL OF ALL DOCUMENTATION OF THIS ACTION FROM MY CENTRAL FILE.

(5) REINSTATE MY PAROLEE IN ALAMEDA COUNTY.

(6) REVERSE ALL FINDING'S HELD AGAINST ME ON 9-27-07. IN REGARD'S TO THIS PAROLEE VIOLATION.

(7) GRANT ANY OTHER FURTHER RELIEF THE COURT DEEMS PROPER.

(8) AND APPOINT COUNSEL SHOULD FURTHER PROCEEDINGS BE NESSISARRY IN THIS MATTER

DATED; 10-12-07

RESPECTFULLY SUBMITTED

Theodore F. King

THEODORE F. KING

# V30188

EXHIBIT

STATE OF CALIFORNIA
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

| DISTRIBUTION | | | |
|---|---|---|---|
| WHITE | CENTRAL FILE | CANARY | WARDEN |
| BLUE | INMATE (2ND COPY) | PINK | HEALTH CARE MGR |
| GREEN | ASU | GOLDENROD | INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| KING | V-30188 |

## REASON(S) FOR PLACEMENT (*PART A*)

- [X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
- [ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
- [X] ENDANGERS INSTITUTION SECURITY
- [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON (S) FOR PLACEMENT:

On Wednesday, August 08, 2007, you arrived from San Francisco County as a Parole Violator Returned to Custody. It is noted in OBIS that you paroled from S.C.C. Administrative Segregation on 10/22/06. During your initial interview with R&R Staff, you stated you were housed in Administrative Segregation due to being involved in a mutual combat with another Native American inmate. You stated you had been released from Administrative Segregation prior to paroling in October of 2006. You are being placed on Administrative Segregation status and you will remain on Administrative Segregation status pending review by the Institutional Classification Committee (I.C.C.), who will determine your appropriate program and housing needs. As a result of this placement your credit earning, custody level, privilege group, and visiting status are subject to change. Correctional Lieutenant D. Dorsey is ordering this Administrative Segregation Placement. It is noted that you are not a participant in the Mental Health Service Delivery System at this time.

CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 8/8/2007 | D. DORSEY | [signature] | LIEUTENANT |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 8/8/2007 | 1310 | R. SALINAS | [signature] | SERGEANT |

| [ ] INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| | [signature] | V# 30188 |

## ADMINISTRATIVE REVIEW (*PART B*)

*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

### STAFF ASSISTANT (SA)

| STAFF ASSISTANT NAME | TITLE |
|---|---|
| | |

IS THIS INMATE:

- LITERATE? [ ] YES [ ] NO
- FLUENT IN ENGLISH? [ ] YES [ ] NO
- ABLE TO COMPREHEND ISSUES? [ ] YES [ ] NO
- FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? [ ] YES [ ] NO
- DECLINING FIRST STAFF ASSISTANT ASSIGNED? [ ] YES [ ] NO

Any "NO" requires SA assignment

[ ] NOT ASSIGNED

### INVESTIGATIVE EMPLOYEE (IE)

| INVESTIGATIVE EMPLOYEES NAME | TITLE |
|---|---|
| | |

- EVIDENCE COLLECTION BY IE UNNECESSARY [ ] YES [ ] NO
- DECLINED ANY INVESTIGATIVE EMPLOYEE [ ] YES [ ] NO
- ASU PLACEMENT IS FOR DISCIPLINARY REASONS [ ] YES [ ] NO
- DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED [ ] YES [ ] NO

Any "NO" may require IE assignment

[ ] NOT ASSIGNED

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[ ] NO WITNESSES REQUESTED BY INMATE

| INMATE SIGNATURE | DATE |
|---|---|
| | |

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC UMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY ______ [ ] RETAIN PENDING ICC REVIEW [ ] DOUBLE CELL [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | | | | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE | DATE OF REVIEW |
|---|---|---|
| | | |

See Chronological Classification Review document (CDC 128-G) for specific hearing information

STATE OF CALIFORNIA
**PAROLE REVOCATION HEARING NOTICE AND WITNESS DETERMINATION**
CDCR 1654 (Rev. 08/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

EXHIBIT (A) DC:

PAGE 1 of 1 PAGES

OW Case NLT Target: 9/12/07 See Pink Sheet

## SECTION I - PAROLEE INFORMATION

CDCR NUMBER: V30188
NAME (LAST, FIRST, MI): King, Theodore
AGENT OF RECORD: T. Wells
PAROLE UNIT: Hayward
TYPE OF HEARING: ☐ REVOCATION ☐ REVOCATION EXTENSION ☐ PSYCHIATRIC TREATMENT
VIOLATION REPORT DATED:
☑ CUSTODY LOCATION
☐ NOT IN CUSTODY: (ADDRESS)

HEARING SCHEDULED FOR: (DATE) 9-14-07 (TIME) 8:30 AM (HEARING LOCATION) SQ Panel A

## SECTION II - WITNESSES BEING CALLED

| WITNESSES BEING CALLED | BADGE NUMBER | NOTIFIED *METH | NOTIFIED DATE | WIT. DESIG.** STATUS | WIT. DESIG.** REQ. |
|---|---|---|---|---|---|
| 1. Tonia Wells | 3688 | M | 8/31/07 | A | S |
| 2. Officer Mallinger | 116 | SP | 8/31/07 | A | S |
| 3. Jacqueline Biarini | | | | | P |
| 4. Toma Wells | | | | | P |
| 5. | | | | | |
| 6. | | | | | |
| **FEARFUL WITNESSES** | **REASON:** | | | | |
| 7. | | | | | |
| 8. | | | | | |

*NOTIFICATION METHOD
M - MEMO
L - LETTER
PH - PHONE
PC - PERSONAL CONTACT
SP - SUBPOENA
PN - PAROLEE NOTIFY

**USE ABBREVIATION FOR WITNESS DESIGNATION
STATUS:
A - ADVERSE
FW - FEARFUL WITNESS
F - FRIENDLY
V - VICTIM

REQUESTED BY:
S - STATE
P - PAROLEE

## SECTION III - ATTORNEY INFORMATION

ATTORNEY OF RECORD: C. Garcia
ADDRESS (STREET, CITY, ZIP):
TELEPHONE NUMBER:
PAROLEE / ATTORNEY COPIES PROVIDED (DATE):
MAILED BY:
DELIVERED BY:
ADDRESS (STREET, CITY, ZIP)
TELEPHONE NUMBER

EXHIBIT (C)

EXHIBIT (C) IS HEARING TAPE FROM 9-14-07 INCLOSED WITHIN.

CHARGE SHEET/REVOCATION TRACKING/SCHEDULING REQUEST
CDC 1675 (4/91)

DISTRIBUTION: ORIGINAL - BOARD REPORT; 1ST COPY - R&R; 2ND COPY - HA; 3RD COPY - PAROLEE; 4TH COPY - TLS

REPORT TO: [x] BOARD OF PRISON TERMS
[ ] NARCOTIC ADDICT EVALUATION AUTHORITY

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT | CSTCU ST |
|---|---|---|---|---|
| V30188 | KING, THEODORE | SAME | II/HAYWARD | YES [ ] NO [X] |

| ARREST DATE | ARRESTING AGENCY | BPT REFERRALS | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|
| 07/03/07 | SAN FRANCISCO P.D. | [ ] MANDATORY [X] NON-MANDATORY | SFCJ#1 |

| ARREST CODE * | * ARREST CODES |
|---|---|
| B | A P&CSD STAFF ALONE; AB P&CSD ASSISTED BY LAW ENFORCEMENT AGENCY; B LAW ENFORCEMENT AGENCY ALONE; D LAW ENFORCEMENT AGENCY WITH INFORMATION FROM P&CSD |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 07/03/07 | 07/03/07 | | T WELLS | 12/15/09 | 05/21/08 | [ ] |

CHARGES AND CODES

| | | | |
|---|---|---|---|
| 1. | COND; 4.Resisting Arrest (938) | 4. | COND; 4. Poss of Cocaine for Sale (711) |
| 2. | COND; 2.Poss of Knife (034) | 5. | |
| 3. | COND; 4.Poss of Heroin for Sale (701) | 6. | |

PAROLEE COPY
CalPAP

REASON FOR RETAINING PAROLE HOLD. PAROLEE DANGER TO: [ ] ABSCOND [x] SELF [ ] PROPERTY-OTHERS [ ] SAFETY-OTHERS

DATE COPY SENT TO PAROLEE: | INITIALS OF PERSON SENDING:

RECEIVED
JUL 16 2007
BPH
SAN QUENTIN - DRU

**SUPPORTING EVIDENCE:**

**CHARGEs: 1-4**

On 07/03/07, at approximately 1016 Sgt Espinda, Officers Pagtanac, Wilbunsin and Millinger were on patrol in the area of Mission St and 16th. The officers were in plain clothes and in an unmarked vehicle; Sgt Espinda observed two males slowly walking around the area. This area is a known area for drug sales. The officers exited the vehicle, Officers Patanac and Millinger tried to make contact with the subject but he took off running. The officers pursued Subject on foot. Officer Millinger ordered Subject to stop but he ignored him and kept running.

Officer Millinger finally caught up with Subject and tackled him to the ground. Subject was resisting and punched the officer in the chest. Officer Millinger and Subject were still wrestling when the officer noticed Subject had a knife (6 inch blade) strapped to his belt. Officer Pagtanac and Sgt Espinda arrived and were able to handcuff Subject; Officer Millinger removed the knife from Subject's belt. Subject was identified as Theodore King on parole.

Officer Pagtanac conducted a search of Subject and discovered a snake kit, eleven balloons of suspected heroin, and five pieces of plastic containing suspected cocaine in Subject's right rear pants pocket. Continued search revealed one piece of plastic containing suspected heroin in the right front pants pocket, and seven pieces of plastic containing suspected cocaine in the front left pocket. Subject was arrested and booked into the County Jail.

The drugs were sent to the Lab for testing but results were unavailable.

PAROLEE'S STATEMENT: Not available

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| KING, THEODORE | V30188 |



BOARD OF PAROLE HEARINGS
STATE OF CALIFORNIA

*Records Office Use Only*
Projected Revocation Release Date
Revocation Release Date
Controlling Discharge Date
Discharge Review Date

## SUMMARY OF REVOCATION DECISION: RETURN TO CUSTODY ASSESSMENT

### PRELIMINARY INFORMATION

**Type of Hearing**
REVOCATION

**Basis for Charges**
Parole Violation Report, Dated: 12-JUL-2007

Police Report Agency Dated: 03-JUL-2007
SAN FRANCISCO PD

**Legal Data**
Arrest Date:03-JUL-2007 Hold Date: 03-JUL-2007

### DECISION

**Parole Referral:** VIOLATION
**Custody Status:** In Custody as of 03-JUL-07

Parole Non-Rev Referral Approved
Continue on Parole — Schedule for Revocation
Dismiss — Other Non-Rev Sanction
Return to Parole for Violation Report
X Parole Revoked-Return to Custody:12 months
Serve — Consecutively — Concurrently
Time Served: to
Hold Order: Place — Remove

**3057 Credits**
Eligible
X Ineligible 3057d-1
X Parole Violation 815
Commitment Offense
Ineligible 3057(d)(2)(E)
Prior Criminal History
Circumstances & Gravity of Parole Violation
Specify Reason

**Miscellaneous Action**

**Special Conditions of Parole**
Noted — Reaffirmed — Amended

**Other Special Condition**

**Reason**

**Instructions to CDCR or DAPO Staff**

Commissioner/Deputy Commissioner Signature

Date
17-JUL-2007

| NAME | CDC NUMBER | INST/REGION/AGENT | RTCA DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 17-JUL-2007 |

20-AUG-2007 01:16 PM

Board of Parole Hearings State of California

## Summary of Revocation Decision: Hearing Waived / Screening Offer

### III. SUMMARY OF FINDINGS AND DISPOSITION

A. Reports and Documents Considered:

- X Parole Violation Activity Report
- Police Report
- Other (specify):

B. Findings

| Charge Number | Code Number | Charge Specified | Findings | Evidence Considered/ Relied Upon | Other (specify) | Rev Ext |
|---|---|---|---|---|---|---|
| 1. | 938 | Resisting arrest | PROB CAUSE | 3 | | |
| 2. | 815 | Possession of a deadly weapon (PC 12020) | PROB CAUSE | 3 | | |
| 3. | 704 | Possession of heroin for sale | PROB CAUSE | 3 | | |
| 4. | 714 | Possession of cocaine for sale | PROB CAUSE | 3 | | |

1. Court Conviction
2. Parolee Admits
3. Agent's Statements
4. Physical Evidence
5. Witnesses' Statements
6. Victim's Statements
7. Laboratory Analysis
8. Other (specify)

C. Reasons for Disposition and Documents Considered

X Summary of Adjustment | Activity Report | POR | CII/FBI | Other:

Need for Reconfinement Based Upon the Following Factors:

- Return to Drugs - Readdiction - Need for Dry-Out - Detoxification
- Involved in Felonious Behavior that Mandates a Substantial RTC
- Continuation of Same Behavior that Caused Parolee's Prison Confinement
- X Inability/Unwillingness to Conform to the Expectations and Requirements of Parole/CDC
- Parolee's Involvement in Distribution and/or Sales of Controlled Substances
- Parolee's Unlawful Behavior and/or Activity Makes Him/Her a Liability to the Community
- Parolee's Behavior and Conduct Requires Treatment in a Controlled Environment

| NAME | CDC NUMBER | INST/REGION/AGENT | RTCA DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 17-JUL-2007 |

20-AUG-2007 01:16 PM

Board of Parole Hearings State of California

**Summary of Revocation Decision: Hearing Waived / Screening Offer**

Other Reasons/Comments

**ADA**

**Special Needs:**

| NAME | CDC NUMBER | INST/REGION/AGENT | RTCA DATE |
| --- | --- | --- | --- |
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 17-JUL-2007 |

20-AUG-2007 01:16 PM

BOARD OF PAROLE HEARINGS
STATE OF CALIFORNIA

Records Office Use Only

Projected Revocation Release Date

Revocation Release Date

Controlling Discharge Date

Discharge Review Date

# SUMMARY OF REVOCATION HEARING AND DECISION

(BPH Rules, Chapter 6, Article 3)

## PRELIMINARY INFORMATION

**Type of Hearing**
PROBABLE CAUSE

**Location of Hearing**

Parolee in custody at Time of Hearing: YES

**Basis for Charges**
Parole Violation Report, Dated: 12-JUL-2007

Police Report Agency Dated: 03-JUL-2007
SAN FRANCISCO PD

**Optional Waiver**
NO Date Signed by Parolee:
Date of BPH Action:

Assessment:

**Legal Data**

The crime for which the parolee was committed to prison occurred on or before 12-31-1978: NO
The crime for which the parolee was committed to prison occurred on or after 1-1-1979: YES
Date of arrest on current parole violation charge(s): 03-JUL-2007
Date hold was placed on current parole violation charge(s): 03-JUL-2007

**ADA** Special Needs:

**Present at Hearing**

Hearing Officer: M BRADY

1. [X] Yes [ ] No Parolee (If Parolee absent, Why?)
2. [X] Yes [ ] No Attorney Name: GARCIA, CHRISTINE [ ] Waived
3. [ ] Yes [X] No Agent of Record or Substitute: Reason not present:
4. [ ] Yes [ ] No Hearing Agent: Reason not present:
5. [ ] Yes [X] No Observers Name and Organization:
6. [ ] Yes [X] No Interpreter Assigned Language Name

**Witnesses** (continue on the last page if more than 8 witnesses)

| Present | | Name | Notified | | Wit. Desig.** | | Testified | Excused | If absent, state specific reason. |
|---|---|---|---|---|---|---|---|---|---|
| Yes | No | | Meth.* | Date | Stat. | Req. | | | |
| | | | | | | | | | |

*NOTIFICATION METHOD

M = Memo PC = Personal Contact
L = Letter SP = Subpoena
PH = Phone TT = Teletype

**USE ABBREVIATION FOR WITNESS DESIGNATION

Status: A = Adverse, F = Friendly, V = Victim
Requested by: S = State, P = Parolee

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 19-JUL-2007 |

## SUMMARY OF REVOCATION HEARING AND DECISION

**Preliminary Information (cont.)**

H. HEARING: Occurred

REASON:

Specify Witnesses/Documents needed for next hearing:

### SUMMARY OF FINDINGS

**ADMISSIONS/DENIALS AND FINDINGS**

| Charges | | | PCH | | Plea | | |
|---|---|---|---|---|---|---|---|
| | | | Prob Cause | Dismiss | Admit | Deny | No Plea |
| 1. | 938 | Resisting arrest | X | | | | X |
| 2. | 815 | Possession of a deadly weapon (PC 12020) | X | | | | X |
| 3. | 704 | Possession of heroin for sale | X | | | | X |
| 4. | 714 | Possession of cocaine for sale | X | | | | X |

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 19-JUL-2007 |

BOARD OF PAROLE HEARINGS

STATE OF CALIFORNIA

## SUMMARY OF REVOCATION H RING AND DECISION

### REASON FOR DECISION

**Basis for Conclusion:**

ADA, EC, AND DP REVIEW CONDUCTED VIA DEC, 1073, AND ORAL INTERVIEW WITH PAROLEE. NO ADA, EC, OR DP ISSUES NOTED. ATTORNEY STIPULATES THAT PAROLEE'S ADA, EC, AND DP RIGHTS HAVE BEEN MET TO DATE. NO LEGAL CAUSE WHY HEARING SHOULD NOT NOW GO FORWARD.

FIND PROBABLE CAUSE ON ALL CHARGES BASED ON VIOLATION REPORT.

**Basis for Disposition:**

12I OW INVOKED

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 19-JUL-2007 |

BOARD OF PAROLE HEARINGS — STATE OF CALIFORNIA

## SUMMARY OF REVOCATION HEARING AND DECISION

### SUMMARY OF DISPOSITION

Parole Referral: REFER

Custody Status: In Custody as of 03-JUL-07

[ ] Continue on Parole [ ] Schedule for Revocation

[ ] Dismiss [ ] Other Non-Rev Sanction

[X] Parole Revoked-Return to Custody: 12 months

Serve [ ] Consecutively [ ] Concurrently

[ ] Parole Revoked-Return to Custody: months for Psych Rx

[ ] Time Served: to

Hold Order: [ ] Place [ ] Remove

**3057 Credits**

[ ] Eligible

[X] Ineligible 3057d-1 Reason for Ineligibility:

[ ] Commitment Offense:

[X] Revocation Offense: 815

[ ] Parole Violation:

[ ] Sentenced under PC 1168:

[ ] Unsuitable for credits because of PC 3057(d)(2)(e)

[ ] Prior Criminal History

[ ] Circumstances & Gravity of Parole Violation

Specify Reason

**Parolee Decision**

[ ] Accept [ ] Reject [X] Optionally Waive

**Optional Waivers**

[ ] Previous BPH Action of ________ is:

[ ] Rescinded [ ] Reaffirmed

**Special Conditions of Parole**

[ ] Noted [X] Reaffirmed [ ] Amended

**Other**

Special Condition Reason

Instructions to CDCR or DAPO Staff

Miscellaneous Actions

### BPH HEARING PANEL

NAME:

NAME: Michael K. Brady [signature]

DECISION REVIEW BY:

**REVOCATION HEARING TIME (MINUTES)**

1. Prehearing Prep. Time: 5
2. Actual Hearing Time: 15
3. Report Completion Time: 5
4. Other:

**Total:** 25

Hearing Accommodations (ADA) Provided: [ ] Yes [ ] No

Accom:

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 19-JUL-2007 |

BOARD OF PAROLE HEARINGS STATE OF CALIFORNIA

**SUMMARY OF REVOCATION HEARING AND DECISION**

**V. OBJECTIONS**

[X] None [ ] Yes

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 19-JUL-2007 |

BOARD OF PRISON TERMS STATE OF CALIFORNIA

# NOTICE OF PAROLE REVOCATION RIGHTS AND ACKNOWLEDGEMENT

**BPT 1100**

*(Follows the ADA advisement and completion of the BPT 1073.)*

If the charges are referred to the Board of Prison Terms this is what will happen:

- You have a right to written notice of claimed violations of parole (CDC Form 1502b).
- You have a right to all evidence that will be used against you.
- You have a right to an attorney who will be assigned to represent you at all times during the revocation process.
- You have the right to ask your attorney to request an expedited (earlier) probable cause hearing if you have evidence that is a complete defense to the charges that are the basis of the parole hold.
- Effective July 1, 2005, you have the right to a probable cause hearing with your attorney and a Deputy Commissioner of the Board of Prison Terms within 10 business days of today if you are in custody. You have the right to present letters, documents, and speak on your own behalf at this hearing. The reason for the probable cause hearing is for the Deputy Commissioner to determine if there is enough evidence to keep you in custody until your revocation hearing and to try to settle your case on that date. At the probable cause hearing you will also be given the opportunity to discuss and accept or reject the offer given to you by the Deputy Commissioner.
- If you are in custody, you have the right to a revocation hearing within 35 calendar days from the date the parole hold was placed and to receive written notice of the date and time of the hearing.
- You have a right to be heard in person and to present witnesses and documentary evidence in your defense at a revocation hearing.
- You have a right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).
- You have a right to a neutral and detached hearing officer.
- You have a right to have your revocation hearing within 50 miles of the alleged violation.
- You have the right to subpoena witnesses in your defense to the same extent that the state can subpoena witnesses.
- You have a right to a written statement by the hearing officer as to the evidence relied on and the reasons for the decision and to receive a tape recording of the revocation hearing.

## Acknowledgement

1. I have been informed of my rights listed above.
2. I know that I will meet with an attorney. My attorney will tell me all my rights and the BPT return-to-custody assessment offer.
3. I have a copy of the papers and reports checked below.

- [x] BPT Form 1073, Notification of Americans with Disabilities Act completed today
- [x] CDC Form 1502(b), Charge Report
- [x] BPT Form 1100, Notice of Rights and Acknowledgement
- [x] Blank Form BPT 1100(b), Request for Witnesses
- [ ] Other:

I have read (or had read to me) the information above. I have been given copies of the papers, forms, and reports listed above

| Signature of Parolee | CDC Number: V 30188 | Date: 7-10-07 |
|---|---|---|
| Signature of Staff Completing the Actual Notice | Print First Initial, Last Name: P. NGIN | Date: 7-10-07 |

NAME [illegible] CDC # [illegible] INST/REGION [illegible]

* re-scheduled fr: 9-14-07 postponement

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAROLE REVOCATION HEARING NOTICE AND WITNESS DETERMINATION

CDCR 1654 (Rev. 08/05)

EXHIBIT (H)

DC:

PAGE 1 of 1 PAGES

OW case NLT Target: 9/12/07 See Pink Sheet

## SECTION I - PAROLEE INFORMATION

CDCR NUMBER: V30188

NAME (LAST, FIRST, MI): King, Theodore

AGENT OF RECORD: T. Wells

PAROLE UNIT: Hayward

TYPE OF HEARING: ☐ REVOCATION ☐ REVOCATION EXTENSION ☐ PSYCHIATRIC TREATMENT

VIOLATION REPORT DATED:

☑ CUSTODY LOCATION SQ

☐ NOT IN CUSTODY: (ADDRESS)

HEARING SCHEDULED FOR: (DATE) 9-27-07 (TIME) 930 AM (HEARING LOCATION) SQ Panel A

## SECTION II - WITNESSES BEING CALLED

| WITNESSES BEING CALLED | BADGE NUMBER | NOTIFIED *METH | NOTIFIED DATE | WIT. DESIG.** STATUS | WIT. DESIG.** REQ. |
|---|---|---|---|---|---|
| 1. Tonia Wells | 3688 | M | 9/19/07 | A | S |
| 2. Officer Mallinger | 116 | SP | 9/19/07 | A | S |
| 3. Jacqueline Branchi | | | | | P |
| 4. Toma WELLS | | | | | P |
| 5. | | | | | |
| 6. | | | | | |
| **FEARFUL WITNESSES** | **REASON:** | | | | |
| 7. | | | | | |
| 8. | | | | | |

*NOTIFICATION METHOD
M - MEMO
L - LETTER
PH - PHONE
PC - PERSONAL CONTACT
SP - SUBPOENA
PN - PAROLEE NOTIFY

**USE ABBREVIATION FOR WITNESS DESIGNATION
STATUS:
A - ADVERSE
FW - FEARFUL WITNESS
F - FRIENDLY
V - VICTIM

REQUESTED BY:
S - STATE
P - PAROLEE

## SECTION III - ATTORNEY INFORMATION

ATTORNEY OF RECORD: C. Garcia

ADDRESS (STREET, CITY, ZIP)

TELEPHONE NUMBER

PAROLEE / ATTORNEY COPIES PROVIDED (DATE):

MAILED BY:

DELIVERED BY:

ADDRESS (STREET, CITY, ZIP)

TELEPHONE NUMBER

EXHIBIT (I)

BOARD OF PAROLE HEARINGS
STATE OF CALIFORNIA

| Records Office Use Only |
|---|
| Projected Revocation Release Date |
| Revocation Release Date |
| Controlling Discharge Date |
| Discharge Review Date |

# SUMMARY OF REVOCATION HEARING AND DECISION

(BPH Rules, Chapter 6, Article 3)

## PRELIMINARY INFORMATION

**Type of Hearing**
REVOCATION

**Location of Hearing**
SAN QUENTIN RECEPTION CENTER AT SAN QUENTIN
Parolee in custody at Time of Hearing: YES

**Basis for Charges**
Parole Violation Report, Dated: 12-JUL-2007

Police Report Agency Dated: 03-JUL-2007
SAN FRANCISCO PD

**Optional Waiver**
YES Date Signed by Parolee: 19-JUL-2007
Date of BPH Action: 19-JUL-2007

Assessment: 12I

**Legal Data**

The crime for which the parolee was committed to prison occurred on or before 12-31-1978: NO
The crime for which the parolee was committed to prison occurred on or after 1-1-1979: YES
Date of arrest on current parole violation charge(s): 03-JUL-2007
Date hold was placed on current parole violation charge(s): 03-JUL-2007

**ADA** Special Needs:

**Present at Hearing**

Hearing Officer: A SILVER

1. [X] Yes [ ] No Parolee (If Parolee absent, Why?)
2. [X] Yes [ ] No Attorney Name: GARCIA, CHRISTINE [ ] Waived
3. [X] Yes [ ] No Agent of Record or Substitute: WELLS, TONIA Reason not present:
4. [ ] Yes [ ] No Hearing Agent: Reason not present:
5. [ ] Yes [X] No Observers Name and Organization:
6. [ ] Yes [X] No Interpreter Assigned Language Name

**Witnesses** (continue on the last page if more than 8 witnesses)

| Present | | Name | Notified | | Wit. Desig.** | | Testified | Excused | If absent, state specific reason. |
|---|---|---|---|---|---|---|---|---|---|
| Yes | No | | Meth.* | Date | Stat. | Req. | | | |
| | X | JACQUELINE BIANCHI | | 31-AUG-07 | | P | | | DNA |
| X | | TOMA WELLS | | 31-AUG-07 | | P | | X | |
| | X | OFC. MALLINGER #116-SFPD | SP | 31-AUG-07 | A | S | | | DNA |

*NOTIFICATION METHOD
M = Memo PC = Personal Contact
L = Letter SP = Subpoena
PH = Phone TT = Teletype

**USE ABBREVIATION FOR WITNESS DESIGNATION
Status: A = Adverse, F = Friendly, V = Victim
Requested by: S = State, P = Parolee

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 14-SEP-2007 |

BOARD OF PAROLE HEARINGS STATE OF CALIFORNIA

## SUMMARY OF REVOCATION HEARING AND DECISION

**Preliminary Information (cont.)**

H. HEARING: Postponed

REASON: Additional Witness/Testimony Needed

Specify Witnesses/Documents needed for next hearing:

### SUMMARY OF FINDINGS

**ADMISSIONS/DENIALS AND FINDINGS**

| Charges | | | Plea | | | Findings | | |
|---|---|---|---|---|---|---|---|---|
| Charge Number | Code Number | Charge Specified | Admit | Deny | No Plea | Good Cause | Dismiss | Postponed |
| 1. | 938 | Resisting arrest | | | X | | | X |
| 2. | 815 | Possession of a deadly weapon (PC 12020) | | | X | | | X |
| 3. | 704 | Possession of heroin for sale | | | X | | | X |
| 4. | 714 | Possession of cocaine for sale | | | X | | | X |

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 14-SEP-2007 |

BOARD OF PAROLE HEARINGS

STATE OF CALIFORNIA

# SUMMARY OF REVOCATION HEARING AND DECISION

## REASON FOR DECISION

**Basis for Conclusion:**

**Basis for Disposition:**

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 14-SEP-2007 |

BPH 1103-REV (Rev. 01/05) Electronic

Page 3 of 5

PERMANENT ADDENDUM

BOARD OF PAROLE HEARINGS STATE OF CALIFORNIA

# SUMMARY OF REVOCATION HEARING AND DECISION

## SUMMARY OF DISPOSITION

Parole Referral: REFER

Custody Status: In Custody as of 03-JUL-07

[ ] Continue on Parole [ ] Schedule for Revocation

[ ] Dismiss [ ] Other Non-Rev Sanction

[ ] Parole Revoked-Return to Custody: months

Serve [ ] Consecutively [ ] Concurrently

[ ] Parole Revoked-Return to Custody: months for Psych Rx

[ ] Time Served: to

Hold Order: [ ] Place [ ] Remove

**3057 Credits**

[ ] Eligible

[ ] Ineligible 3057d-1 Reason for Ineligibility:

[ ] Commitment Offense:

[ ] Revocation Offense:

[ ] Parole Violation:

[ ] Sentenced under PC 1168:

[ ] Unsuitable for credits because of PC 3057(d)(2)(e)

[ ] Prior Criminal History

[ ] Circumstances & Gravity of Parole Violation

Specify Reason

**Parolee Decision**

[ ] Accept [ ] Reject [ ] Optionally Waive

**Optional Waivers**

[X] Previous BPH Action of 19-JUL-2007 is:

[ ] Rescinded [X] Reaffirmed

**Special Conditions of Parole**

[ ] Noted [ ] Reaffirmed [ ] Amended

**Other**

| Special Condition | Reason |
|---|---|
| | |

Instructions to CDCR or DAPO Staff

Miscellaneous Actions

## BPH HEARING PANEL

NAME:

NAME:

DECISION REVIEW BY:

**REVOCATION HEARING TIME (MINUTES)**

| | |
|---|---|
| 1. Prehearing Prep. Time: | 15 |
| 2. Actual Hearing Time: | 20 |
| 3. Report Completion Time: | 5 |
| 4. Other: | |
| **Total:** | 40 |

Hearing Accommodations (ADA) Provided: [ ] Yes [ ] No

Accom:

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 14-SEP-2007 |

BOARD OF PAROLE HEARINGS STATE OF CALIFORNIA

## SUMMARY OF REVOCATION HEARING AND DECISION

### V. OBJECTIONS

[ ] None [X] Yes

| Objections / Basis for Ruling | Ruling |
|---|---|
| PAST 35 DAYS FROM DATE OF ACTIVATION OF OPTIONAL WAIVER WHICH IS 8-5-07., THEREFORE DISMISS | DENY |
| OPTIONAL WAIVER ACTIVATION NOT SUBJECT TO 35 DAY TIME FRAME. | |

| Objections / Basis for Ruling | Ruling |
|---|---|
| 1 DAY LATE FOR NOTICE OF RIGHTS; DISMISS | DENY |
| NO PREJUDICE FOR 1 DAY LATE NOTICE. | |

| Objections / Basis for Ruling | Ruling |
|---|---|
| DISMISS FOR LACK OF GOOD CAUSE TO POSTPONE REV. HEARING | DENY |
| POLICE OFFICER NOT ABLE TO ATTEND REV. HEARING DUE TO HAVING TO APPEAR IN COURT. GOOD CAUSE FOR POSTPONEMENT OF HEARING. GOOD CAUSE TO CONTINUE HEARING BASED ON PUBLIC SAFETY CONCERNS BASED ON SERIOUSNESS OF CHARGES AND PRIOR CRIM. HISTORY, | |

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| KING, THEODORE | V30188 | HAYWARD / 2<br>WELLS, TONIA | 14-SEP-2007 |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO - MINUTES**

People of the State of California vs THEODORE F. KING [X] Present

| SC # | Assistant DA of Record | Attorney of Record |
|---|---|---|
| 000000 | [ ] Present | JULIANA DROUS [X] Present |
| [ ] Interpreter Language | Clerk: RON ROSS | Judge: HAROLD KAHN |

Reporter
KATHY KOLLEHNER, CSR #4102

Cause on Calendar for Hearing **Defendant Status:** XXXX

Court has appointed JULIANA DROUS, conflict counsel.

Special appearance by CECILIA FAISSOL, DA for the Assistant DA of Record.

| Count | Code | Section | Degree | MC # | Plea | Finding |
|---|---|---|---|---|---|---|
| 001 | HS | 11351/F | | 02323154 | NG | DISMISS |
| 002 | HS | 11351,5/F | | 02323154 | NG | DISMISS |
| 003 | PC | 12020A1/F | | 02323154 | NG | DISMISS |
| 004 | PC | 243(B)/M | | 02323154 | NG | DISMISS |
| 005 | PC | 148(A),1/M | | 02323154 | NG | DISMISS |

Case on calendar: **MOTION TO SUPRESS.**

Witness Michael Wibunsin, is sworn and examined.

Exhibit marked and admitted into evidence: A - diagram; 1 - photo; 2 - evidence envelope.

Exhibit marked and admitted into evidence: 2A, 2B, 2C, and 2D suspected substance; 2E analysis form.

Witness Noah Mallinger, is sworn and examined.

Exhibit marked and admitted into evidence: B - diagram.

Witness Louis Espinda, is sworn and examined.

Witness Ricardo Valdez, is sworn and examined.

Motion is GRANTED.

Court dismisses this case pursuant to Penal Code 1385 for reasons stated on the record.



JULIANA DROUS
State Bar No.
214 Duboce Avenue
San Francisco, CA 94103
Tel.: (415) 863-3580
Fax: (415) 255-8631
jdrous@msn.net

Attorney for Defendant
THEODORE KING

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, vs. THEODORE KING, Defendant | Case No.: 2323154<br><br>SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING A MOTION TO SUPPRESS EVIDENCE<br><br>Date: July 18, 2007<br>Time: 9:00 a.m.<br>Dept.: 20 |

I.

**THE PROSECUTION CANNOT JUSTIFY THE DETENTION AND SEARCH OF THE DEFENDANTS BY THE FACT THAT THEY WERE ON PAROLE, AS THE OFFICERS DID NOT KNOW AT THE TIME OF THE SEARCH WHO DEFENDANTS WERE, NOR THAT THE DEFENDANTS WERE ON PAROLE.**

In order to justify a detention and subsequent warrantless search under a parole search condition, police officers must have knowledge of the suspect's parole search condition at the time of the detention. (*People v. Sanders*, (2003) 31 Cal.4th 318; *see also People v. Bowers*, (2004) 117 Cal.App.4th 1261, rev. denied Aug. 11, 2004; *People v. Hester*, (2004) 119 Cal.App.4th 376, rev. denied Oct. 13, 2004; *People v. Lazalde* (2004) 120 Cal.App.4th 858, rev. denied Oct. 13 2004; *People v. Hoeninghaus*, (2004) 120 Cal.App.4th 1180, all of which extend the rule of *Sanders* to adult probationers as well as parolees.)

Additionally, although *Sanders* concerned a residential search, appellate courts have extended the ruling of *Sanders* beyond residential searches to encompass personal searches and automobile searches as well. In *Bowers*, *supra*, 117 Cal. App. 4th at 1270, the court stated, "The Fourth Amendment applies as much to the protection of 'persons' against unreasonable search and seizure as it does to residences." *Hoeninghaus*, *supra*, 120 Cal.App.4th, also involved a personal search. *Hester, supra,* 119 Cal.App.4th, involved a search of an automobile. There, the court stated,

> Since the Fourth Amendment applies equally to searches of a residence [*Sanders*, citations], detentions of automobiles [*US v. Cortez*, citations], and detentions of individuals in public places [*Terry v. Ohio*, citations], the *Sanders* analysis should be used whenever a search or seizure implicates the Fourth Amendment. Such consistent application would implement the purpose of the exclusionary rule, which is meant 'to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' (citing *Sanders*, *supra*, 31 Cal.4th at 324.)

*Hester*, *supra*, 119 Cal.App. 4th at 397.

In the present case, the police did not know the identity of either defendant, Frary or King, nor that they were on parole, at the time at which the officers detained the defendants. Therefore, they had no knowledge at the time of Frary and King's detention that either of them was subject to a parole search condition. In determining whether a violation of the Fourth Amendment occurred, a court must undertake an objective assessment of an officer's actions in light of the facts and circumstances known to the officer(s) at the time of the alleged violation. (*Sanders*, supra, 31 Cal. 4th at 331.) In the present case, as in *Sanders*, because the officers did not know of the defendants' parole status at the time of their detention and search, the prosecution cannot retroactively justify the detention and search based on after-acquired information.

## II.

## THE SEARCH OF DEFENDANTS WAS OTHERWISE UNLAWFUL, AS THE OFFICERS HAD NO REASONABLE SUSPICION JUSTIFYING THEIR DETENTION.

In order to justify a detention, the police must have "an articulable suspicion that a person has committed or is about to commit a crime." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777,

784.) “A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.” (*People v. Souza*, (1994) 9 Cal. 4th 224, 231.) Therefore, the issue presented in this case is whether the police officers had a “particularized and objective” basis to suspect that King and Frary had committed, or were about to commit a crime. Based on the activity and movement of the defendants prior to the police detention, the police had no basis to suspect that they was engaged in criminal activity. Therefore, their detention of the defendants was unlawful and all fruits of this illegal detention should be suppressed.

Dated this July 17, 2007

JULIANA DROUS
Attorney for Defendant
THEODORE KING

# Parolee Rights Manual

FOR USE BY CALIFORNIA PRISONERS
February 2005

**Your Responsibility When Using the Information Provided in the Parolee Rights Manual:**

When we wrote this Informational Material we did our best to give you useful and accurate information because we know that prisoners and their families and advocates often have difficulty obtaining legal information and we cannot provide specific advice to all who request it. The laws change frequently and are subject to differing interpretations. We do not always have the resources to make changes to this material every time the law changes.

The parole manual was originally published in 1990 by the State Bar's Standing Committee on Legal Services for Prisoners, Legal Services Section, and was most recently updated by the Prison Law Office in November 2002. If you want legal advice backed by a guarantee, try to hire a lawyer to address your specific problem. It is your responsibility to make sure that the information contained in this booklet has not changed and is applicable to your situation. Most of the materials you need should be available in the public law library. Prisoners should also be able to find these materials in the prison law libraries.

**PRISON LAW OFFICE**
General Delivery
San Quentin, CA 94964

**PAROLEE RIGHTS HANDBOOK**
**UPDATED FEBRUARY 2005**

INTRODUCTION

1. HOW LONG IS A PERSON ON PAROLE?

2. CAN A PAROLEE GET OFF PAROLE EARLY?

3. HOW DOES A PAROLEE CALCULATE THE MAXIMUM PAROLE
   DISCHARGE DATE?

4. WHAT HAPPENS IF THE DEFENDANT WAS NOT INFORMED OF THE PAROLE
PERIOD WHEN ACCEPTING A PLEA BARGAIN?

5. ARE FUNDS AVAILABLE TO PAROLEES UPON RELEASE FROM CUSTODY?

6. DO PAROLEES HAVE TO SIGN THEIR CONDITIONS OF PAROLE?

7. WHAT KIND OF PAROLE CONDITIONS CAN THE CDC OR BPT IMPOSE?

8. CAN A PAROLEE OWN A GUN?

9. CAN A PAROLE AGENT OR POLICE OFFICER SEARCH A PAROLEE'S CAR
   OR RESIDENCE WITHOUT A WARRANT?

10. CAN A PAROLEE VISIT FRIENDS OR RELATIVES IN PRISON?

11. CAN PAROLEES VOTE? SERVE ON A JURY?
        A. Voting
        B. Jury Duty

12. CAN A PAROLEE TRANSFER TO ANOTHER COUNTY OR STATE?
        A. Requesting Transfer to a Different County
        B. Requesting Transfer to a Different State
        C. Out-of-State Absconders or Parole Violators

13. WHAT RIGHTS DO PAROLEES HAVE AT PAROLE REVOCATION HEARINGS?
        A. Overview of the Parole Revocation Process and Basic Rights
        B. Right to Notice
        C. Right to a Timely Hearing

D. Requesting an Attorney
E. Confronting Adverse Witnesses and Obtaining/Presenting Evidence
F. Requesting Accommodations for Disabilities
G. Waivers of Rights
H. The Revocation Hearing
I. Parole Revocation Extension Hearings

14. ARE PAROLE VIOLATORS ENTITLED TO EARN WORKTIME CREDIT?

15. CAN A PAROLEE GET DRUG DIVERSION INSTEAD OF A PAROLE REVOCATION TERM?

16. CAN PAROLEES CHALLENGE CDC OR BPT DECISIONS THAT AFFECT THEIR PAROLE?

17. CAN A PAROLEE OBTAIN A BUSINESS LICENSE?
A. Substantial Relationship
B. Rehabilitation

18. WHAT CRIMINAL HISTORY INFORMATION MUST A PAROLEE GIVE TO AN EMPLOYER?

19. HOW CAN A PAROLEE OBTAIN A CERTIFICATE OF REHABILITATION OR A PARDON?

## PAROLEE RIGHTS HANDBOOK

### INTRODUCTION

State law requires that all California prisoners serve a period on parole after release from prison. The parole term is considered to be a type of custody that is part of any sentence.[1] All

---

1. Penal Code § 3000. A prisoner with a determinate term will be released on parole when the number of actual days served, plus any time credits earned, equals the sentence imposed by the court. Prisoners with indeterminate terms are released only if found suitable by the BPT.

released prisoners must serve a parole period – although in some cases a parolee may serve some or all of the parole period confined in prison or jail.[2]

Parole is required because the legislature believes that "the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship . . . . . [Thus,] it is in the interest of public safety" to supervise and assist parolees.[3] However, in reality, parole may not ease a prisoner's transition back to the free world.[4]

When a prisoner is released on parole, he or she remains in the legal custody of the California Department of Corrections (CDC).[5] A parolee is supervised by a CDC parole agent, and must meet certain requirements or "conditions" of parole. If the parolee violates his or her parole conditions, the Board of Prison Terms (BPT) can revoke parole and order the parolee returned to custody to serve a parole revocation term. When the entire parole period is over, the parolee is released or "discharged" from parole.

This handbook addresses commonly asked questions about parole terms and parolees' rights; it is not a full discussion of the legal issues surrounding parole. In addition, this handbook discusses the many changes in parole policies that have been instituted starting in 2004 as a result of a settlement agreement in the lawsuit Valdivia v. Schwarzenegger (E.D. Cal.) S-94-0671 LKK/GGH .

**1. HOW LONG IS A PERSON ON PAROLE?**

From one year to life, depending on the type of crime and the date it was committed.

The basic length of the parole period is set by statute, and depends on the type and date of the criminal conviction. Because the law has changed over the years, determining the length

2. Technically, the BPT has power to waive a person's parole requirement (see Penal Code § 3000), but such waivers are virtually non-existent. Equally rare is the case where a court orders a parole-free release because of a failure to advise a defendant of the required parole period at the time a guilty plea is entered (see Section #4 below, for further discussion).

3. Penal Code § 3000.

4. In 2004, there were 113,000 parolees in California; 47% had their parole revoked and over 10% received new prison terms yearly. CDC Facts, 3rd Quarter 2004 (http://www.corr.ca.gov).

5. Penal Code § 3056.

of a parole period can be confusing.[6] Following is a summary of parole lengths;[7] please note that any time during which a parolee absconds and is not available for from parole supervision does not count toward the parole period.[8]

- Prisoners with Determinate Sentences or Non-Life Penal Code §1168 Sentences – Offenses on or after January 1, 1979: three-year parole period, with a maximum parole period of four years if parole revoked. Most parolees fall in this category.

- Prisoners with Determinate Sentences for Sex Crimes in Penal Code § 667.5(c)(3)(4)(5)(6)(16) or (18) – Offenses on or after July 19, 2000: five-year parole period, with a maximum parole period of seven years if parole is revoked. Amendments effective September 24, 2002 added people convicted of the crime in Penal Code § 667.5(c)(11) to the list of those subject to a five-year parole period.

- Prisoners with Determinate or Non-Life Indeterminate §1168 Sentences – Offenses before January 1, 1979: one-year parole period, with a maximum parole period of eighteen months if parole revoked.

- Life Prisoners – Offenses before January 1, 1979: three-year parole period, with a maximum parole period of four years if parole revoked.

- Life Prisoners – Offenses on or after January 1, 1979: five-year parole period, with a maximum parole period of seven years if parole revoked.

- Life Prisoners – 1st and 2nd Degree Murder – Offenses on or after January 1, 1983: maximum parole period of life.

- Life Prisoners – Sex Offenses under Penal Code § 667.61 – Offenses on or after July 19, 2000: five-year parole period, with a maximum parole period of seven years if parole revoked. Parole may be extended an additional five years if the BPT finds the parolee may pose a substantial danger to public safety. As of September 24, 2002, this provision also applies to people sentenced to life terms

---

6. Statutory amendments that lengthen parole terms cannot be applied to persons who committed offenses prior to the change in the law. In re Thomson (1980) 104 Cal.App.3d 950 [164 Cal.Rptr. 99]; In re Bray (1979) 97 Cal.App.3d 506 [158 Cal.Rptr. 745].

7. Penal Code §§ 3000, 3000.1, 3001 and 3057 set forth the length of parole terms. See also 15 CCR § 2515.

8. Penal Code § 3064.

under Penal Code § 667.71. As of October 13, 2001, both the original and extended parole periods may be increased to a maximum of seven years each.

**2. CAN A PAROLEE GET OFF PAROLE EARLY?**

Sometimes.

A parolee must be discharged early from parole if he or she successfully completes a certain amount of parole time (without revocations or suspensions) and the BPT does not find good cause to retain the person on parole.[9] The date on which the BPT must make this determination is called the "presumptive discharge date." The BPT must hold the discharge review within 30 days after the parolee serves the following period of time on continuous parole (meaning there have been no revocation terms, suspensions, or "dead time" for absconding):[10]

- One year, for those with determinate sentences who were convicted only of non-violent felonies;
- Two years, for those with determinate sentences who were convicted of violent felonies as defined in Penal Code §667.5(c) and placed on three year-parole periods;
- Three years, for those serving five-year parole periods for indeterminate sentences under Penal Code §§ 1168, 667.61 or 667.71 or determinate sentences for sex crimes under Penal Code § 667.5(c)(3), (4), (5), (6), (11), (16) or (18). The three-year early presumptive discharge date also applies to the discretionary five-year parole period extensions that may be imposed on people sentenced under Penal Code §§ 667.61 and 667.71.
- Five years, for those sentenced to indeterminate life terms for second degree murder; or
- Seven years, for those sentenced to indeterminate life terms for first degree murder.

Parolees who were sentenced to prison for offenses committed between on July 1, 1977 and December 31, 1978 are not entitled to early discharge review hearings.[11]

---

9. Penal Code § 3001.

10. Penal Code §§ 3000.1(b) and 3001; 15 CCR § 2535.

11. 15 CCR § 2535(b)(5).

The BPT rules broadly define the circumstances in which it can find good cause to retain someone on parole, taking into account factors such as the original crime, in-prison behavior, efforts to pay restitution obligations and parole adjustment.[12] The parolee does not have a right to a personal appearance at the review.[13] However, the BPT is required to give a copy of its decision to the parolee.[14] Also, if the BPT decides to continue parole, the parolee will be eligible for discharge review each year until the maximum parole date is reached.[15]

The law requiring discharge reviews states that a parolee "shall" be discharged unless the BPT acts to retain for good cause. There are conflicting cases on what this means. Some Court of Appeal decisions state that parole terminates automatically if CDC and BPT fail to take action to retain the prisoner on parole or fail to give notice of the retention.[16] However, other cases hold that mere failure to give a parolee notice that he or she has been continued on parole or failure to conduct subsequent annual reviews does not mean automatic discharge of parole.[17]

### 3. HOW DOES A PAROLEE CALCULATE THE MAXIMUM PAROLE DISCHARGE DATE?

A parolee who does not receive an early parole discharge can calculate when he or she will be discharged from parole. There are two important dates to calculate: the controlling discharge date (CDD) and the maximum discharge date (MDD).[18] The CDD is the date that a parolee is currently set to discharge from parole (if he or she does not get an early discharge). If parole is revoked and the parolee serves a revocation term, the time in custody does not count toward the parole term and the CDD is moved to a later date.[19] However, there is a maximum legal limit on how long the parole discharge date can be extended – the MDD is the longest

---

12. 15 CCR § 2535(d), DOM §§ 81080.1-81080.1.1.

13. 15 CCR § 2535(c).

14. Penal Code §§ 3001(a); 15 CCR § 2535(c);.

15. Penal Code § 3001(c).

16. In re Nesper (1990) 217 Cal.App.3d 872 [266 Cal.Rptr. 113]; In re Carr (1995) 38 Cal.App.4th 209 [45 Cal.Rptr.2d 34].

17. People v. Jack (1997) 40 Cal.App.4th 1129 [70 Cal.Rptr.2d 676]; In re Carr, supra, 38 Cal.App.4th at p. 209; In re Ruzicka (1991) 230 Cal.App.3d 595 [281 Cal.Rptr.435]; In re Roa (1991) 1 Cal.App.4th 724 [3 Cal.Rptr.2d 1].

18. These dates do not apply to parolees who are serving potentially life-long parole terms.

19. Penal Code §§ 3000(b)(4) and 3064.

period of time a person can be legally kept on parole, including revocation time in custody. Time during which a parolee absconds or is unavailable for parole supervision does not count toward either the CDD or MDD and will always extend the discharge date.[20]

Since calculating a parole discharge date is complicated, a work sheet with a sample calculation is included here:

1. Start with the date of first parole from the original prison term. For our worksheet example, we will assume the prisoner first paroled on January 1, 2005.

2. Add to that date the amount of time the parolee must continuously serve on parole before an early discharge review. For example, parolee who served a determinate sentence for a non-violent crime committed after January 1, 1979 has a presumptive early discharge date (assuming no revocation or absconding) of thirteen months. The parolee in our example would be eligible for early discharge on February 1, 2006.

3. If the parolee is not discharged early from parole, he or she will be release on the controlling discharge date (CDD). Start with the original date of parole and add the normal parole term. In this the example, three years is the normal parole period. Thus, the CDD is January 1, 2008, and the parolee must be discharged on this date if he or she does not abscond or have parole revoked.

4. Time actually spent in custody for a parole revocation does not count toward the parole term.[21] Thus, revocation terms must be added to the CDD, resulting in a later discharge date. In our example, if the parolee was sentenced to a twelve month revocation term, and after receiving time credits actually spent eight months in prison, then eight months must be added to the three year mandatory term. The discharge date is now September 1, 2008.

5. If the parolee gets revoked and returned to custody again, this additional time in prison will also be added to the discharge date. However, the actual discharge date cannot exceed the maximum discharge date (MDD), which in this example is four years from the date of first parole. Thus, if the parolee received a second revocation term of 12 months, the parolee would not serve the full 12 months. Instead, he or she would be discharged from parole on the MDD of January 1, 2009.[22]

---

20. Penal Code § 3000(b)(4).

21. Penal Code §§ 3000(b)(4) and 3064.

22. Penal Code § 3000(b)(4).

6. Periods during which a parolee absconds or has parole suspended do not count at all towards the parole term and extend both the CDD and MDD.[23] In this example, if the parolee absconds several times during the parole term, for a total of twelve months, then the discharge date would then be extended by twelve months to January 1, 2010. This means that the parolee would still be on parole until five years after the initial parole date.

7. The actual discharge date is the date a parolee is released from parole given all of the above calculations.

**Work Sheet**

| | |
|---|---|
| 1. Date originally paroled: | 1/1/05 |
| 2. Presumptive Discharge Date: (13 months) | 2/1/06 |
| 3. Controlling Discharge Date: (3 years) | 1/1/08 |
| 4. First Revocation Term: (8 months actually served) | 9/1/08 |
| 5. Second Revocation Term: (12 months, but released at 4 year MDD regardless of additional revocation terms) | 1/1/09 |
| 6. Total absconding periods (Time when parole was suspended due to absconding, 12 months) | 1/1/10 |
| 7. Actual Discharge Date: | 1/1/10 |

--------------

In rare cases, a prisoner who is being released to parole has served too long in prison because of the reversal of a conviction or a delayed grant of time credits. In such cases, the

23. Penal Code § 3064.

parolee is entitled to have the extra time spent in prison applied to the parole period.[24/] However, the parolee will not be completely discharged from until the amount of credits granted and/or earned on parole exceeds the normal parole period. The same rule applies to people who are sentenced to prison and have pre-sentence credits that are greater the prison term that was imposed – the pre-sentence credit will be applied toward the parole period but some period of parole must be served unless the credits are enough to cover the entire parole period.[25/]

## 4. WHAT HAPPENS IF THE DEFENDANT WAS NOT INFORMED OF THE PAROLE PERIOD WHEN ACCEPTING A PLEA BARGAIN?

A defendant who is not informed of the parole period at the time he or she enters a guilty plea may be able to argue that the plea was not knowingly and intelligently made.

To challenge a judgment resulting from a guilty plea on the grounds that there was a failure to advise regarding parole, a prisoner must prove that:

1) the trial court failed to advise the defendant of the mandatory parole requirement at the time the court accepted the plea; <u>and</u>

2) the defendant did not at the time of the plea otherwise know of the parole term requirement <u>and</u> would not have pled guilty had the requirement been known.[26/]

In addition, a prisoner who files a petition for writ of habeas corpus on this issue must explain why the issue was not raised on direct appeal. If a significant time has elapsed since the plea was taken, the delay in filing must also be explained.[27/]

---

24. <u>In re Lara</u> (1988) 206 Cal.App.3d 1297 [254 Cal.Rptr. 59]; <u>In re Kemper</u> (1980) 112 Cal.App.3d 434 [169 Cal.Rptr. 513]; <u>In re Ballard</u> (1981) 115 Cal.App.3d 647 [171 Cal.Rptr. 459].

25. <u>People v. London</u> (1988) 206 Cal.App.3d 896, 910-911 [254 Cal.Rptr. 59]; <u>In re Jantz</u> (1984) 162 Cal.App.3d 412 [208 Cal.Rptr. 610]; <u>In re Welch</u> (1990) 190 Cal.App.3d 407 [235 Cal.Rptr 470].

26. <u>People v. Avila</u> (1994) 24 Cal.App.4th 1455 [30 Cal.Rptr.2d 138]; <u>In re Moser</u> (1993) 6 Cal.4th 342, 351-352 [24 Cal.Rptr. 723, 728-729]; <u>People v. McMillion</u> (1992) 2 Cal.App.4th 1363 [3 Cal.Rptr.2d 821]; <u>Carter v. McCarthy</u> (9th Cir. 1986) 806 F.2d 1373, 1374-1376; <u>In re Carabes</u> (1983) 144 Cal.App.3d 927, 933 [193 Cal.Rptr. 65].

27. <u>In re Clark</u> (1993) 5 Cal.4th 750, 751 [21 Cal.Rptr.2d 509, 510]; <u>In re Walker</u> (1973) 10 Cal.3d 764, 773 [112 Cal.Rptr. 177].

The usual remedy for failure to advise the defendant of the parole period at the time of the plea will be allowing the person to withdraw their plea, meaning that criminal proceedings, including any charges dismissed as a result of the plea bargain, could be reinstated. In a very rare case, the court might order specific performance of the plea agreement by a parole-free release, particularly if the prisoner already has served more time than was bargained for or has served most of the parole period.[28]

A failure to inform a defendant of the parole period at the time of sentencing does not entitle a prisoner to a parole-free release.[29] The remedy, if any, would be a re-sentencing hearing with the proper advisement about the parole requirement.

**5. ARE FUNDS AVAILABLE TO PAROLEES UPON RELEASE FROM CUSTODY?**

Yes, for some prisoners.

1. Trust Fund Accounts (Penal Code § 2085)

Money brought to, earned, or received in prison can be kept in a trust account. Any money in a prisoner's trust account must be given to the prisoner upon release.

2. Gate Money (Penal Code § 2713.1; 15 CCR § 3075.2(d); CDC Operations Manual § 81010.6)

In addition to any trust account funds, prisoners paroled or discharged from a CDC institution or reentry facility are entitled to $200.00 upon release. The parole agent is responsible for giving out these funds, and need not grant a prisoner the entire lump sum immediately upon release. The agent may distribute the $200 in installments over a period of 60 days following release. Although practice varies, paroled inmates typically receive at least $50 to $100 of the gate money immediately upon release, and many receive the entire $200.

Parole violators who have served less than six consecutive months prior to release are also eligible for gate money. However, these parolees are not necessarily eligible for the full $200. Instead, they will receive gate funds computed at a rate of $1.10 per day served during the revocation term, up to a maximum of $200.00.

A parolee who is released into a reentry facility may be given a maximum of one half of the $200. A parolee who is released into the custody of another state or a local or federal agency, may not receive any gate money unless he or she later is released for and available for parole supervision.

---

28. See Carter v. McCarthy, supra, 806 F.2d 1373.

29. In re Chambliss (1981) 119 Cal.App.3d 199, 200 [173 Cal.Rptr. 712].

If a parolee needs to purchase a bus ticket or street clothes upon release from prison, the parolee must pay for it. The CDC does not provide extra gate money for clothing or transportation.

3. Cash Assistance Loans (15 CCR § 3705 and CDC Operations Manual § 81070.1) and Bank Drafts (CDC Operations Manual § 81070.2)

There are also some emergency funds available to parolees through their parole agents. "Cash assistance funds" are loans, which CDC expects the parolee to pay back as soon as employment and personal circumstances permit. The loans are only granted to parolees when there is a critical need and assistance is not available from any other source. The loans are usually for amounts under $50. The parole agent's supervisor must approve any loan over $50 or any series of loans totaling more than $150 in a 30 day period.

The parole agent is also authorized to distribute funds for casework services, which include housing, food, and clothing. The agent may authorize a loan of up to $500 to the parolee for over-the-counter purchases. The check may be written to either the parolee or the vendor from whom the parolee is purchasing items. Once again, the loans are granted on an emergency basis, and the parolee must pay the money back as soon as circumstances permit.

A parolee should keep in mind that the parole agent and agent's supervisor have discretion over whether to grant a loan to a particular parolee. A parolee is not automatically entitled to a loan. A parole agent's decision to grant or deny a loan depends whether there is a money available and on the circumstances, including the history and needs of the parolee.

4. Other Benefits (SSI, Social Security, Housing Assistance)

Paroled prisoners may be eligible for federal, state, and local assistance programs, although they do not receive special status because of their recent release. A parolee should investigate the various programs in order to see whether he or she qualifies for any of them. Note that parolees convicted of drug felonies are not eligible for some welfare benefits as of 1998.

Parolees should also be aware that the Social Security Administration, which administers SSI and Social Security, no longer considers drug or alcohol addiction to be an eligible disability. In order to receive SSI, an applicant must be disabled and unable to work because of a disability independent of substance abuse. A person who is interested in SSI or any other benefits, can send a letter of inquiry to the applicable office before release, and should seek advice from an advocate at a community agency or legal services organization once released.

In addition, parole agents should be able to assist parolees in gaining access to benefits. At a minimum, an agent should be able to provide a parolee with names and locations of local offices where the parolee can try to get assistance. The parole agent should have lists of shelters, food banks, job training facilities, and drug treatment centers in the local area. Parolees can use these resources as an initial step toward getting shelter, food and other necessary items.

Additional information is available in the Prison Law Office information letter on Parolee Benefits, which we can send on request. Parolees can also get information from their CDC counselor or parole agent or from the CDC Parolee Handbook, available at www.corr.ca.gov.

## 6. DO PAROLEES HAVE TO SIGN THEIR CONDITIONS OF PAROLE?

Yes.

If a parolee refuses to sign the "Notice and Conditions of Parole," parole will be revoked and he or she will be kept in or returned to custody for up to six months.[30] Therefore, there is usually no point in refusing to sign the agreement. If there is disagreement about whether any condition is lawful or necessary, the prisoner can follow the steps to challenge a parole condition described in Section #16, below.

SEE FOR KNIFE SPECIAL CONDITION

## 7. WHAT KIND OF PAROLE CONDITIONS CAN THE CDC OR BPT IMPOSE?

Both the California Department of Corrections (CDC) and the Board of Prison Terms (BPT) have authority to impose conditions of parole.[31] Prisoners must be given a written "Notice and Conditions of Parole" at least 30 days before release. Every parolee should be aware of his or her parole conditions because violating those conditions can result in revocation of parole and return to prison or jail.[32]

There are some general parole conditions that are standard and apply to all parolees; these include complying with parole agent instructions, not engaging in criminal conduct, and not owning, possessing, using, or having access to any weapon.[33] In addition, special conditions can be imposed based on particular facts regarding the case or the parolee; some of these special conditions are required by state statutes. The most common special conditions are that a parolee abstain from use of alcoholic beverages, submit to narcotics testing, or participate in psychiatric treatment.[34]

---

30. Penal Code § 3060.5; 15 CCR § 2512.

31. Penal Code §§ 3000(b)(5) and 3053 et. seq.; see also 15 CCR §§ 2510, 2512.

32. Penal Code §§ 3056, 3060.

33. See 15 CCR § 2512.

34. See 15 CCR § 2513. Statutes require some parolees to register as sex offenders (Penal Code § 290) and some parolees to not use alcohol (Penal Code § 3053.5). A parolee who was convicted of violating Penal Code § 288 or § 288.5 also can't be placed or reside within 1/4 mile of a kindergarten or elementary school. Penal Code § 3003(g). A person convicted of domestic violence must participate in a counseling program. Penal Code § 3053.2.

A condition of parole may be invalid if it:

1) has no relation to the commitment offense;
2) relates to conduct which is not in itself criminal; and
3) requires or forbids conduct that is not reasonably related to future criminality;[35]

For instance, if a parolee has no history of alcohol abuse, random alcohol testing cannot be imposed, since the condition does not relate to past or future criminality and using alcohol is not itself illegal.[36] On the other hand, since possession of a firearm by an ex-felon is in itself a crime,[37] a prohibition on that conduct is a standard condition of parole.

A parole condition which infringes on a constitutional right may also be held invalid if the condition is not reasonably related to a legitimate purpose, the public value of the condition does not outweigh the infringement, and less restrictive alternatives might serve the same purpose. Conditions also may be invalid if they are excessive or extreme or if they are so vague that they cannot be understood and followed.[38]

---

35. People v. People v. Burgener (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, overruled on other grounds in People v. Reyes (1998) 19 Cal.4th 743 [80 Cal.Rptr.2d 234]; People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905]; People v. Dominguez (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290]. Many of the cases in this area deal with probation conditions, as courts usually apply the same analysis to both parole and probation conditions.

36. But see Penal Code § 3053.5 (parole condition to abstain from using alcohol must be applied to any person convicted of a sex offense while intoxicated or addicted to alcohol).

37. Penal Code § 12021.

38. People v. Fritchey (1992) 2 Cal.App.4th 829, 838 [3 Cal.Rptr.2d 585]; United States v. Bonanno (N.D. Cal. 1978) 452 F.Supp. 743, 752. The following cases have invalidated probation or parole conditions: People v. Bauer (1989) 211 Cal.App.3d 937 [260 Cal.Rptr. 62] (condition not to become pregnant); People v. Pointer (1984) 151 Cal.App.3d 1128, 1139 [199 Cal.Rptr. 357] (condition forbidding living with parents); People v. Beach (1983) 147 Cal.App.3d 612, 622-623 [147 Cal.App.3d 612] (condition banishing defendant from her home); In re Sheena K. (2004) 116 Cal.App.4th 436 [10 Cal.Rptr.3d 444 [condition that probationer not associate with anyone disapproved by the probation officer]; Hyland v. Procunier (N.D. Cal. 1970) 311 F.Supp. 749 [condition that parolee get permission before making a public speech]; Arciniega v. Freeman (1971) 404 U.S. 4 [92 S.Ct. 22, 30 L.Ed.2d 126][condition restricting parolee from associating with other ex-convicts in the course of work for a common employer]; People v. Garcia (1993) 19 Cal.App.4th 97, 101-102 [23 Cal.Rptr.2d 340] (condition to not associate – knowingly or unknowingly – with ex-felons or drug); In re Justin S. (2001) 93 Cal.App.4th 811 [113 Cal.Rptr.2d 466] (condition prohibiting association with "any gang members"); In re Stevens (2004) 119 Cal.App.4th 1228 [15 Cal.Rptr.3d 168] (complete prohibition on sex offender from using computers or the Internet when neither computers or the

Special conditions of parole may be imposed which will impinge upon the parolee's employment, but the prohibited employment must directly relate to the crime.[39] For instance, a parolee who is convicted of writing checks with insufficient funds can be prohibited from maintaining a checking or charge account, but prohibiting him or her from working in commissioned sales could be an unnecessary infringement upon the right to work.[40]

**8. CAN A PAROLEE OWN A GUN?**

No. It is forbidden by state and federal law.

The standard "Notice and Conditions of Parole" informs each parolee that he or she shall not "own, use, have access to or have under your control . . . any type of firearm or instrument or device which a reasonable person would believe to be capable of being used as a firearm or any ammunition which could be used in a firearm . . . . ." This is in accord with California law, which states that any person convicted of a felony and who owns, possesses or has custody or control of any firearm, is guilty of a felony.[41] Federal law also makes it unlawful for an ex-felon to receive or possess any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.[42] Parolees who live with someone else who possesses a gun or ammunition should make sure that person removes those items from the residence, or at least keeps the items locked in an area to which the parolee does not have access.

A certificate of rehabilitation (see Section #17 below) does not restore the right to possess a firearm; in some, but not all cases, the right can be restored by a full pardon.[43]

**9. CAN A PAROLE AGENT OR POLICE OFFICER SEARCH A PAROLEE'S CAR OR RESIDENCE WITHOUT A WARRANT?**

---

Internet had not been used in committing crime); United States v. Williams (9th Cir. 2004) 356 F.3d 1045. (condition requiring releasee to take all medications prescribed for his mental illness where there was a lack of medical evidence to support such extreme impingement on the right to refuse to medication).

39. See People v. Burden (1988) 205 Cal.App.3d 1277 [253 Cal.Rptr. 130]; People v. Lewis (1978) 77 Cal.App.3d 455 [143 Cal.Rptr. 587]; People v. Keefer (1972) 35 Cal.App. 156 [110 Cal.Rptr. 596].

40. Ibid.

41. Penal Code § 12021; see also Penal Code § 12021.1.

42. 18 U.S.C. § 922(g)(1).

43. See Penal Code §§ 4852.16 and 4854.

Yes (usually).

The standard CDC "Notice and Conditions of Parole" provides that "[y]ou and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." A prisoner who refuses to accept this condition of parole will lose worktime/goodtime credit on a day for day basis until the condition is signed or all earned credit is lost.[44]

The constitutional right to be free from unreasonable searches and seizures is virtually non-existent while on parole. "The justification for exempting parole searches from the warrant requirement of the Fourth Amendment is that these searches are necessary for effective parole supervision."[45] The parole agent can visit a parolee at his or her home or job site without prior notice to the parolee. A parole officer may authorize a search without the parolee's consent, without a search warrant, and without probable cause or even a reasonable suspicion that the parolee has violated parole.[46]

Nearly the only limit on parole searches is the general rule that abridgement of a parolee's Fourth Amendment rights is justified only to the extent required by the legitimate demands of the parole process [47] and that the parole search must be constitutionally reasonable.[48] Unfortunately, the exclusionary rule (that evidence obtained in violation of Fourth Amendment rights cannot be admitted in a criminal case) does not apply in parole revocation hearings,[49] so parole officers have little incentive to comply with even the few requirements of the Fourth Amendment.

---

44. Penal Code § 3067.

45. People v. Reyes, supra 19 Cal.4th at p. 753.

46. Ibid. Reyes overruled People v. Burgener, supra, 41 Cal.3d at p. 505, which had held that the parole agent needs to have a reasonable suspicion of a violation.

47. People v. Williams (1992) 3 Cal.App.4th 1100, 1106 [5 Cal.Rptr.2d 591].

48. Reyes, supra, 19 Cal.4th 743 at pp. 753-754. See also People v. Clower (1993) 16 Cal.App.4th 1737 [21 Cal.Rptr.2d 38], stating that a parole search could become constitutionally unreasonable if made too often, at an unreasonable hour, if unreasonable prolonged or for other reasons establishing arbitrary or unreasonable conduct by the searching officer.

49. Pennsylvania Board of Probation and Parole v. Scott (1998) 524 U.S. 357 [118 S.Ct. 2014; 141 L.Ed.2d 344]

Being on parole does not itself justify a warrantless search by law enforcement officers other than parole agents.[50] However, the police are not required to seek a parole officer's permission to perform a parole search.[51] Thus, a warrantless parole search by a police officers for a law enforcement purpose will be upheld if the law enforcement purpose is also a legitimate parole supervision purpose. An example would be the investigation of a parolee's involvement in a crime.[52] Also, if the parole agent has requested police assistance, the search is reasonably related to the purposes of the parole process.[53] In addition, a police officer does not need to obtain an arrest warrant before entering a parolee's house to take the parolee into custody.[54]

The fact that a search is being conducted pursuant to a parole search condition does not excuse police or parole agents from complying with the "knock-notice"law, requiring an officer to give notice of his authority and purpose in executing a warrant.[55] The knock-notice requirement must be met unless the case falls under an exception to the general rule.[56]

**10. CAN A PAROLEE VISIT FRIENDS OR RELATIVES IN PRISON?**

Not without prior approval.

It is a crime for a person previously convicted of a felony to be on prison grounds for any reason without prior approval of the warden or superintendent of the institution.[57] To get

---

50. People v. Johnson (1988) 47 Cal.3d 576, 594 [235 Cal.Rptr. 710, 719]; People v. Williams supra, 3 Cal.App.4th at p. 1106; People v. Montenegro (1985) 173 Cal.App.3d 983 [219 Cal.Rptr. 331]

51. See People v. Brown (1989) 213 Cal.App.3d 187, 192 [261 Cal.Rptr. 612, 615] (calling such a requirement a "meaningless formality").

52. People v. Stanley (1995) 10 Cal.4th 764, 790 [42 Cal.Rptr.2d 543, 557]. However, if police do not know a person is a parolee, they cannot later try to justify the search as being a parole search. People v. Sanders (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630].

53. People v. Johnson (1988) 47 Cal.3d 576 [253 Cal.Rtpr. 710].

54. People v. Lewis (1999)74 Cal.App.4th 662 [88 Cal.Rptr.2d 231].

55. People v. Mays (1998) 67 Cal.App.4th 969 [79 Cal.Rptr.2d 519]; Penal Code § 1531.

56. People v. Britton (1984) 156 Cal.App.3d 689, 698 [202 Cal.Rptr 882]; People v. Ford (1975) 54 Cal.App.3d 149 [126 Cal.Rptr. 396].

57. Penal Code § 4571.

permission to visit, a parolee must send a letter of request to the warden.[58] However, any person who has been discharged from prison for more than twelve months or from parole may not be denied visiting by the warden "for reasons that would not apply to any other person ...."[59] Persons on parole, probation or out-patient status must also obtain written consent of their case supervisor before visiting will be approved.[60] Like any other prospective visitor, a parolee who wants to visit an inmate must also complete a Visiting Questionnaire (CDC Form 106).

## 11. CAN PAROLEES VOTE? SERVE ON A JURY?

No to both questions.

### A. Voting

People in prison or on parole are not allowed to vote, though they are allowed to vote once they are discharged or complete parole.[61] Such restrictions on voting are explicitly permitted by the United States Constitution, Fourteenth Amendment, § 2.[62] Several recent cases have indicated that laws denying voting rights to ex-felons might violate the federal Voting Rights Act if they have a disparate impact on the voting rights of people of color;[63] however no court has yet overturned any law that bars parolees from voting.

### B. Jury Duty

An ex-felon (regardless of whether he or she has discharged from parole) is prohibited from serving on a jury.[64] This restriction has been upheld by the California Supreme Court.[65] The Court held that the right to serve on a jury is not a fundamental right and that exclusion of ex-felons from juries did not violate the equal protection clause. The Court found that the

---

58. 15 CCR § 3172(d).

59. 15 CCR § 3172.1(b)(4).

60. 15 CCR § 3172.1(b)(5).

61. Cal. Constitution, Article II, § 4. Elections Code § 2150.

62. Richardson v. Ramirez (1974) 418 U.S. 24 [94 S.Ct. 2655; 41 L.Ed.2d 551].

63. Farrakhan v. Washington (9th Cir. 2003) 338 F.3d 1009; Johnson v. Florida (11th Cir. 2003) 353 F.3d 1287.

64. Code of Civil Procedure § 203(a)(5).

65. Rubio v. Superior Court (1979) 24 Cal.3d 93 [154 Cal.Rptr. 734].

exclusion of ex-felons from jury service was rationally related to the legitimate state goal of assuring impartiality of the verdict.[66]

## 12.    CAN A PAROLEE TRANSFER TO ANOTHER COUNTY OR STATE?

Maybe.

Ordinarily, a person paroles to the county of his or her last legal residence.[67]  However, sometimes the BPT or CDC will force a prisoner to parole to a different county if it would be in the best interests of the public.[68]  Also, a parolee will not be released to a county where he or she would be within 35 miles of the residence of a victim of or witness if the conviction was for a violent felony listed in Penal Code § 667.5(c)(1)-(7), a crime involving stalking, or a crime involving infliction of great bodily injury, if the victim or witness has requested additional distance and the BPT or CDC finds that there is a need to protect the victim/witness.[69]

If the BPT makes a decision to return a parolee to another county, it must state its reasons in writing.[70]

### A. Requesting Transfer to a Different County

In some cases a parolee may not want to transfer to the county where CDC has decided to place the parolee.  A parolee may request a transfer to another California county by submitting an oral or written request to his or her parole agent.  A prisoner should provide documentation (such as letters from family, doctor, or employer) showing why he or she is requesting parole to another county.  This process can also be started while a person is still in prison if the Release Program Study is being or has been prepared.

After the parole agent receives the request, he or she should prepare a Transfer Investigation Request Form (CDC Form 1551) and submit it to the parole unit supervisor.  The following factors, among others, should be considered:

---

66. Ibid.

67. Penal Code § 3003(a).

68. Penal Code § 3003(b).

69. Penal Code § 3003(f) and (h).

70. Penal Code § 3003(b).  In addition, a county that complains of a parolee's placement may not obtain a court order prohibiting that placement unless there has been an abuse of discretion by the parole authority.   McCarthy v. Superior Court (1987) 191 Cal.App.3d 1023, 1027 [236 Cal.Rptr. 833, 834].

1) the need to protect the safety of a victim, the parolee, a witness or any other person;

2) public concern that would reduce the chance that parole would be completed successfully;

3) the verified existence of a work offer, or an educational or vocational training program;

4) the existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that parole would be successfully completed;

5) the lack of necessary outpatient treatment programs for parolees receiving mental health treatment pursuant to Penal Code § 2960.[71]

If transfer is denied, the parolee can challenge the decision by following the steps in Section # 16, below.

**B. Requesting Transfer To A Different State**

In 2000 and 2002, the state legislature approved adoption of a new Interstate Compact for Adult Offender Supervision to try to make interstate parole and probation supervision procedures more uniform and easier to administer.[72] As of February 2004, the new Compact has been adopted by all states except Massachusetts, and by Puerto Rico and the U.S Virgin Islands. The Compact creates an Interstate Commission for Adult Offender Supervision to oversee, supervise and coordinate the movement of parolees. The Act also creates a California State Council for Interstate Adult Offender Supervision.[73]

The Interstate Commission has adopted rules and procedures transfer eligibility and supervision.[74] A parolee meets the basic eligibility for transfer if he or she has three months of more to serve on parole and: 1) is in compliance with the terms of supervision; 2) was a resident (as defined by the rules) of the receiving state or has resident family who have indicated

---

71. Penal Code § 3003(b).

72. Penal Code §§ 11180 and 11181.

73. Information on the status of implementation of the new Compact and activities of the Interstate Commission for Adult Supervision and California State Council can be found at www.adultcompact.org.

74. Rules Adopted by the Interstate Commission for Adult Supervision on November 3 and 4, 2003 and amended March 12, 2004.

willingness and ability to assist the parolee; and 3) can obtain employment or has means of support. A receiving state may consent to transfer of a parolee who does not meet all of these conditions if there is good cause to do so.[75]

Transfers to serve parole in another state are arranged through the CDC's Interstate Compact Unit in Sacramento.[76] A prisoner or parolee should talk to his or her correctional counselor or parole agent to request transfer consideration. If it appears the person meets all basic eligibility requirements, California authorities submit a completed transfer application to the receiving state.[77] The application must contain certain forms and information, and a parolee who wants to transfer must waive the right to contest extradition from any other state to which he or she may abscond.[78] The earliest that California can send a parole transfer request for a prisoner who has not yet been released on parole is 120 days prior to the expected release date.[79] Transfer requests for California parolees are handled by the Interstate Compact Office, Parole and Community Services Division, Department of Corrections, P.O. Box 942883, Sacramento, CA 94283.

The receiving state is supposed to investigate and respond to a request within 45 calendar day of receipt.[80] The process can be expedited in emergency circumstances.[81]

### C. Out-of-State Absconders or Parole Violators

15 CCR §§ 2730-2733 govern cases where parolees leave California without permission or violate parole while they are being supervised in another state. California officials may enter another state and retake any California parolee; and the BPT may revoke an out-of-state parolee's parole.

If the parolee is subject to pending criminal prosecution in the other state, CDC must wait for the other state's consent or discharge orders before the parolee is available to be returned to California for a hearing. Because prisoners waive the right to contest extradition when they sign

---

75. Id. at § 3.101.

76. See DOM § 81010 et seq. for details on the procedure for paroling out of state.

77. Id. at § 3.102.

78. Id. at § 3.107.

79. Id. at §§ 3.105 and 3.109.

80. Id. at § 3.104.

81. Id. at § 3.106.

their parole conditions, formal extradition proceedings are not necessarily required to return a parolee to California.[82] However, in some cases California will go through formal extradition proceedings unless the parolee waives extradition at the time he or she is ordered returned for parole revocation proceedings. The parolee is entitled to be represented by counsel at a hearing before a magistrate to test the legality of the order directing his or her delivery to the sending state.[83]

The parolee may choose to waive extradition and/or request a revocation hearing in absentia.[84] The benefit of waiving extradition and a hearing is that it starts the parolee's credits sooner and the parolee may be able to serve the California revocation term concurrently with any period of incarceration in the other state. If the parolee does not waive the right to a hearing, the BPT may request the receiving state to conduct the revocation hearing and make a recommendation or may return the parolee to California for a hearing.[85]

Prisoners sometimes do not receive credit for time spent incarcerated prior to the date that the California Interstate Unit *receives notice* that the prisoner is available or the date of actual return to California. Prisoners who think they are entitled to more credit facing should keep copies of any documents showing the date that extradition was waived or ordered and the date any charges in the other state were resolved. These documents can be filed with a CDC Form 602 administrative appeal describing the problem and asking for additional credits.

## 13. WHAT RIGHTS DO PAROLEES HAVE AT PAROLE REVOCATION HEARINGS?

*Pursuant to settlement of the class action lawsuit, Valdivia v. Schwarzenegger (E.D. Cal.) S-94-0671 LKK/GGH, a federal court has entered a permanent injunction that makes many important changes in the parole revocation policies and hearing procedures. Most of these changes apply to anyone who is subject to a parole hold placed on or after January 1, 2005.*[86] *These changes are discussed throughout the following sections of this manual*

### A. Overview of the Parole Revocation Process and Basic Rights

---

82. Penal Code § 11177(3).

83. Penal Code § 11177.1.

84. In re Shapiro (1975) 14 Cal.2d 711 [122 Cal.Rptr. 768]; 15 CCR § 2731(c)(2)(B)(4)(b); Penal Code § 3059.

85. 15 CCR § 2733(c)(2).

86. Valdivia v. Schwarzenegger (E.D. Cal. No. S-94-0671 LKK/GGH), Stipulated Order of Permanent Injunctive Relief, filed March 9, 2004.

The BPT and the Governor have the power to revoke parole and to order a parolee returned to prison.[87] Parole revocation is the process by which a parolee may be found to have violated the conditions of parole and be returned to custody. Parole cannot be suspended or revoked without cause, and the cause must be stated in the order suspending or revoking parole.[88] The violation may be for conduct which is being separately prosecuted as a new criminal offense or it may be for violation of parole conditions only. The details of the parole revocation process used to be set forth in 15 CCR §§ 2600-2744, but many of those provisions have been replaced by new procedures under the Valdivia Injunction.

Generally, the maximum time in custody that the BPT may impose for a parole violation is one year.[89] Some prisoners may be able to reduce the time actually served for a revocation by earning good-time and work-time credits (see Section #14 below). The maximum revocation term may be extended beyond 12 months if the parolee commits misconduct in prison while serving the revocation term.[90] But regardless of any revocation term that is imposed, a parolee may not be kept in custody beyond the maximum parole discharge date (see Section # 1 above).[91] In addition, the Valdivia Injunction requires BPT to use more alternative sanctions to avoid returning parolees to custody for minor parole violations; such alternatives may include self-help outpatients/aftercare programs or electronic monitoring.

In 1972, the United States Supreme Court decided Morrissey v. Brewer, recognized that parole was a form of conditional liberty "and an integral part of the penological system," and established minimal due process requirements for parole revocation proceedings.[92] Morrissey held that parolees are entitled to the following procedural protections:

---

87. Penal Code §§ 3056, 3060 and 3062.

88. Penal Code § 3063.

89. This maximum applies to anyone whose original commitment offense was committed after January 1, 1979. Penal Code § 3057(a); 15 CCR §§ 2635.1 and 2515. For parolees whose offense was committed on or before December 31, 1978, the maximum revocation term is six months. Penal Code § 3057(a); 15 CCR § 2635.1(b).

90. Penal Code §§ 3057(c) and (d).

91. Penal Code § 3000(b)(4).

92. Morrissey v Brewer (1972) 408 U.S. 471 [92 S.Ct. 2593; 33 L.Ed.2d 484]. See also Penal Code §§ 3000-3065; 15 CCR §§ 2600-2744.

- Written notice of alleged violations and the charges' possible consequences to allow a parolee time to prepare a defense and obtain mitigating evidence.[93]
- Disclosure of evidence against the parolee;
- The right to present witnesses and documentary evidence;
- The right to confront and cross-examine adverse witnesses;
- A neutral and detached hearing body; and
- A written statement of the decision, the evidence relied on, and the reasons for revoking parole.[94]

Absconding parolees are not entitled to revocation hearings while still at large, and the BPT may summarily revoke their parole status. However, when the parolee is taken into custody, due process requires that he or she then be given a revocation hearing.[95]

The California Supreme Court has held that parolees may waive their rights, either expressly or by implication as a result of failure to assert the right.[96] Therefore, it is crucial that a parolee make sure that he or she takes advantage of his or her rights and complains in writing if a right is violated. Waiver of rights is further discussed in # 13.G. below.

**B. Right to Notice**

A parole agent who believes a parolee has violated parole, can place a "hold," arrest the parolee and place him or her in custody.[97] The Valdivia Injunction requires the parole agent and unit supervisor to confer on whether to continue or drop the hold within 48 hours (or no later than the next business day if the hold is placed on a weekend or holiday). The Injunction

---

93. Morrissey v. Brewer, supra, 408 U.S. at pp. 488-489. See also Vargas v. United States Parole Commission (9th Cir. 1988) 865 F.2d 191 [new hearing ordered if Parole Commission failed to notify parolee of hearing date and provide him with information used against him]; Rizzo v. Armstrong (9th Cir. 1990) 921 F.2d 855, 858; Vanes v. United States Parole Commission (9th Cir. 1984) 741 F.2d 1197.

94. Morrissey, supra, 408 U.S. at pp. 488-489. See also People v. Vickers, supra, 8 Cal.3d at p. 451; In re Law (1973) 10 Cal.3d 21[109 Cal.Rptr. 573]; In re Love (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89]; In re Valrie (1974) 12 Cal.3d 139 [115 Cal.Rptr. 340]; In re La Croix (1974) 12 Cal.3d 146 [115 Cal.Rptr. 344]; In re Winn (1975) 13 Cal.3d 694 [119 Cal.Rptr. 496]; In re Shapiro (1975) 14 Cal.3d 711 [122 Cal.Rptr. 768]; In re Dunham (1976) 16 Cal.3d 63 [127 Cal.Rptr.343].

95. People v. Vickers, supra, 8 Cal.3d at pp. 460-481.

96. In re La Croix, supra, 12 Cal.3d at p. 153.

97. 15 CCR § 3000.

requires that a parolee be given notice of the alleged parole violation and a notice of rights regarding the revocation process no later than 3 business days after placement of the parole hold.[98]

With some violations the parole agent has great discretion regarding whether to report a violation to the BPT,[99] and the BPT has great discretion as to whether the violation should result in a revocation term. However, many violations must be reported to the BPT and will almost always lead to revocation proceedings.[100]

**C. Right to a Timely Hearing**

The United States Supreme Court's 1972 decision in Morrissey held that there must be a pre-revocation hearing "in the nature of a preliminary hearing," held as promptly as convenient, while information is fresh and sources are available.[101] If probable cause to remove the parolee from the street is found at a pre-revocation hearing, a more formal final revocation hearing must be held within a reasonable time. Despite Morrissey, for many years California parole authorities conducted only a single hearing, often many weeks or months after the parole hold was placed. Unfortunately, courts were generally reluctant to order any remedy for such delays unless a parolee could meet the difficult burden of showing that the delay was unreasonable and that he or she was prejudiced by the delay.[102]

However, in 2002, a federal court held in Valdivia v. Davis that the California unitary parole revocation hearing system violated parolees' procedural due process rights, where the regulations suggested the hearing should be held within 45 days of the date of the parole hold

98. Valdivia v. Schwarzenegger Permanent Injunction, supra, IV.11(b).

99. Parole agents and other parole supervisory personnel work in that part of the CDC known as the "Parole and Community Services Division," or the "P&CSD."

100. 15 CCR § 2616(a) and (b).

101. Morrissey, supra, 408 U.S. at p. 485.

102. The California Supreme Court established a test of reasonableness of a delay in a hearing based on three considerations: (1) pending criminal proceedings; (2) restraints on a parolee charged with a new crime; and (3) prejudice to the parolee. In re La Croix, supra, 12 Cal.3d at p. 156; In re Valrie, supra, 12 Cal.3d at pp. 144-145. See In re O'Connor (1974) 39 Cal.App.3d 972 [114 Cal.Rptr. 883] (upholding as "reasonable" delays of 41 days before holding a pre-revocation hearing and 117 days before the revocation hearing); In re Moore (1975) 45 Cal.App.3d 285, 293 (delay of 55 days is reasonable); Meader v.Knowles (9th Cir. 1992) 990 F.2d 503 (15-month delay was not prejudicial when parolee was allowed to remain at liberty during the delay).

and the actual average time between hold and revocation hearing was 35.2 days. The court found that detention for such a period of time without a probable cause determination violated parolees' liberty interests.[103] The court ordered the BPT and CDC to develop a new parole revocation process – and new time limits – to meet constitutional standards. The court approved a new process, which is described in a Permanent Injunction, and discussed throughout this manual.[104]

As part of the Valdivia Settlement, the BPT must:

- conduct a probable cause hearing no later than *10 business days* after a parolee has been given notice of an alleged parole violation. Between January 1 and June 30, 2005, only some parolees had the opportunity for a probable cause hearing. As of July 1, 2005, *all* parolees are entitled to a probable cause hearing. At the probable cause hearing, the parolee can present evidence to show why the violation charges are unsupported or why the parolee should be continued on parole. This evidence may be presented through the parolee's own testimony or through written documents.

- if the parolee can show that there is a complete defense to the charges on which the parole hold is based, the BPT and CDC must provide an "expedited" probable cause hearing within *6 to 8 business days* after the parolee receives notice of the charges.

- conduct a final revocation hearing no later than *35 calendar days* after placement of a parole hold. [105]

If the parolee waives a hearing pending resolution of criminal charges, the time for calculating delay does not start to run until the parolee reasserts the right to a hearing. If the parolee is released before having a hearing, the BPT can charge the parolee again with violations based on the same conduct. However, the parolee may argue that the delay from the date of the alleged misconduct resulted in prejudice and deprived him of due process of law.[106]

A parolee whose revocation hearing has been delayed and who is still awaiting a hearing, may file a petition for writ of habeas corpus (see Section # 16, below) to try to compel the BPT to hold the hearing. However, the BPT will usually hold the hearing before the case can be processed by the court. If there has been a delay, then the parolee should make an objection at the hearing if he or she feels that his or her due process rights have been violated by the delay.

---

103. Valdivia v. Davis (E.D. Cal. 2002) 206 F.Supp.2d 1068.

104. Valdivia v. Schwarzenegger Permanent Injunction, supra.

105. Valdivia v. Schwarzenegger Permanent Injunction, supra, IV.11(b) and (d).

106. In re Valrie, supra, 12 Cal.3d at p. 139.

The parolee can also file a habeas corpus petition following the hearing; the parolee should cite Valdivia and try to show why the delay prejudiced his or her ability to defend against the charges.[107] To show prejudice, a parolee must show: 1) how he or she could have presented a more complete defense if the hearing had been held earlier, and 2) that there is at least some doubt as to whether the outcome of the hearing would have been different if it had been held earlier.[108] Prejudice might result from delay in holding a hearing when:

- witnesses become unavailable;
- memories are impaired; or
- it has become difficult to contact witnesses and collect evidence.[109]

The relief available may be restoration to parole or remand of the case back to the BPT for further proceedings, including a possible rehearing.[110]

**D. Requesting an Attorney**

Parolees do not have an absolute constitutional right to be represented by counsel, either hired or appointed by the state, at a revocation hearing. Due process requires a lawyer only under certain circumstances.[111] For many years, the BPT appointed lawyers in only a few cases.

However, under Valdivia Injunction, BPT must appoint *appoint a lawyer for every parolee* no later than *6 business days* after a parole hold is placed. The BPT and CDC must provide the parolee's lawyer with all non-confidential information that will be used against the parolee and the lawyer will be able to review the parolee's field file.[112] The lawyer will help the

---

107. Proving prejudice is not required if the court finds the Board acted in bad faith and determines that sanctions are necessary to force the Board to comply with the mandates of Morrissey. See In re La Croix, supra, 12 Cal.3d at p. 155.

108. In re La Croix, supra, 12 Cal.3d at pp. 154-155. A more recent affirmation of the standard appears in People v. Arreola (1994) 7 Cal.4th 1141, 1161 [31 Cal.Rptr.2d 631, 642]. The case refers to the use of hearsay at a revocation hearing.

109. In re La Croix, supra, 12 Cal. 3d at p. 146; In re Valrie, supra, 12 Cal.3d at p. 139.

110. In re Ruzicka, supra, 230 Cal.App.3d at p. 604; In re Bowers (1974) 40 Cal.App.3d 359 [114 Cal.Rptr. 665].

111. People v. Ojeda (1986) 186 Cal.App.3d 302 [230 Cal.Rptr. 609] Gagnon v. Scarpelli (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756]; In re Love, supra, 11 Cal.3d at p. 179; see also Gee v. Brown (1975) 14 Cal.3d 571 [120 Cal.Rptr. 878].

112. Valdivia v. Schwarzenegger Permanent Injunction, supra, IV.11.(b) and (e).

parolee decide whether to take any screening offer and will represent the parolee at any hearings.

The parolee may hire an attorney or have one appointed by the state if he or she has no money.

**E. Confronting Adverse Witnesses and Obtaining/Presenting Evidence**

A parolee has a fundamental right, guaranteed by both the federal and California constitutions, to cross-examine people whose statements may be used against him or her. [113/] The right to cross-examine and confront adverse witnesses includes the right to cross-examine the author of the information on which the parole violation report is based.[114/] Revocation of parole based solely on an unsworn parole violation report, without the opportunity to cross-examine the author or any other witness, can violate a parolee's right to due process.[115/]

Hearsay testimony may be admitted against the parolee, but only if the BPT has good cause for failing to present a witness and this good cause outweighs the parolee's right to confront the witness.[116/] Also, a confidential informant who supplied information on which revocation charges are based may not be required to attend the hearing if the hearing officer determines that disclosing the identity of the informant will create a risk of harm.[117/]

If a witness displays any reluctance to appear at the hearing, the Board may compel attendance by issuing a subpoena.[118/] Two types of subpoenas are available: subpoena ad testificandum (to get a witness to appear), and subpoena duces tecum (to get a witness to produce a document at the hearing).[119/]

---

113. People v. Arreola, supra, 7 Cal.4th at p. 1154; People v. Vickers, supra, 8 Cal.3d at p. 459; People v. Burden, supra, 105 Cal.App.3d at p. 917; United States v. Comito (9th Cir. 1999) 177 F.3d 1166.

114. See In re Carroll, supra, 80 Cal.App.3d at pp. 34-35.

115. Gholston v. Jones (11th Cir. 1988) 848 F.2d 1156.

116. United States v. Comito, supra, 177 F.3d at p. 1170; People v. Arreola (1994) 7 Cal.4th 1144, 1159-1161.

117. In re Melendez (1974) 37 Cal.App.3d 967, 973 [112 Cal.Rptr. 755]; In re Prewitt (1972) 8 Cal.3d 470, 477-478 [105 Cal.Rptr. 318]; 15 CCR § 2668(e).

118. 15 CCR § 2675.

119. 15 CCR § 2676.

A parolee also has the right to present evidence, including testimony of relevant witnesses.[120] Under the Valdivia Injunction, a parolee's counsel has the ability to subpoena and present witnesses and evidence to the same extent and under the same terms as the state.[121] A parolee may request the attendance of evidentiary witnesses or dispositional witnesses. "Evidentiary witnesses" are people who perceived, reported on or investigated the event which is the basis for the evidentiary proceeding. "Dispositional witnesses" are people who will provide information on the overall adjustment of the parolee or other factors affecting the amount of punishment appropriate for a violation.[122] Character witness testimony, which is testimony that is not relevant to the details of the actual parole violation but discusses the good character of the parolee, should be submitted in writing.[123]

A person served with a subpoena is obliged to attend as a witness unless the hearing is held at a place outside the county of his or her residence and more than 50 miles from the residence.[124] The superior court in the county where the hearing is held, upon petition by the BPT, has jurisdiction to compel the attendance of witnesses.[125]

If a subpoenaed material witness fails to attend a hearing, and the hearing cannot fairly proceed without the witness, the BPT can and should postpone the hearing to allow time to enforce the subpoena. Whether the witness' testimony would be "material" is determined by weighing the importance of a witness' testimony against the reliability of any alternative means of getting the same information. If any witness whose testimony would be material and relevant to the charged violation is not present despite timely requests by the parolee's attorney, there are solid grounds for a petition for writ of habeas corpus to overturn the verdict on grounds that the parolee's rights to present evidence or to confront and cross-examine adverse witnesses have been denied.[126] (See # 16, below.)

---

120. Morrissey v. Brewer, supra, 408 U.S. at p.489; In re Carroll (1978) 80 Cal.App.3d 22, 34 [145 Cal.Rptr. 334, 341].

121. Valdivia v. Schwarzenegger Permanent Injunction, supra, IV.21.

122. 15 CCR § 2000(b)(40) and (44).

123. 15 CCR § 2668(b)(1) and (2).

124. 15 CCR § 2679(a); Government Code § 11185.

125. Government Code §§ 11186-11188; 15 CCR § 2679(c).

126. White v. White (9th Cir. 1991) 925 F.2d 287. Such an argument should rely on Morrissey v. Brewer, supra, 408 U.S. at p. 471; People v. Vickers, supra, 8 Cal.3d at p. 45; In re Prewitt, supra, 8 Cal 3d at p. 470; In re Carroll, supra, 80 Cal.App.3d at p. 22.

Parole authorities also must provide the parolee's lawyer with all non-confidential documents on which the state intends to rely at the hearing. In addition, parolees' attorneys have the right to get access to the parole field files. If confidential information is used as part of the basis for the charges against the parolee, a parolee can request that the BPT disclose the information or prove that disclosure would create an undue risk of harm to the informant.[127]

Physical evidence is only permitted when it is necessary for the hearing and will not pose a threat to institutional security.[128] The BPT has a duty to preserve and disclose material physical evidence.[129]

Documents or reports containing hearsay evidence may also be admitted if there are sufficient "indicia of reliability" for the BPT to conclude that they are trustworthy.[130] For example, a report prepared by a drug rehabilitation director, indicating failure to participate in a required probation program, has been found to be admissible at a probation revocation hearing.[131] Likewise a county crime lab report analyzing a suspected drug sample was held admissible.[132]

**F. Requesting Accommodations for Disabilities**

Prisoners and parolees with disabilities are entitled to reasonable accommodations under the Americans with Disabilities Act.[133] Examples of possible accommodations include ensuring access to the hearing room for a parolee with mobility impairments; braille or taped documents or reading assistance for a vision-impaired parolee; assistance in communicating for a developmentally-disabled parolee; or sign language interpretation for a hearing-impaired parolee.

---

127. Valdivia v. Schwarzenegger Permanent Injunction, supra, IV.14-16; see also In re Prewitt, supra, 8 Cal.3d at p. 478; In re Love, supra, 11 Cal.3d at p. 184.

128. 15 CCR § 2667.

129. People v. Moore (1983) 34 Cal.3d 215 [193 Cal.Rptr. 404].

130. See People v. O'Connell (2003) 107 Cal.App.4th 1062, 1066 [132 Cal.Rptr.2d 665].

131. People v. O'Connell (2003) 107 Cal.App.4th 1062 [132 Cal.Rptr.2d 665].

132. People v. Johnson (2004) 121 Cal.App.4th 1409 [18 Cal.Rptr.2d 230].

133. Armstrong v. Davis (N.D. Cal. August 4, 2000) No. C94-2307 CW Stipulation and Order Approving Defendant's Policies and Procedures, VIII.A and B, upheld in Armstrong v. Davis (9th Cir. 2001) 275 F.3d 849; 15 CCR §§ 3085 and 2251.

BPT procedures allow parolees and life prisoners with disabilities to request accommodations to ensure that they have effective communication and equal access to parole proceedings.[134] Prisoners seeking such accommodations should use the BPT Form 1073 to make a request. A correctional counselor or C&PR should do the initial paperwork and send it to the BPT's American's with Disabilities Act Unit Coordinator for grant or denial.[135] If the request for accommodation is denied, it can be immediately appealed prior to the hearing by using BPT Form 1074. BPT must answer appeals raising disability issues within 30 days.

**G. Waivers of Rights**

In all cases except psychiatric attention/referral cases, upon a finding of good cause, the BPT will recommend a dispositional "screening" offer.[136] Parolees may accept the offer by signing an unconditional waiver of their right to a hearing, akin to a plea bargain in criminal court. Parolees may also sign a conditional (optional) waiver, which waives the right to a hearing until the right is later reasserted.

1. Unconditional Waiver

By signing of this type of waiver, a parolee completely waives the right to a revocation hearing, including the right to appear, contest the charges and call witnesses. The waiver is not an admission of guilt but it does foreclose the possibility of a later hearing. The BPT may offer a reduced revocation sentence in exchange for signing the waiver form. If the parolee signs the waiver when no specific revocation term is offered, the BPT central office decides the length of the term.

2. Conditional (or Optional) Waiver

If the parolee signs this type of waiver, the parolee waives the revocation hearing during a pending criminal prosecution, but keeps the option of requesting a hearing in the future. The parolee may then submit a request a hearing no more than 15 days following sentencing or final disposition of the criminal case in the trial court and no later than two months before the expiration of the revocation period initially set by the BPT. At the hearing, the panel may or may not uphold the revocation but it cannot order the parolee returned to custody for more time than previously ordered.[137]

---

134. Armstrong v. Davis Stipulation and Order, supra, VIII.A and B; 15 CCR § 2251.5.

135. Ibid.

136. 15 CCR § 2641(c).

137. 15 CCR § 2641(b).

Parolees who conditionally waive their right to a hearing pending adjudication of criminal charges should remember:

- to schedule a new hearing -- a parolee must reassert the right to a hearing immediately after the criminal charges are resolved;
- if the parolee accepted a plea bargain for the criminal charge in court, he or she cannot contest that charge at the BPT hearing; and
- the BPT may still revoke parole even though the court dismissed the criminal charges because the BPT uses a lower standard of proof (preponderance of the evidence).

**H. The Revocation Hearing**

Parole hearings may be conducted by one or more BPT hearing officers.[138] A parolee is entitled to have the case heard by an impartial panel or hearing officer. A parolee may request disqualification of a panel member. In addition, a panel member shall disqualify himself if: (1) there is a close relationship between the member and the parolee or their families, (2) the member was involved in a past incident with the parolee which may cause prejudice, or (3) the member is actually prejudiced against or biased for the parolee.[139] Disqualification shall not occur solely because the member knows the parolee or has made a past decision affecting the parolee. The decision on disqualification must be documented.[140]

When a parolee's rights are violated at the hearing, parolees and their attorneys should make oral objections clearly and concisely. The objections will then be documented on the tape recording of the hearing and, hopefully, the written Summary of the Revocation Decision. Parolees can then refer to these objections if they choose to challenge the BPT's decision.

The burden of proof at a parole revocation hearing is on the BPT to prove the violation by a preponderance of the evidence. This is a lesser standard that the "beyond a reasonable doubt" standard applied in criminal trials.

**I. Parole Revocation Extension Hearings**

---

138. Penal Code § 3063.6.

139. 15 CCR § 2250.

140. People v. Vickers (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305].

The BPT may extend a parole violator's revocation sentence up to an additional 12 months for misconduct while confined in prison or jail on the revocation term.[141] The BPT may extend a parole violator's revocation sentence by the following periods:

- up to 180 days extension for each act punishable as a felony, whether prosecution is undertaken or not;
- up to 90 days for each act punishable as a misdemeanor, whether prosecution is undertaken or not;
- up to 30 days for each serious disciplinary offense.[142]

"All cases requiring an extension hearing shall be scheduled promptly in order to maintain the availability of witnesses."[143] Parole violators who have been referred to the BPT for a revocation extension hearing are entitled to the same due process rights as at a parole revocation hearing.[144] Therefore, parolees should assert their rights and prepare for an extension hearing in the same way as they do for a revocation hearing.

A parole violator's release date may be extended for a period not to exceed forty-five days for an act punishable as a felony or misdemeanor or thirty days for any other serious disciplinary offense, pending an extension hearing.[145]

**14. ARE PAROLE VIOLATORS ENTITLED TO EARN WORKTIME CREDIT?**

Yes, if they are eligible.

As of September 30, 1987, all eligible parole violators receive good-time credits (one-for-two credits) and have the opportunity to earn worktime credits (one-for-one credits) against their revocation terms.[146] Eligible parole violators working or programming full-time in prison will receive a half-time release date. Eligible parole violators who are serving their sentence in

---

141. Penal Code § 3057(c).

142. Ibid.

143. 15 CCR § 2742(h).

144. See Penal Code § 3057(c); 15 CCR § 2742(i).

145. 15 CCR § 2742(d).

146. Penal Code § 3057(d); 15 CCR §§ 2743-2744.

community facilities or county jails and assigned to credit qualifying jobs should also receive one-for-one credits.[147]

Eligibility for credits during a parole revocation term is determined by Penal Code § 3057.[148] Generally, a parole violator is ineligible for § 3057(d) credits if the commitment offense was, or the revocation charges could have been prosecuted as, a:

- life crime;
- robbery;
- violent offense;
- sex offense;
- gun enhancement;
- kidnapping;
- poisoning substances;
- arson with great bodily injury;
- rioting; or
- any attempts at any such conduct.

Also ineligible are parolees who violated a condition of parole relating to:

- association with specified persons;
- entering prohibited areas;
- attending a parole out-patient clinic; or
- required psychiatric attention;[149] or
- if the Board finds the parolee unsuitable for credits because of the seriousness of the violation or the parolee's criminal history.[150]

---

147. See CDC Administrative Supplemental Bulletin 87/89, dated May 23, 1988 [eligible sentenced parole violators who are serving their revocation sentence in local facilities and participating in a CDC-approved work incentive program will receive one-for-one credits]; 1988 Amendment to Penal Code 3057(d).

148. Other sentencing statutes that determine credits on criminal sentences do not necessarily apply to parole violation terms. Thus, a person who has served a "second strike" term under Penal Code § 667(b)-(i) with only 20 percent credit-earning status, may earn full credits on a parole violation term so long as he or she is otherwise eligible under Penal Code § 3057.

149. 15 CCR § 2744(b)

150. 15 CCR § 2744(e)

Parole violators should carefully check the BPT's reason for deciding that they are ineligible for credits with the criteria listed in the Penal Code. If the BPT's decision does not comply with the statute, the parolee should follow the steps in # 16 below.

If a parole violator who is earning worktime credits forfeits credits because of rules violations, he or she is not entitled to have that credit restored for good behavior.[151]

## 15. CAN A PAROLEE GET DRUG DIVERSION INSTEAD OF A PAROLE REVOCATION TERM?

Sometimes.[152]

Proposition 36 amended Penal Code § 3063.1 and requires that certain nonviolent drug offenders be sent to a drug treatment program instead of having to go to prison on a parole revocation. Prop. 36 can apply to any parole violation that occurs on or after July 1, 2001.

Prop. 36 allows a judge or the BPT to send a parolee convicted of a nonviolent drug possession offense (possession, use, or transportation of controlled substances) or a violation of any drug-related condition of parole to a certified drug treatment program. The types of parole violations for which Proposition 36 may be used include failure to participate in controlled substance testing; possession or use of a controlled substance; possession of paraphernalia; presence in a place where controlled substances are used, sold or given away; or failure to register pursuant to Health and Safety Code section 11590.

In addition to a drug treatment program, the parolee may also be required to complete job training, family counseling, and/or literacy training. Any parolee placed in a drug treatment program under Prop. 36 may be required to help pay for the program, if reasonably able to do so. The drug treatment services required as a condition of parole under this section may not go on for more than 12 months, but other "aftercare" services may also be required as a condition of parole for up to six more months. Thus, some parolees choose not to take advantage of the Prop. 36 diversion program when the treatment program term is longer than their likely revocation term.

Some parolees are not eligible for drug diversion under Prop. 36, particularly:

- Any parolee who has ever been convicted of one or more serious or violent felonies (they are listed in Penal Code sections 667.5 or 1192.7).

---

151. Penal Code § 3057(d).

152. The information throughout this section is taken from Penal Code §3063.1 and the Board of Prison Terms Operational Guidelines for Proposition 36.

- Any parolee who, while on parole, commits one or more nonviolent drug possession offenses and is found to have, at the same time, committed either a misdemeanor not related to the use of drugs or any felony. A "misdemeanor not related to the use of drugs" is a misdemeanor that does not involve possession of drugs for personal use, use of drugs, possession of drug paraphernalia, presence where drugs are used, or failure to register as a drug offender. (Board of Prison Terms, Operational Guidelines for Proposition 36.)

- Any parolee who refuses drug treatment as a condition of parole.

The first time a parolee who is eligible for Prop. 36 diversion violates parole by being arrested for a nonviolent drug possession offense or by violating a drug-related condition of parole, and the BPT acts to revoke parole, a revocation hearing must be held. If the parole violation is proved and the evidence shows it is more likely than not that the parolee poses a danger to the safety of others, parole must be revoked. If the parolee is not considered to be a danger to society, he or she may be diverted to a drug treatment program, instead of being sent to prison. Within seven days of the hearing, the BPT must notify a designated drug treatment provider that the parolee will be attending their program. Within 30 days of receiving that notice, the treatment provider must develop a treatment plan and send it to the BPT and the parolee's parole agent. Once the parolee begins the treatment plan, the drug treatment provider must give the BPT and the parole agent an update every 3 months.

Prop. 36 usually can apply to only one parole violation. If a parolee violates parole a second time or more for a drug-related offense or parole violation, he or she is not eligible for drug program diversion and may be returned to prison. Also, if, during drug treatment under Prop. 36, a parolee violates parole either by being arrested for an offense other than a nonviolent drug possession offense, or by violating a non-drug-related condition of parole, the BPT may revoke the parole.

**16. CAN PAROLEES CHALLENGE CDC OR BPT DECISIONS THAT AFFECT THEIR PAROLE?**

Yes.

The tape of the hearing can be very important for challenging the hearing decision. A parolee who wishes to challenge the BPT's decision should immediately send the BPT a request for a copy of the tape recording of the hearing. The request can be sent to: Decision Processing Unit, BPT ADA Compliance Unit, Board of Prison Terms, 1515 K. Street, Suite 600, Sacramento, CA 95814.

The BPT decides how parole hearings are conducted and decides whether to revoke parole and for how long; the BPT sometimes also sets parole length and conditions. In the past,

BPT actions could be appealed by using the BPT 1040 Form. However, as of May 2004, the BPT has abolished its administrative appeal procedures, except for grievances by parolees who need accommodations for disabilities. (See Section 13.F, above.) Thus, parolees and prisoners do not have to file a BPT 1040 Form with the BPT before taking their complaints to court using a petition for a writ of habeas corpus.

CDC staff set most conditions of parole, decide the location of parole and place parole holds. A parolee must still file an administrative appeal of CDC decisions prior to filing a court action.[153] For all complaints except disability issues, the appeal is started by sending a CDC Form 602 to the Appeals Coordinator for the parole region. The CDC 602 appeal process has four levels.[154] Each level has a time limit within which the appeal must be answered.[155] There are some exceptions to the normal procedures; for example, appeals of parole location will not go to an Informal Level of review but will be assigned directly to the Assistant Regional Parole Administrator for First Level review.[156] Also, appeals of parole conditions will not go to the Informal or First Formal Levels; they will be assigned directly to the Regional Parole Administrator for Second Level review. The parolee can get then ask for Third Level review by sending the appeal to the CDC Director.

There is a special CDC appeal process for people with disabilities to ask for fair treatment or to get access to CDC services or programs. Parolees who want their CDC parole agents to provide accommodations for a disability should fill out a CDC Form 1824. 1824 forms should be answered more quickly than ordinary 602 appeals – a parolee does not need to get Informal review of an 1824 and the First Level answer is due within 15 working days.[157] A parolee who does not agree with the First Level response can file the appeal to the Second Level by attaching the 1824 form to a regular 602 appeal form, filling out section F of the 602, and

---

153. When an agency has an administrative appeal procedure, courts will usually deny any legal action unless all administrative remedies have first been sought. See In re Dexter (1979) 25 Cal.3d 921, 925 [160 Cal.Rptr. 188]; In re Muszlaski (1975) 52 Cal.App.3d 500, 503 [125 Cal.Rptr. 286]. However, state courts may allow exceptions to this requirement when: the administrative remedy is unavailable or inadequate; pursuit of the remedy would be futile, such as where an adverse decision by CDC is certain; or where a delay in hearing the case would possibly subject the prisoner to irreparable harm such as risk of serious injury. (See Glendale City Employee's Association, Inc. v. City of Glendale (1975) 15 Cal.3d 328, 342-43 [124 Cal.Rptr.513]; In re Serna (1978) 76 Cal.App.3d 1010 [143 Cal.Rptr. 350].)

154. 15 CCR § 3084.5.

155. 15 CCR § 3084.6.

156. 15 CCR §3084.7(f)(2).

157. 15 CCR § 3085(a); Armstrong v. Wilson Remedial Plan (Jan. 3, 2001) IV.I.23(e).

sending both forms to the Regional Parole Administrator. The Second Level answer is then due in 15 working days. A parolee can also send the disability appeal to the Third Level, just like a regular 602 appeal, and should get the Third Level response within 20 working days.[158]

A parolee may consider filing a petition for writ of habeas corpus in superior court once the administrative appeal process is completed (for CDC issues) or immediately after the agency decision (for BPT issues). The parolee should attach a copy of any administrative appeal decision to the petition. A state court petition for writ of habeas corpus can challenge a violation of state or federal constitutional due process rights or violation of the rights established by California statutes or administrative rules. For example, a petition could argue that the revocation hearing was unreasonably delayed or that the parolee was denied the right to confront and cross-examine adverse witnesses or that the revocation was not supported by the evidence. The relief requested may be an order that the revocation be vacated and the BPT conduct a new hearing or an order that the parolee be returned to parole.[159] More information on state habeas corpus petitions, including sample forms, is available in the Prison Law Office Habeas Corpus manual, at www.prisonlaw.com/research.php.

**17. CAN A PAROLEE OBTAIN A BUSINESS LICENSE?**

It depends on the type of license and the conviction.

In California, most occupations requiring licensing are regulated by the Bureau of Consumer Affairs, with the exception of: 1) applicants for membership in the State Bar; 2) persons seeking licensure in occupations subject to the Alcohol Beverage Control Act; 3) applicants for licensure as manufacture, mobile home or commercial coach salesperson; and 4) any persons holding a financial interest or the ability to exercise influence over the operation of a gaming club.

The denial, suspension and revocation of licenses for all occupations regulated by the Bureau of consumer Affairs is covered by Business and Professions Code §§ 475-491. Section 475 sets forth grounds for the denial of a license, one of which is "conviction of a crime."[160] Section 480 specifically provides that a board may deny a license on the ground that an applicant has been convicted of a crime "only if the crime or act is substantially related to the qualifications, functions or duties of the business or profession for which application is made."[161]

---

158. Armstrong v. Wilson Remedial Plan, *supra*, IV.I.23(e).)

159. But see In re Valrie, supra, 12 Cal.3d at pp. 144-145 (after restoration to parole, Board can recharge parolee with the same parole violations).

160. Business and Professions Code § 475(a)(2).

161. Business and Professions Code § 480(a)(3).

A person shall not be denied a license solely on the basis that he has been convicted of a felony if he has obtained a Certificate of Rehabilitation under Penal Code § 4852.01, or on the basis of a misdemeanor conviction if he has met all of the criteria of rehabilitation developed by the individual board.[162]

### A. Substantial Relationship

Each board under the provisions of the Business and Professional Code is required to develop criteria to evaluate the substantial relationship of a crime to the qualifications, functions or duties of the business or professional being regulated.[163] The general criteria which would show a substantial relationship is when "the crime or act...evidences present or potential unfitness...to preform the functions authorized by...[the]..certificate or registration in a manner consistent with the public health, safety or welfare."

The above criteria, in substantially the same form, are generally also included in the Title of the California Code of Regulations dealing with the specific license in question. It is often followed by a list of crimes which are considered to be substantially related. (The lists are not exclusive, but may indicate trends in decisions.)

### B. Rehabilitation

Each licensing board is also required to develop criteria to evaluate the rehabilitation of a person when considering denial or suspension of a license.[164] The various boards will consider the following general criteria:

1) The nature and severity of the act(s) or crime(s) under consideration as grounds for denial;

2) Evidence of any act committed subsequent to the act under consideration which could also be considered as grounds for denial;

3) The time that has elapsed since commission of the act under consideration;

4) The extent to which the applicant has complied with any terms of parole, probation, restitution, or any other sanctions; and

5) Evidence of rehabilitation submitted by the applicant.

---

162. Business and Professional Code § 480(b), see also Penal Code § 4852.06.

163. Business and Professions Code § 481.

164. Business and Professions Code § 482.

As with the substantial relationship criteria, the various boards may have a list of specifics relating to the above list and/or further factors to be considered.

A person shall not be denied a license solely on the basis of a felony conviction if they have obtained a Certificate of Rehabilitation pursuant to § 4852.01 et seq. of the Penal Code.[165]

## 18. WHAT CRIMINAL HISTORY INFORMATION MUST A PAROLEE GIVE TO AN EMPLOYER?

An employer may ask about your prior convictions. However, generally, an employer cannot ask about or consider arrests that did not result in a conviction. There are some exceptions if you are awaiting trial for an arrest. There are also some exceptions for employers at law enforcement agencies and health care facilities.[166]

Most private employers do not have a right to obtain or request a job applicant's or employee's written criminal history report ("rap sheet"). However, there are again some exceptions for government employers, public utilities, and school or eldercare agencies, when such access is authorized by law or regulation.[167] Even though they cannot obtain an official rap sheet, other employers may still be able to obtain information about a prospective employee's background from public sources like court databases or news agencies.

The Legal Aid Society Employment Law Center has an excellent information package on employment rights of parolees and instructions on how a parolee can obtain copies or ask for corrections of his or her criminal history rap sheet. The information is available at the Employment Law Center's website at www.las-elc.org. The Employment Law Center can also be contacted at 1663 Mission Street, Suite 400, San Francisco, CA 94103.

## 19. HOW CAN A PAROLEE OBTAIN A CERTIFICATE OF REHABILITATION OR A PARDON?

A person must wait for a certain period of time (usually seven years from last release from custody, five years of which the person must have resided in California) before he or she can file a petition for a Certificate.[168] During the period of rehabilitation the person must live an

165. Business and Professions Code § 480(b).

166. Labor Code § 432.7.

167. Penal Code § 11105; Labor Code § 432.7.

168. Penal Code § 4852.03.

honest and law abiding life.[169] Some ex-felons are not eligible at all to apply for a certificate of rehabilitation, and some must wait additional periods of time before applying.[170]

The Petition for Rehabilitation is available for the County Clerk at no cost. Indigent petitioners are entitled to court appointed counsel at the hearing.[171] The Petition must be filed in the Superior Court of the county where the parolee resides. Copies of the Petition must be served upon the District Attorney of the county of residence as well as the District Attorney of every county in which the person was convicted of a felony and the Governor's office, all at least 30 days before the hearing date.[172] If the court grants the petition, it will issue the Certificate of Rehabilitation and recommend that the Governor grant a full pardon to the petitioner.[173]

Additional information on pardons and certificates of rehabilitation can be found on the BPT's website at www.bpt.ca.gov.

---

169. Penal Code § 4852.05.

170. Penal Code §§ 4852.01 and 4852.03. In People v. Ansell (2001) 25 Cal.4th 868, the California Supreme Court held that applying new limits on certificates of rehabilitation to offenders convicted prior to the date of the new limits does not violate ex post facto principles.

171. Penal Code § 4852.08.

172. Penal Code § 4852.07.

173. Penal Code § 4852.13.

# *Valdivia v. Schwarzenegger* Frequently Asked Questions (Revised 8/13/07)

Enclosures: Valdivia Injunction
BPH Form 1074
Parolee Handbook
Habeas Corpus packet

*Question* *Page*

1. **What is the *Valdivia v. Schwarzenegger* lawsuit?** ....1
2. **What are my rights as a parolee under the *Valdivia* Injunction?** ....2
3. **Who should I talk to if the CDCR or BPH has violated my rights?** ....3
4. **What if my parole agent was wrong when s/he put the parole hold on me?** ....3
5. **What if parole gave me notice of the charges and my rights more than three business days after the parole hold was placed?** ....4
6. **What if my Probable Cause Hearing was late?** ....4
7. **What if my final revocation hearing was late?** ....4
8. **How do I challenge a condition of parole?** ....5
9. **What if I don't agree with what happened at my final revocation hearing?** ....6
10. **How do I request a copy of the tape or the written decision from my final revocation hearing?** ....7
11. **How do I contact my appointed attorney for my parole violation charges?** ....7
12. **What if my attorney did a bad job representing me?** ....7
13. **What if I had problems with my parole revocation process because of a disability?** ....7
14. **What is an optional waiver?** ....8
15. **I waived my right to a timely final revocation hearing because I had local court charges pending. Now my local charges are resolved. What should I do?** ....8
16. **The same charges are being used against me in my parole revocation and by the DA locally. Is that allowed?** ....9
17. **The state's witnesses did not show up at my hearing and the DC postponed it. Is that OK?** ....9

18. **I was arrested in another state and none of the deadlines you talk about were met in my case. Is that a violation? ....................9**

19. **My parole has been extended past three years. Can the BPH do that?...........10**

20. **I am being held in custody past the term I was given by the BPH. What should I do?....................10**

21. **I'm not sure when my release date is. What should I do? ....................11**

22. **I keep getting violated because I have no place to go in my parole county and my family and support system are in a different county or state. How can I get my parole transferred to the county or state where my family is? ....................11**

23. **I want a lawyer to help me with my individual case. How can I get one?....................13**

24. **What resources are available to me on parole? ....................14**

25. **When I was released from my prison term I got gate money. Will I get gate money when I am released from my parole revocation term? ....................14**

26. **How do I get mental health care while I'm on parole and during parole violation terms? ....................14**

  a) If you are now housed in a CDCR institution and need mental health treatment: .................... 14

  b) If you are now housed in a county jail and need mental health treatment: .................... 17

  c) If you are now on parole and need mental health treatment:.................... 17

27. **Information about Forms used in Revocation Proceedings....................18**

28. **What is a revocation extension? What are my rights?....................19**

29. **What is plaintiffs' counsel doing to address overcrowding? ....................19**

30. **Conclusion....................20**

When our office wrote this informational letter, we did our best to give you useful and accurate information because we know that prisoners, their families and their advocates often have difficulty obtaining legal information. However, you should be aware that laws change often and are subject to differing interpretations. We do not always have the resources to make changes to this informational letter every time the law changes. It is your responsibility to make sure that the information contained in this letter has not changed and is applicable to your situation. If you are in the community, most of the materials you need should be available in public law libraries. Prisoners should also be able to find these materials in the prison law libraries.

## 1. What is the *Valdivia v. Schwarzenegger* lawsuit?

We are one of the law firms that represent the plaintiffs in the *Valdivia* lawsuit (E.D. Cal. No. Civ. S-94-0671 LKK/GGH), a federal class-action lawsuit about the way California treats people who are arrested on parole violations. If you are a California parolee, you are part of the *Valdivia* plaintiff class whether you are out on parole, being held on revocation charges or revocation extension charges, or serving a revocation term.

The Due Process Clause of the 14th Amendment of the U.S. Constitution applies to parole revocation proceedings. That means that before the Board of Prison Hearings can keep you in prison for a parole violation, they must provide you with notice of the charges against you and the opportunity for a hearing. The *Valdivia* lawsuit was filed in 1994 against state officials in charge of the Board of Prison Terms (now called the Board of Parole Hearings, "BPH") and the California Department of Corrections (now called the California Department of Corrections and Rehabilitation, "CDCR"), challenging violations of parolees' due process rights. In June 2002, the federal court ruled on a pre-trial motion (motion for summary judgment) that the BPH and CDCR violate parolees' constitutional rights by holding parolees for weeks, and sometimes months, without any hearings to find out whether there is enough evidence ("probable cause") to arrest the parolee. This order was published. You can find it in the law library at 206 F. Supp. 2d 1068 (Page 1068 of Volume 206 of the Federal Supplement, Second Series).

The *Valdivia* case has resulted in a federal court order called the "Stipulated Order for Permanent Injunctive Relief" (Permanent Injunction), which was entered by the court on March 9, 2004. The court ordered the BPH and CDCR to develop a new process and new time limits for holding hearings. The Permanent Injunction outlines the new process. As of July 1, 2005, the new process is fully implemented.

The federal court is able to enforce these requirements, and plaintiffs' attorneys in *Valdivia* monitor how the BPH and CDCR comply. The Permanent Injunction does not affect parolees' ability to sue the BPH and CDCR for money damages regarding parole revocation, or to file a petition for a writ of habeas corpus. However, in any case where you ask the court to make the BPH or CDCR change their practices for everybody, BPH and CDCR officials may argue that the lawsuit should be dismissed because of the *Valdivia* settlement.

**2. What are my rights as a parolee under the *Valdivia* Injunction?**

(Please note: all time frames are calculated by counting from the day after the event that starts the time running. For example, if your parole hold was Monday, August 1, start counting with August 2 as "Day 1" to get to the deadline.)

- The BPH and CDCR must give parolees notice of the alleged parole violations and notice of rights within 3 *business* days of the placement of a parole hold. Business days do not include weekends or state holidays.
- All parolees receive attorneys in the parole revocation process. You should have a chance to meet with your attorney by the 8th business day after you receive notice of the charges. Attorneys will help the parolees decide on any screening offers and will represent parolees at any hearings.
- The BPH and CDCR must provide attorneys with all non-confidential information they intend to use against the parolee. There must be limits on what information the BPH and CDCR can call confidential.
- Parolees' attorneys are able to review the non-confidential information in parolees' field files.
- Attorneys are provided with training on how to represent parolees effectively and how to ensure effective communication with parolees.
- The BPH and CDCR must provide a preliminary hearing called a "probable cause hearing" within 13 business days of the parole hold. If your attorney can show that there is *no* basis to hold you, the BPH and CDCR must provide an expedited (faster) probable cause hearing 6 to 8 *business* days after the parolee receives notice of the charges, upon request.
- At the probable cause hearing, parolees are allowed to present evidence to defend against the charges or to show that revocation is not the right thing for the BPH to do. The parolee and parolee's attorney are allowed to present their case through the parolee's testimony or written documents.
- Final revocation hearings must be held on or before the 35th *calendar* day after placement of the parole hold. The 35-day timeline runs from the day after a parole hold is placed. (That means, the day the parole hold is placed is Day 0, and the next day is Day 1.)
- Parolees' attorneys are able to subpoena and present witnesses and documents for final revocation hearings in the same way that the state can subpoena and present witnesses. That means that the Deputy Commissioner should not generally limit parolees' witnesses.
- The BPH and CDCR are not permitted to use hearsay evidence against a parolee in a manner that violates the parolee's right to confront his or her

accusers. That means that if a DC is going to consider a statement by someone who is not at the hearing, there must be strong evidence that the statement is reliable and there must be a very good reason for the witness not to be at the hearing.

- Parolees with a disability are able to ask for help before, during, or after a BPH hearing. If a parolee with a disability does not get the help he or she needs, the parolee can send a Grievance (BPH form 1074 or a letter) to:

  Board of Parole Hearings
  ADA Compliance Unit
  P.O. Box 4036
  Sacramento, CA 95812

3. **<u>Who should I talk to if the CDCR or BPH has violated my rights?</u>**

You should talk to the attorney who is representing you in your parole revocation proceedings. As a result of the *Valdivia* Injunction, the state of California must appoint lawyers to represent all parolees during the parole revocation process. The California Parole Advocacy Program (CalPAP) provides legal representation to parolees from the initial return-to-custody-assessment ("screening offer") through the final revocation hearing. For help with your individual parole revocation issues, contact your appointed CalPAP attorney. If you have not yet met with your attorney or do not know how to contact your attorney, contact the regional CalPAP office covering the county in which you are incarcerated. (We are attaching a list with this contact information.) CalPAP offices should accept collect phone calls.

You can also contact our office. We are reading all letters sent to us by parolees and collecting information about whether the State is following the *Valdivia* Injunction. Unfortunately, at this stage of the case, we are only able to help parolees in the small number of cases where the CDCR/BPH agrees that they have done something wrong. If we have information indicating that the CDCR/BPH is violating the rights of a large group of prisoners, we can bring that up to the judge and require that defendants fix the problem. However, we will not be able to help you sue on an individual basis. For example, as of December 2005, defendants have been holding probable cause hearings late at many locations. We have told defendants that they need to hold probable cause hearings on time and they have agreed. However, if your probable cause hearing was late, we will not be able to help you get your charges dismissed.

4. **<u>What if my parole agent was wrong when s/he put the parole hold on me?</u>**

If you have not had a revocation hearing yet and believe you should not be in custody because the charges are wrong, or for some other reason, you can appeal your parole hold on a CDCR Form 602 (green form), submitted by institutional mail or mailed

to your parole office. You have a right to appeal the reasons for your parole hold even before you have a revocation hearing according to the California Code of Regulations, Title 15 sec. 2604. You should file the 602 at all four levels of review if you think you might want to go to court later on. You can also challenge the reasons for your parole hold at your probable cause hearing and your final revocation hearing.

5. **What if parole gave me notice of the charges and my rights more than three business days after the parole hold was placed?**

You are supposed to get notice of your parole violation charges and your rights within three business days of the parole hold. If you did not get your notice within this time, you and your attorney can make an objection at the Probable Cause Hearing or final Revocation Hearing. But, right now the BPH's policy is that they will overrule objections about late notices, unless you can show "prejudice." That means if you had received notice of the charges within three business days, you would have been better able to defend yourself against the charges. Our office is continuing to dispute this policy of the Board's, but that is the rule that Deputy Commissioners are following right now. So, be sure to explain how the delay in receiving notice hurt your ability to participate in the revocation process and defend against the charges.

6. **What if my Probable Cause Hearing was late?**

You are supposed to have a Probable Cause Hearing ("PCH") within 10 business days after the deadline to receive notice of charges (that means, within 13 business days of the parole hold). If you did not get your PCH within this time, you and your attorney can make an objection at the PCH or Revocation Hearing. But, right now the BPH's policy is that they will overrule objections about late probable cause hearings, unless you can show "prejudice" caused by the delay. That means that if you had had your PCH within the 13 business day time frame you would have been better able to defend yourself against the charges. Our office is continuing to dispute this policy of the Board's, but that is the rule that Deputy Commissioners are following right now. So, be sure to explain how the delay in receiving the PCH hurt your ability to participate in the revocation process and defend against the charges.

7. **What if my final revocation hearing was late?**

If you have not had your final revocation hearing within 35 days of the parole hold, then the Deputy Commissioner is supposed to dismiss the parole revocation charges, unless he or she finds "good cause" for the delay. "Good cause" is only supposed to be found in extraordinary cases.

When you get to your revocation hearing, be sure to tell the Deputy Commissioner that you want the charges dismissed because you were hurt by the delay. Tell the Deputy Commissioner why the delay hurt your case. For example, if witnesses became

unavailable, or if they forgot some of the details of what happened, tell the Deputy Commissioner about these problems and how they hurt your case.

If you have not had a revocation hearing yet and 35 days have passed since the parole hold was placed, you may want to challenge the delay in your individual case by filing a "habeas corpus" petition (petition for writ of habeas corpus). You should also write to our office and let us know. We can then contact the BPH to ensure that your hearing is held promptly or that your charges be dismissed. We cannot, however, help you file a lawsuit requesting money damages for the delay in providing your hearing.

If you file a habeas petition, you should ask the court to appoint a lawyer to represent you in the habeas proceeding, according to California Rules of Court, Rule 4.551. However, it is very likely that your revocation case will be processed by the BPH before the court can rule on your habeas petition and that your petition will therefore be dismissed by the court.

### 8. How do I challenge a condition of parole?

To challenge a condition of parole, a parolee must file an appeal to the authority that imposed the condition—either CDCR or BPH.

If the condition of parole was imposed by the parole division of CDCR, you should file a CDC 602 form with the Appeals Coordinator for your parole region. The informal and first levels of the 602 appeal are bypassed for this type of appeal.

Appeals Coordinator
Region I Parole Headquarters
9825 Goethe Road, Suite 200
Sacramento, CA 95827-2572
(916) 255-2758

Appeals Coordinator
Region II Parole Headquarters
1515 Clay Street, 10th Floor
Oakland, CA 94612
(510) 622-4701

Appeals Coordinator
Region III Parole Headquarters
320 West 4th Street, Suite 1000
Los Angeles, CA 90013
(213) 576-6500

Appeals Coordinator
Region IV Parole Headquarters
21015 Pathfinder Road, Suite 200
Diamond Bar, CA 91765
(909) 468-2300

If you disagree with the response you receive from the Appeals Coordinator, you may re-file the appeal to the Director of the CDCR. That address is:

Chief of Inmate Appeals
P.O. Box 942883
Sacramento, CA 94283-0001

If your appeal is denied at the Director's Level, you can file a petition for writ of habeas corpus with the Superior Court.

If the condition of parole was imposed by the BPH (for example, by a Deputy Commissioner at your PCH or revocation hearing), you must file a petition for writ of habeas corpus with the Superior Court. You do not need to file a 602 first.

### 9. **<u>What if I don't agree with what happened at my final revocation hearing?</u>**

If you want to appeal a BPH decision about a parole revocation or revocation extension, a grant or denial of parole, or the denial of due process ("discretionary decisions"), you must go straight to court to challenge the decision by filing a "habeas corpus" petition. Be sure to include the citation for the *Valdivia v. Schwarzenegger* case (No. Civ. S-94-0671 LKK/GGH) in your petition.

Please be aware that the CalPAP attorney appointed for your revocation proceedings will not automatically represent you on a habeas petition. You should speak with the attorney about your interest in a habeas petition. He or she may be able to represent you or may be able to help you find an attorney to help. In addition, the State Bar of California runs a Lawyer Referral Service Directory that may be able to help you find a lawyer who can handle your case. You can write them at:

Lawyer Referral Services Program
The State Bar of California
180 Howard Street
San Francisco, CA 94105
(866) 442-2529 (toll-free in California) or
(415) 538-2250

The BPH no longer has an administrative appeal process (BPH form 1040) for challenging parole revocation and revocation extension decisions decided on or after May 1, 2004. When the BPH eliminated its appeal system, it put in place a Quality Control Unit that you can use to correct some BPH errors. BPH will correct what it considers "non-discretionary decisions." This means simple mistakes where the Deputy Commissioner did not have to use his or her judgment in deciding whether you did or did not violate parole. The BPH gives the following examples: BPH clerical errors, a mistake about a mandatory discharge date from parole, and credit eligibility during revocation terms. To use the BPH Quality Control Unit to challenge a mistake like this, write a letter to:

Board of Parole Hearings
Quality Control Unit
P.O. Box 4036
Sacramento, CA 95812

**10. How do I request a copy of the tape or the written decision from my final revocation hearing?**

You have the right to receive a copy of the tape recording of your revocation hearing, and a copy of the written decision. To request a copy of your hearing tape or the written decision (BPH Form 1103), write to:

Board of Parole Hearings
Decision Processing Unit
P.O. Box 4036
Sacramento, CA 95812

**11. How do I contact my appointed attorney for my parole violation charges?**

The California Parole Advocacy Program (CalPAP) provides attorneys to parolees from the initial return-to-custody-assessment ("screening offer") through the final revocation hearing. You can contact your appointed attorney by contacting the regional CalPAP office covering the county in which you are incarcerated. We are attaching a list with this contact information. CalPAP offices accept collect phone calls.

**12. What if my attorney did a bad job representing me?**

If you experience problems with your appointed attorney, you may file a complaint with the California Parole Advocacy Project (CalPAP). Write a letter, including your name and CDCR #, the date of your screening and/or hearing, and a description of the problems you experienced. Send it to:

CalPAP Central Office
3200 Fifth Avenue
Sacramento, CA 95817

If you hired a private attorney you should contact the California Bar Association at:

California Bar Association
1149 South Hill Street
Los Angeles, CA 90015

**13. What if I had problems with my parole revocation process because of a disability?**

If you have a disability, you can ask for help before, during, or after a BPH hearing. If you have a lawyer, ask your lawyer to assist you in getting the help you need.

If you do not have a lawyer or do not get the help you need, you can send a BPH Form 1074 or a grievance letter to the following address:

Board of Parole Hearings
ADA Compliance Unit
P.O. Box 4036
Sacramento, CA 95812

All disability-related complaints are handled using the BPH Form 1074. You can request a BPH 1074 from your assigned CalPAP attorney or from the Deputy Commissioner at the probable cause hearing or parole revocation hearing. 1074s should also be available in your housing unit, from your counselor and in the law library.

If you need help completing the disability grievance 1074 form, your attorney or the CDC and BPH staff are supposed to help you fill out the form.

Please send our office copies of any 1074s or grievance letters you file and any response you receive. A handwritten copy is fine if you cannot get a photocopy. If the response by the BPH is wrong, we may be able to help you.

**14. <u>What is an optional waiver?</u>**

Parolees facing local criminal prosecution may want to exercise an "optional waiver" of their parole revocation proceedings. If you are facing criminal charges as well as parole violation charges, you should discuss this option with your attorney.

By signing an optional waiver, a parolee waives his or her right to a timely parole revocation hearing while local charges are resolved, but reserves the "option" to ask for a revocation hearing at a later date. You will have the chance to sign an optional waiver at your probable cause hearing. When you sign the optional waiver you will also receive a Return to Custody Assessment or screening offer of time to serve. If you do not "activate" your option for a hearing after your local charges are resolved, the BPH will assume you have accepted the Return to Custody Assessment you received when you signed the waiver. (See the next question for more information about activating your optional waiver.)

**15. <u>I waived my right to a timely final revocation hearing because I had local court charges pending. Now my local charges are resolved. What should I do?</u>**

Once your court proceedings have been completed, you must "activate" your optional waiver if you want a hearing on the parole violation charges. That means you are requesting a revocation hearing. You have *only* 15 days after your criminal charges are resolved in court to "activate" the optional waiver. You are also supposed to activate your optional waiver no later than 2 months before the end of the RTCA (screening offer) time that you were given when you waived your right to the hearing. Even if you miss

these deadlines, you or your lawyer should still contact the Board and ask for a hearing. The Board does not always enforce these deadlines.

The way that you "activate" your optional waiver and request a revocation hearing is to send in the optional waiver postcard to the BPH. If you don't have the postcard, or if you get no response, you can also request a hearing by writing to the Decentralized Revocation Unit (DRU) requesting a revocation hearing. (See the attached list of DRU addresses.) You can also write or call the local CalPAP office. (See the attached list of CalPAP offices.)

**16. The same charges are being used against me in my parole revocation and by the DA locally. Is that allowed?**

The California Department of Corrections and Rehabilitation (CDCR) can charge you with violations of your parole, separate and independent of the DA's power to charge you with violating criminal law. That is because the parole revocation process is considered to be administrative, not criminal, and there is a lower standard of proof for parole revocation proceedings than criminal proceedings. The CDCR may file parole revocation charges against you even if your criminal charges have been dismissed. This does not violate the Double Jeopardy Clause in the Fifth Amendment to the U.S. Constitution, which prohibits anyone from being prosecuted twice for substantially the same crime, because the courts do not consider a parole violation to be a "prosecution."

**17. The state's witnesses did not show up at my hearing and the DC postponed it. Is that OK?**

The *Valdivia* Injunction says that final revocation hearings must occur within 35 calendar days after your parole hold (or after your arrival in California if you were arrested out of state). The BPH has trained its hearing officers not to find "good cause" to go past 35 days because a witness did not show up, unless something very serious such as a car accident, serious injury, or a death, kept the witness from getting to the hearing. If the hearing officer (Deputy Commissioner) tries to postpone a hearing past 35 days without a good reason, you should ask your CalPAP attorney to object and say that the hearing officer is violating the BPH's own policy, and the *Valdivia* Injunction. You should also write our office and let us know.

**18. I was arrested in another state and none of the deadlines you talk about were met in my case. Is that a violation?**

If a California parolee is arrested out-of-state and returned to California for parole revocation proceedings, the timeframes under the *Valdivia* Injunction begin one day after the parolee arrives in the state of California. For example, if a parolee is arrested in Virginia on April 1 but does not get transferred back to California until June 1, the *Valdivia* clock starts ticking on June 2. In this case, June 1 would be considered the day of the parole hold for *Valdivia* timeframes (Day 0) and June 2 would be Day 1.

### 19. <u>My parole has been extended past three years. Can the BPH do that?</u>

Under the California Penal Code, any time during which you were absconding, and any time during which you were returned to custody does not count toward your three years of parole. This is in Section 3000(b)(5) of the Penal Code which states:

> Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation.

However, the same section of the Penal Code sets a four-year maximum on the total time on parole, even with time taken away for <u>returns to custody</u>:

> However, in no case, except as provided in Section 3064, may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole . . . .

Unlike revocation terms, time spent <u>absconding</u> does <u>not</u> count toward either the three-year parole term or the four-year maximum term extended by revocation. Section 3064 of the Penal Code states:

> From and after the suspension or revocation of the parole of any prisoner and until his return to custody he is an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be part of his term.

Under Section 3064, even if you are absconding for many years, you will still have to serve out the maximum four-year term after you are caught.

Many parolees ask us whether the four-year maximum is constitutional, because at sentencing the superior court informed them of a three-year parole term. We do not have a case currently regarding this issue, and do not have any opinion one way or the other whether this part of the Penal Code is constitutional.

The time you spend in prison on a revocation term can also be extended if you are charged with serious misconduct in prison or you do not sign your conditions of parole. This is called revocation extension. In order to extend your revocation term, the BPH has to provide you with notice of the charges against you and the opportunity for a hearing on those charges. (See Question 28 for more about revocation extensions.)

### 20. <u>I am being held in custody past the term I was given by the BPH. What should I do?</u>

You should file a 602 with Case Records asking about your release date. The CDCR has a special procedure for appeals about release dates. You can find it at Section 3084.7(h) of Title 15. You should submit 602s about release dates and term

computations first to the prison records office for informal level review. If it is denied at this level, the records office should hand-deliver the denial to you. You then send it to the appeals coordinator, who should bypass the first level and send the 602 for a "computation review hearing" within 15 days of receipt of the appeal. (This is also called a "*Haygood*" hearing, after a court case, *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), that says that prisoners have a right to have CDCR investigate claims of release date and credit errors, and to provide an informal hearing when prisoners challenge release date computations.) After the *Haygood* hearing, you can submit the 602 for a third level review (Director's Level). That address is:

Chief of Inmate Appeals
P.O. Box 942883
Sacramento, CA 94283-0001

You can also contact our office and your CalPAP attorney.

In order to preserve any rights you may have to sue regarding being held past your release date, you must exhaust all administrative remedies. This means that you should file a 602, which you can file with the parole office even after you are released. You must ask for any remedy that you would want to seek later in court, including having the time taken off your parole term, or money damages. In order to "exhaust" the appeal process, you must take the appeal to the Third Level (Director's Level).

We would like to keep track of this type of problem, and ask that you send us copies of any responses you receive to your 602. (Please understand that this does not mean that we will represent you in a lawsuit regarding this problem. We are only gathering information at this point.)

**21. I'm not sure when my release date is. What should I do?**

If you want an official calculation of your release date, you should ask your counselor to make an inquiry to Case Records at your institution. You can also submit a 602 to your counselor or to your parole agent.

**22. I keep getting violated because I have no place to go in my parole county and my family and support system are in a different county or state. How can I get my parole transferred to the county or state where my family is?**

**a) Transferring Parole Supervision to Another County in California**

If you want to transfer your parole to another county in California, you must first submit a written request to your parole agent asking him or her to prepare a Transfer Investigation Request Form (CDC Form 1551) and Exception to County of Commitment (CDC Form 1681). You should also say where you will live and how you will support yourself, as well as any other factors, such as the presence of family or availability of

drug treatment, that will help you to successfully complete your parole term. It is important to attach supporting documentation, such as letters from family, your doctor or therapist, or a future employer, explaining why you want to transfer your parole location and what support they will offer if the transfer is granted. Keep a copy of your letter and the supporting documents for your records.

You should know that, in addition to your letter and supporting documents, the following factors are taken into consideration:

1) the need to protect the safety of a victim, the parolee, a witness or any other person;

2) public concern that would reduce the chance that parole would be completed successfully;

3) the verified existence of a work offer, or an educational or vocational training program;

4) the existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that parole would be successfully completed; and

5) the lack of necessary outpatient treatment programs for parolees receiving mental health treatment pursuant to Penal Code § 2960.

If your parole agent refuses to submit a CDC 1551 for you, you should file a CDC 602 appeal. If your request for transfer is denied, you should receive a written explanation on the CDC 1551 stating the reasons you were denied transfer. To challenge a denial of your request, you should submit a 602. Once again, attach all your supporting documentation, a copy of the written request you submitted to your parole agent and the denial, if available. Submit your 602 directly to the Assistant Regional Parole Administrator for a First Level review (the "informal" level of review is skipped.) Those addresses are:

Assistant Regional Parole Administrator
Region I Parole Headquarters
9825 Goethe Road, Suite 200
Sacramento, CA 95827-2572
(916) 255-2758

Assistant Regional Parole Administrator
Region II Parole Headquarters
1515 Clay Street, 10th Floor
Oakland, CA 94612
(510) 622-4701

Assistant Regional Parole Administrator
Region III Parole Headquarters
320 West 4th Street, Suite 1000
Los Angeles, CA 90013
(213) 576-6500

Assistant Regional Parole Administrator
Region IV Parole Headquarters
21015 Pathfinder Road, Suite 200
Diamond Bar, CA 91765
(909) 468-2300

If the 602 is denied, you must continue to re-file to the Second Level of Review and then to the Director's Level of review. This address is:

Chief of Inmate Appeals
P.O. Box 942883
Sacramento, CA 94283-0001

This "exhaustion" of administrative remedies is required before you may appeal to the Court. If your appeal is denied at the Director's Level, you can then submit a petition for writ of habeas corpus to the Superior Court. Please be aware that we cannot advise you on your petition, represent you in a habeas proceeding, or assist you in transferring your parole.

**b) Transferring Parole Supervision to Different State**

If you want to transfer your parole to another state, you must talk with your counselor or parole agent about whether you meet all of the basic eligibility requirements. The Interstate Compact for Adult Offender Supervision, adopted by all states except Massachusetts, created an Interstate Commission to supervise and coordinate the movement of parolees. The Commission has adopted rules and procedures for evaluating parolees' transfer eligibility. A parolee meets the basic eligibility for transfer if he or she has three months or more to serve on parole and: 1) is in compliance with the terms of supervision; 2) was a resident of the receiving state or has resident family who have indicated willingness and ability to assist the parolee; and 3) can obtain employment or has a documented means of support. If your counselor or parole agent feels that you meet the eligibility requirements, the California authorities will then submit a completed transfer application on your behalf to the receiving state. The receiving state must respond to the sending state's request for parole transfer no later than the 45th calendar day following receipt of the completed transfer request to the receiving state's compact office. If a receiving state accepts the transfer, the receiving state's acceptance will include reporting instructions. Please be aware that you do not have a "right" to live in another state.

**23. <u>I want a lawyer to help me with my individual case. How can I get one?</u>**

Under the *Valdivia* Injunction, as of January 1, 2005, every parolee are appointed an attorney for his or her parole revocation proceedings. This is done by the CalPAP office (California Parole Advocacy Program). If you want to challenge your revocation in a *habeas corpus* proceeding, speak to your appointed attorney. He or she may be able to help you, or may be able to refer to an attorney who may be able to help you.

If you want private counsel for another legal matter, such as filing a petition for writ of *habeas corpus*, you can contact the State Bar of California Lawyer Referral Service:

The State Bar of California
180 Howard Street
San Francisco, CA 94105

1-866-442-2529 (toll-free in California)
1-415-538-2250 (outside California)

**24. <u>What resources are available to me on parole?</u>**

There are a number of community resources available to people on parole. The first place you should ask is your parole office — your parole agent is supposed to refer you to local community resources for housing, government benefits, employment assistance, drug or alcohol treatment, education, medical or mental health care, etc. If you have access to the internet, you can also find a listing of community resources on the CDCR's website, at: http://www.cdcr.ca.gov/CommunityResourceDirectory/main.asp

You can also ask your parole agent for a referral to attend the PACT orientation program (Police And Corrections Team). PACTs are partnerships between CDC, local law enforcement agencies, and community service providers designed to coordinate the supervision of and services for parolees. The programs are structured differently in every parole district, but they are all designed to link parolee with community supports. Ask your parole agent if PACT is available for you.

**25. <u>When I was released from my prison term I got gate money. Will I get gate money when I am released from my parole revocation term?</u>**

Under Penal Code Section 2713.1 prisoners are to be given $200 gate money upon release. The CDCR's procedures allow your parole agent to direct that only part of this money be given to you on release, and the rest within 60 days after you are released.

If you have been in CDCR custody for less than six months on a parole violation, the CDCR does not have to give you the entire $200. Instead, CDCR's Department Operations Manual says that CDCR will pay $1.10 in gate money for each day you were in custody on the violation, up to a maximum of $200.

If you were arrested on a parole violation and then released after your probable cause or final revocation hearing, or "continued on parole," CDCR probably will not give you any gate money.

**26. <u>How do I get mental health care while I'm on parole and during parole violation terms?</u>**

**a) If you are now housed in a <u>CDCR institution</u> and need mental health treatment:**

If you feel that you are not coping at your current level of mental health care, you need to talk to your case manager and ask for a mental health evaluation. If you do not have a case manager, you can submit a sick call slip, requesting a meeting with a doctor. You can also file a 602 appeal on the issue if your requests for evaluation are denied.

If you believe you need psychiatric medication or a change in medication, you should submit a request slip to be seen by a psychiatrist for a medication review. If you are unable to see a psychiatrist shortly after submitting a request slip, you should file a 602 appeal on the issue. You should also talk to your case manager or counselor about any mental health symptoms (such as hearing voices, problems sleeping, etc.) that you are having. They may be able to help you schedule an appointment to be seen by a psychiatrist.

You can also contact our office. We are one of the law firms that represent the prisoners in the class action lawsuit *Coleman v. Schwarzenegger*. The *Coleman* case was brought on behalf of inmates with serious mental illness. The court ordered the defendant, California Department of Corrections and Rehabilitation (CDCR), to make certain changes in the delivery of their mental health services to inmates in CDCR institutions. The court also appointed a special master to help develop plans to provide adequate mental health care and to monitor the CDCR's compliance with those plans. As lawyers for the prisoners in the *Coleman* case we try to ensure that CDCR provides court ordered levels of mental health care services.

If you are currently classified as CCCMS or EOP, or have been diagnosed with a serious mental disorder, you are automatically a member of the *Coleman* plaintiff class.

The CDCR offers a number of different levels of mental health care, including, CCCMS level of care, EOP level of care, and several different types of inpatient care, including MHCB care, acute inpatient care at DMH, and intermediate inpatient care at DMH.

<u>CCCMS Program</u>: CCCMS stands for Correctional Clinical Case Management System. The CCCMS program is designed to provide outpatient care for inmates in a general population (GP) setting. Each CCCMS inmate will have a Clinical Case Manager (CCM) who is responsible for developing a mental health treatment plan for that inmate. CCCMS inmates are required to be seen by their case manager at least once every 90 days. CCCMS inmates meet with their interdisciplinary treatment team (IDTT) once a year. The type of treatment each inmate receives will depend on the inmate's individual needs. For instance, higher functioning inmates may only need medication monitoring. Other inmates may need psychotherapy. The type of care you will receive as a participant in the CCCMS program will be outlined in your mental health treatment plan. There are currently approximately 25,000 CDCR inmates in the CCCMS program.

If you are classified as CCCMS and currently being housed in an Administrative Segregation Unit or Security Housing Unit, defendants are required to provide you with additional care. CCCMS inmates housed in Ad Seg must be seen by their case manager at least once a week and must receive daily psych tech rounding. CCCMS inmates housed in a Security Housing Unit (SHU) must be seen by a case manager at least once every 30 days and must receive weekly psych tech rounding.

<u>EOP Program:</u> The Enhanced Outpatient Program (EOP) provides the most intensive level of outpatient mental health care in the Mental Health Services Delivery System. Inmates who are EOP are housed in a separate housing unit and participate in structured activities. The remedial orders in *Coleman* require that each EOP inmate receive a minimum of ten hours per week of "structured therapeutic activities," which is prescribed as part of his or her treatment plan. "Structured therapeutic activities" can include group therapy, community meetings, recreational therapy (when a recreational therapist is present on the yard and actually supervising inmate activities), and up to four hours of work or educational activity if it is prescribed in the treatment plan. EOP inmates must also be given weekly contacts with their case manager. There are currently approximately 4,100 CDCR inmates in EOP programs.

<u>MHCBs</u>: Mental Health Crisis Beds (MHCBs) are licensed inpatient hospital units within many CDCR institutions where suicidal inmates and other seriously mentally ill inmates are placed for intensive treatment. MHCB units provide 24-hour nursing care and other services mandated by state health care regulators. Inmates who are suicidal are typically sent to MHCB units, although sometimes inmates who are suicidal are held for short periods (24-48 hours) in Outpatient Housing Units (OHUs) or observation cells on suicide watch while their level of suicidality is assessed. Generally, inmates are not supposed to stay in an OHU for more than 48 hours for mental health reasons (and no more than 24 hours if they are suicidal). Inmates are not supposed to stay in an MHCB unit for more than 10 days. If an inmate is in an MHCB for 10 days and still needs intensive inpatient treatment, the inmate is supposed to be referred to an even more intensive program run by the Department of Mental Health, the Acute Psychiatric Program (APP) at California Medical Facility in Vacaville (CMF) for men and Patton State Hospital for women. There are currently approximately 240 MHCB Beds in the CDCR.

As of January 2007, there is a severe shortage of MHCB beds available to CDCR inmates. There are new MHCB beds scheduled to open at Ironwood State Prison and California Medical Facility by March 2008.

As a result of the MHCB shortage, inmates are sometimes being held inappropriately for suicide watch in OHU units or observation cells. If you have had an experience of being held in an inappropriate location for suicide watch, or have been subject to excessively harsh conditions on suicide watch (such as being held naked or not being given a mattress or a blanket), please write to us and tell us about your experience.

<u>DMH Inpatient Programs</u>: The DMH-run Acute Psychiatric Program (APP) at CMF provides intensive supervision, crisis stabilization, diagnostic assessments, and other intensive psychiatric care services to male CDCR inmates. Inmates typically remain in the APP for between 45 and 60 days. This program has 120 beds. Female inmates who need inpatient care are generally transferred to Patton State Hospital for such care. There is also a smaller 25 bed acute program at Atascadero State Hospital.

DMH runs two additional types of inpatient programs. The second type of program is an Intermediate Care Facility (ICF). CDCR inmates can be referred to three different ICF programs run by DMH. The first is a 64-bed male Level IV ICF program at SVSP, which is called the Salinas Valley Psychiatric Program (SVPP). Defendants are currently under court order to double the size of this program in the next few years. The second ICF program is a 125-bed program for Level I-III inmates at Atascadero State Hospital (ASH). Defendants are also required to increase the size of this program dramatically when the new Coalinga State Hospital has fully opened (the opening has been delayed due to staff shortages and licensing problems). A third ICF program for men is available at the California Medical Facility (CMF). The CMF ICF program includes a wing for Level IV inmates (P-2) with 36 beds in single cells and a wing containing a series of dorms for Level I-III inmates with about 40 beds.

The third type of DMH facility is the Day Treatment Program (DTP) at CMF. This is a 40-bed unit where inmates receive intermediate inpatient care that is slightly less intensive and somewhat more self-directed than typical ICF care.

Please write to us and let us know if the mental health care you are receiving in one of these programs does not meet the standards discussed above.

**b) If you are now housed in a <u>county jail</u> and need mental health treatment:**

If you feel that you are not coping at your current level of mental health care, you need to submit a sick call slip, requesting a meeting with a doctor. You should also discuss the fact that you need medical attention with your attorney, especially if the lack of mental health care makes it hard for you to understand what is happening during the parole revocation process. Please note, the *Coleman* lawsuit does not apply to mental health care in a county facility. The *Coleman* court has not ordered county jails to provide specific levels of care the way it has ordered CDCR prisons to. Mental health services and treatment vary from one jail to the next. Some jails may also be under court orders regarding mental health care. If you have tried to get mental health care and have been denied, please contact our office.

**c) If you are now <u>on parole</u> and need mental health treatment:**

If you are currently classified as CCCMS or EOP, or have been diagnosed with a serious mental disorder, you may be required to attend the Parole Outpatient Clinic (POC) as a condition of parole. POC provides psychiatric treatment to parolees with mental health conditions, including medication.

You may also be eligible for mental health treatment in your community. You should discuss your options with your parole agent and talk to the community providers at your PACT meeting. If you have received a parole violation because of your mental illness, you should tell your attorney.

## 27. Information about Forms used in Revocation Proceedings

At various stages of the parole revocation process, you should be receiving copies of forms. It is very important that you keep these forms in case you want to try to challenge your revocation in court. It also helps us to see these forms if you want to provide us with information about your revocation. Below is a list of the forms you should get at each stage. ***If you need help because of problems seeing, hearing, walking, learning, or understanding, and you are told you will not get the help you asked for, you should ask for a BPT Form 1074, a disability grievance form.***

Notice of Rights and Charges (3rd Business Day After Hold)

BPT Form 1073 (Notice and Request for Assistance at Parole Proceedings)

CDC Form 1502(b) (Charge Report)

CDC Form 1521D (Recommendation, Review and Signature Sheet by Unit Supervisor)

BPT 1100 (Notice of Rights and Acknowledgment)

BPT 1100(b) (Request for Witnesses)

Attorney Consultation (8th Business Day After Notice Deadline)

CDC Form 1676 (Violation Report by Parole Agent)

CDC Form 1521(b) (Summary of Parole Adjustment by Parole Agent)

BPT Form 1104(b) (Parolee-Attorney Decision Form)

BPT Form 1104-RTCA (Return to Custody Assessment)

Police Reports (if any exist)

CDC Form 1654 (Witness Form)

Probable Cause Hearing (13th Business Day After Hold)

BPT Form 1103-PCH (Summary of Revocation Hearing and Decision)

CDC Form 1654 (Witness Form Filled Out)

Final Revocation Hearing (By 35th Calendar Day After Hold)

BPT Form 1103-REV (Summary of Revocation Hearing and Decision)

**28. What is a revocation extension? What are my rights?**

If you are serving a parole revocation term, the time you spend in prison can be extended if you are charged with serious misconduct in prison (a CDC 115 Rules Violation Report, Division A, B, or C), or if you refuse to sign your conditions of parole or refuse to sign forms related to P.C. section 290 registration requirements. This is called revocation extension.

In order to extend your revocation term, the BPH has to provide you with notice of the charges against you, and the opportunity for a hearing on those charges.

You are provided with an attorney if you are facing a revocation extension. Your attorney will help you understand the process, and decide whether you should accept the BPH's Revocation Extension Assessment (REA, or "screening offer"). The maximum time you can have your parole revocation term extended is 180 days.

If you do not accept the REA, you are entitled to a Revocation Extension Hearing within 35 calendar days of receiving notice of the revocation extension charges. If your scheduled revocation release is coming up within 35 calendar days, then you are also entitled to a Probable Cause Hearing (PCH) within 10 business days of getting notice of the charges. If you are within 35 days of your release date and your attorney can show there is no basis (a complete defense) to the charges, you are entitled to request an Expedited (faster) Hearing.

If you have a disability or need help understanding, you can ask for help before, during, or after the PCH or Revocation Extension Hearing. If you do not get the help you need, you can submit a BPH 1074 grievance form, or send a letter, to:

Board of Parole Hearings
ADA Compliance Unit
P.O. Box 4036
Sacramento, CA 95812

**29. What is plaintiffs' counsel doing to address overcrowding?**

You may have heard that our office and the Prison Law Office filed motions in several cases in November 2006 asking the Court to consider limiting the population of inmates in the CDCR. We did this because the severe overcrowding in California's prisons has created an unsafe environment in which our class members in the *Plata* (medical care), *Coleman* (mental health care), and *Armstrong* (rights of persons with disabilities) lawsuits are not able to get the services they need.

Following June hearings in all three cases, the Judges took under submission the question of whether to refer the issue of severe overcrowding in California prisons to a three-judge panel. On July 23, the judges in *Coleman* and *Plata* referred the matter to a three-judge panel, and on July 26, 2007, the three-judge panel was created. This panel will consider whether some kind of population cap is appropriate. Such relief could be

months or years away, but we hope that it will provide much-needed relief for our class members in the face of the overcrowding crisis.

In the meantime, if you have any information about the ways in which overcrowding, lack of staff, or lack of resources in the prisons have affected your ability to access medical or mental health services or receive help for your disability, please let us know. Please write to Rosen, Bien & Galvan concerning the effects of overcrowding on access to mental health services and disability accommodations, and to the Prison Law Office regarding access to medical services. Although our ability to respond to individual class members is limited, we read every letter we receive carefully.

**Rosen, Bien & Galvan**
**Post Office Box 390**
**San Francisco, CA 94104-0390**

**Prison Law Office**
**General Delivery**
**San Quentin, CA 94964-0001**

**30. Conclusion**

We regret that we cannot assist you further individually right now.

## List of Decentralized Revocation Units (DRUs)

**Deuel Vocational Institution (DVI)**
23500 Kasson Road
Tracy, CA 95376

**High Desert State Prison (HDSP)**
475-750 Rice Canyon Road
Susanville, CA 96127

**Richard McGee/Rio Consumnes Correctional Center**
Board of Parole Hearings – DRU
3335 Bradshaw Rd., Ste 255,
Sacramento, CA 95827-2615

**San Quentin (SQ)**
San Quentin State Prison
San Quentin, CA 94964

**Santa Rita County Jail**
5325 Broder Blvd
Dublin, CA 94568

**Valley State Prison for Women (VSPW-CCWF)**
21633 Avenue 24
Chowchilla, CA 93610

**Wasco State Prison (WSP)**
701 Scofield Avenue
Wasco, CA 93280

**North Kern State Prison (NSKP)**
2737 West Cecil Avenue
Delano, CA 93215

**Los Angeles (Los Angeles County Jail)**
320 West 4th Street, Suite 520
Los Angeles, CA 90013

**California Institution for Women (CIW)**
16756 Chino-Corona Rd.
Corona, CA 92880

*Valdivia* FAQ
Page 22

**California Institution for Men (CIM)**
14501 Eucalyptus Avenue
Chino, CA 91710

**R.J. Donovan (RJD)**
480 Alta Road
San Diego, CA 92179

**California Parole Advocacy Program (CalPAP) Regional Office Contact List**

| City | Office Location | Staff Attorneys |
|---|---|---|
| Chino | P.O. Box 606<br>Chino, CA 91708<br>(P) 909-902-0218 | Henry Nunez<br>Shannon Hochstein |
| Dublin | 6665 Amador Plaza Drive, Suite 201<br>Dublin, CA 94568<br>(P) 925-829-0459 | Lewis Munoz<br>Michael Roldan |
| Larkspur | 900 Larkspur Landing Circle, Suite 201<br>Larkspur, CA 94939<br>(P) 415-464-0574 | Andrew Walker |
| Los Angeles | 701 W. Cesar Chavez Avenue, #206<br>Los Angeles, CA 90012<br>(P) 213-613-1901 | J. Christopher Smith |
| Madera | Howard Town Square<br>1925B Howard Road<br>Madera, CA 93637<br>(P) 559-664-0274 | Christine Johnson |
| Sacramento | 7230 South Land Park Drive, #109<br>Sacramento, CA 95831<br>(P) 916-424-1954 | Joy Redmon |
| San Diego | Pacific Rim Pointe<br>9335 Airway Road, Suite 107<br>San Diego, CA 92154<br>(P) 619-661-9521 | William Hobson |
| Santa Clarita | Mammoth Professional Building<br>28494 Westinghouse Place, Suite 104<br>Santa Clarita, CA 91355<br>(P) 661-294-9146 | Adaure Egu |
| Susanville | P.O. Box 1262<br>Susanville, CA 96130<br>(P) 530-251-4888 | John Dirks |
| Tracy | 4600 S. Tracy Blvd., Suite 106<br>Tracy, CA 95377<br>(P) 209-839-8110 | Jonathan Garzoli |
| Wasco | P.O. Box 855<br>Wasco, CA 93280<br>(P) 661-758-0881 | Sandra Waite<br>Mai Shawwa |
| Central Office | 3200 Fifth Avenue<br>Sacramento, CA 95817<br>(P) 916-733-2808 | |



BINGHAM McCUTCHEN
KAREN KENNARD – 141925
KRISTEN A. PALUMBO - 215857
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: (415) 393-2000

PRISON LAW OFFICE
DONALD SPECTER – 83925
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

STEPHEN J. PERRELLO, JR. – 56288
P.O. Box 880738
San Diego, California 92618
Telephone: (858) 277-5900

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
MARI L. WILLITS – 209612
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

ALEX LANDON – 50957
2442 Fourth Avenue
San Diego, California 92101
Telephone: (619) 232-6022

Attorneys for Plaintiffs

FILED
MAR - 9 2004
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

LODGED
NOV 18 2003
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

RECEIVED
MAR 11 2004
ROSEN BIEN & ASARO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY VALDIVIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendants. | No. Civ. S-94-0671 LKK/GGH<br><br>STIPULATED ORDER FOR PERMANENT INJUNCTIVE RELIEF |

ORIGINAL

1034

## I. INTRODUCTION

1. This action was filed on May 2, 1994. Plaintiffs, on behalf of themselves and the class they represent, challenged the constitutionality of parole revocation procedures conducted by the California Board of Prison Terms ("BPT") and the California Department of Corrections ("CDC").

2. The Court certified this case as a class action by order dated December 1, 1994. The Plaintiff class consists of the following persons: (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

3. The Defendants are state officials responsible for the policies and procedures by which California conducts parole revocation proceedings.

4. On June 13, 2002, this Court granted partial summary judgment in favor of Plaintiffs, holding that California's unitary parole revocation system violates the due process rights of the Plaintiff class under Morrissey v. Brewer, 408 U.S. 481 (1972), Gagnon v. Scarpelli, 411 U.S. 778 (1973), and related authority. The Court held that California's parole revocation system violated the due process clause of the Fourteenth Amendment by "allowing a delay of up to forty-five days or more before providing the parolee an opportunity to be heard regarding the reliability of the probable cause determination." Valdivia v. Davis, 206 F. Supp. 2d 1068, 1078 (E.D. Cal. 2002).

5. The parties stipulate that this is not a "civil case with respect to prison conditions," as those terms are defined and applied in the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and that therefore this Order is not governed by the PLRA.

6. The parties hereby stipulate that the Court shall ADJUDGE, DECLARE, AND DECREE as follows:

## II. PARTIES

7. The Plaintiff class consists of the following persons: (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

8. The Defendants are state officials responsible for the policies and procedures by which California conducts parole revocation proceedings. Defendant Arnold Schwarzenegger is Governor of the State of California and Chief Executive of the state government. Defendant Roderick Q. Hickman is the Secretary of the California Youth and Adult Correctional Agency. Defendant Edward S. Alameida, Jr., is Director of the California Department of Corrections. Defendant Richard Rimmer is Deputy Director of the California Department of Corrections, Parole and Community Services Division ("P&CSD"). Defendant Carol A. Daly is a Commissioner and Chair of the Board of Prison Terms ("BPT"). Defendants Alfred R. Angele, Sharon Lawin, Booker T. Welch, Jones M. Moore, and Kenneth L. Risen are Commissioners of the BPT. Defendant Kenneth E. Cater is Chief Deputy Commissioner of the BPT.

## III. DEFINITIONS

9. The following terms when used in this Order shall have the meanings specified below:

(a) "Parolee(s)" shall mean any member of the Plaintiff class.

(b) "Day(s)" shall mean calendar days, unless otherwise specified.

(c) "Revocation process" or "revocation proceedings" shall mean all stages of the process by which parole may be revoked, including placement of a parole hold, notice, waivers, service of Return to Custody Assessments, and hearings.

(d) "Return to Custody Assessments" ("RTCAs") shall mean the practice by which Defendants offer a parolee a specific disposition in return for a waiver of the

parolee's right to a preliminary or final revocation hearing, or both.

(e) "Parole hold" shall mean any invocation by Defendants of their authority to involuntarily detain a parolee for revocation proceedings under Section 3056 of the California Penal Code. This term shall not apply to the detention of a parolee who has absconded from the State of California until he or she is physically returned to the State of California and is in its custody.

## IV. POLICIES, PROCEDURES, FORMS, AND PLANS

10. For all policies, procedures, forms, and plans developed under this Order, the parties shall use the following process: Defendants shall meet periodically with Plaintiffs' counsel to discuss their development of policies, procedures, forms, and plans. In preparation for such meetings, Defendants will provide Plaintiffs' counsel with copies of the proposed policies, procedures, forms, and plans in draft form no later than 7 days before the meeting. If the parties reach an impasse on any particular issues, they may bring the disputed issues to the Court in a motion to be heard on shortened time.

11. Using the procedure set forth above in Paragraph 10, Defendants shall do the following:

(a) Defendants shall develop and implement sufficiently specific Policies and Procedures that will ensure continuous compliance with all of the requirements of this Order. The Policies and Procedures will provide for implementation of the August 21, 2003 Remedial Plan Outline (attached hereto as Exhibit A), as well as the requirements set forth below in Paragraphs 12-24. Defendants shall submit the completed Policies and Procedures to the Court no later than July 1, 2004.

(b) By July 1, 2004, Defendants shall begin implementing the following steps in the parole revocation process, which shall be completely implemented by January 1, 2005:

(i) Defendants shall appoint counsel for all parolees beginning at the

RTCA stage of the revocation proceeding. Defendants shall provide an expedited probable cause hearing upon a sufficient offer of proof by appointed counsel that there is a complete defense to all parole violation charges that are the basis of the parole hold.

(ii) No later than 48 hours after the parole hold, or no later than the next business day if the hold is placed on a weekend or holiday, the parole agent and unit supervisor will confer to determine whether probable cause exists to continue the parole hold, and will document their determination.

(iii) If the parole hold is continued thereafter, no later than 3 business days after the placement of the hold, the parolee will be served with actual notice of the alleged parole violation, including a short factual summary of the charged conduct and written notice of the parolee's rights regarding the revocation process and timeframes.

(iv) For all parolees who do not waive or seek a continuance of a final revocation hearing, Defendants shall provide a final revocation hearing on or before the 35th calendar day after the placement of the parole hold.

(c) By July 1, 2004, Defendants shall serve on counsel for Plaintiffs an assessment of the availability of facilities and a plan to provide hearing space for separate probable cause hearings.

(d) By July 1, 2005, in addition to the steps listed above, for all parolees who do not waive or seek a continuance of a probable cause hearing, Defendants shall provide a hearing to determine probable cause no later than 10 business days after the parolee has been served with notice of the charges and rights (at the 3rd business day after the placement of the hold).

(e) Defendants shall complete implementation of the Policies and Procedures by July 1, 2005.

12. In addition to the provisions of the August 21, 2003 Remedial Plan Outline, the Policies and Procedures shall ensure that the following requirements are met:

13. At the time of appointment, counsel appointed to represent parolees who have difficulty in communicating or participating in revocation proceedings, shall be

informed of the nature of the difficulty, including but not limited to: mental illness, other cognitive or communication impairments, illiteracy, limited English-language proficiency, and the need for a foreign language interpreter. The appointment shall allow counsel adequate time to represent the parolee properly at each stage of the proceeding.

14. At the time of appointment, counsel shall be provided with all non-confidential reports and any other documents that the state intends to rely upon at the probable cause or final revocation hearing. After appointment, if the state learns of additional evidence or documents, and intends to rely on such additional evidence or documents, it shall produce them to counsel as soon as practicable before the hearing.

15. Defendants shall develop and implement policies and procedures for the designation of information as confidential that are consistent with the requirements of due process.

16. Non-confidential portions of parolees' field files shall be available to parolees' counsel unless good cause exists for failure to provide access to such files. Field file information shall be withheld from counsel as confidential only in accordance with the policies and procedures referenced in Paragraph 15.

17. Defendants shall develop standards, guidelines, and training for effective assistance of state appointed counsel in the parole revocation process.

18. Defendants will ensure that parolees receive effective communication throughout the entire revocation process.

19. Defendants will ensure that all BPT and CDC forms provided to parolees are reviewed for accuracy and are simplified to the extent possible through a procedure similar to that used to revise forms in Armstrong v. Davis, C94-2307 CW (N.D. Cal.). This process will include translation of forms to Spanish. Revised forms will be submitted to Plaintiffs' counsel for review prior to finalization, dissemination, or modification.

20. Upon written request, parolees shall be provided access to tapes of parole

revocation hearings.

21. Parolees' counsel shall have the ability to subpoena and present witnesses and evidence to the same extent and under the same terms as the state.

22. At probable cause hearings, parolees shall be allowed to present evidence to defend or mitigate against the charges and proposed disposition. Such evidence shall be presented through documentary evidence or the charged parolee's testimony, either or both of which may include hearsay testimony.

23. Final revocation hearings shall occur within 35 calendar days of the parole hold.

24. The use of hearsay evidence shall be limited by the parolees' confrontation rights in the manner set forth under controlling law as currently stated in United States v. Comito, 177 F.3d 1166 (9th Cir. 1999). The Policies and Procedures shall include guidelines and standards derived from such law.

## V. STAFFING LEVELS

Defendants shall maintain sufficient staffing levels in the CDC and BPT to meet all of the obligations of this Order.

## VI. MONITORING

25. The parties shall cooperate so that Plaintiffs' counsel has access to the information reasonably necessary to monitor Defendants' compliance with this Order and the Policies and Procedures adopted in response thereto. Such information shall include but not be limited to: access to documents, tours, observation of parole revocation proceedings, observation of training sessions, interviews of staff, and interviews with parolees. Plaintiffs' counsel may notice depositions under the Federal Rules of Civil Procedure either: (1) if Plaintiffs' counsel are unable to obtain relevant information through interviews and informal document requests, or (2) after notifying Defendants of non-compliance with this Order under Section VII, below. Before

noticing a deposition, Plaintiffs' counsel must consult with opposing counsel about the deposition schedule so that the convenience of counsel, witnesses, and parties may be accommodated, if possible.

26. The parties shall meet regularly, and at least once every 90 days, to discuss implementation issues. At least once every 90 days, Defendants shall provide Plaintiffs' counsel with a report on hold-to-hearing time in substantially the same form, and with the same content as that currently used in Defendants' weekly "RSTS" meetings.

27. The parties shall agree on a mechanism for promptly addressing concerns raised by Plaintiffs' counsel regarding individual class members and emergencies.

## VII. ENFORCEMENT

28. The Court shall retain jurisdiction to enforce the terms of this Order. The Court shall have the power to enforce the terms of this Order through specific performance and all other remedies permitted by law or equity.

29. If Plaintiffs' counsel believe that Defendants are not complying with any of the acts required by this Order, the Remedial Plans, or Policies and Procedures produced pursuant to it, they shall notify Defendants in writing of the facts supporting their belief. Defendants shall investigate the allegations and respond in writing within 30 days. If Plaintiffs' counsel are not satisfied with Defendants' response, the parties shall conduct negotiations to resolve the issue(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiffs may move the Court for any relief permitted by law or equity.

## VIII. ATTORNEY'S FEES AND COSTS

30. Plaintiffs are the prevailing party in this action. Plaintiffs' counsel may move for an award of reasonable attorney's fees and costs for obtaining relief for the Plaintiff class pursuant to 42 U.S.C. § 1988 or any other applicable law. Defendants shall pay Plaintiffs' counsel reasonable attorney's fees for work performed in connection with monitoring and enforcing this Order: The parties reserve the right to

address at a future date whether 42 U.S.C. § 1997e(d) applies to an award of attorney's fees in this suit.

## IX. RESOLUTION OF CLAIMS

31. This stipulated order resolves all the claims in this case, except the following, to the extent that they are alleged in the Fifth Amended Complaint, if at all:

(a) Appeals. Plaintiffs assert that Defendants' administrative-appeals system for parole-revocation and revocation-extension decisions violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

(b) Revocation-Extension Proceedings. Plaintiffs assert that Defendants' policies, procedures, and practices for extending parole revocations based on alleged rules violations while in custody violate the Due Process Clause.

32. The parties anticipate that these issues will be resolved informally, without need for the Court's intervention. The parties will inform the Court if this does not occur.

IT IS SO STIPULATED.

Dated: November 12, 2003

ROSEN, BIEN & ASARO

By [signature]
MICHAEL BIEN

Dated: November 12, 2003

PRISON LAW OFFICE

By [signature]
DONALD SPECTER

Attorneys for Plaintiffs

Dated: November 17, 2003

BILL LOCKYER, Attorney General of the State of California,
ROBERT R. ANDERSON, Chief Assistant Attorney General,
FRANCES T. GRUNDER, Senior Assistant Attorney General,
JONATHAN L. WOLFF, Supervising Deputy Attorney General

By [signature]
THOMAS S. PATTERSON,
Deputy Attorney General
Attorneys for Defendants

Dated: November 17, 2003

By [signature]
RODERICK Q. HICKMAN
Secretary, Youth and Adult Correctional Agency

Dated: November 17, 2003

By [signature]
EDWARD S. ALAMEIDA, JR.
Director, California Department of Corrections

Dated: November 17, 2003

By [signature]
CAROL A. DALY
Chair, California Board of Prison Terms

ORDER

The Court finds that this is not a "civil case with respect to prison conditions," as those terms are defined and applied in the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and that therefore this Order is not governed by the PLRA. Defendants, their agents, employees, and successors in office are ordered to comply with all the terms stated above.

IT IS SO ORDERED

Dated: 3/8, 2006

LAWRENCE K. KARLTON
Chief Judge, Emeritus

BILL LOCKYER
Attorney General

State of California
DEPARTMENT OF JUSTICE

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5727
Facsimile: (415) 703-5843
E-Mail: Thomas.Patterson@doj.ca.gov

August 20, 2003

RECEIVED
AUG 22 2003
ROSEN BIEN & ASARO

The Honorable Lawrence K. Karlton
Chief Judge Emeritus
United States District Court, Eastern District
501 "I" Street
Sacramento, CA 95814

RE: Jerry Valdivia, et al. v. Gray Davis, et al.
USDC E.D. Cal. Case No. CIV-S-94-0671 LKK GGH P

Dear Judge Karlton:

The following is Defendants' revised remedial plan in this case. This plan represents a tremendous amount of work by the Defendants and other state officials since the July 23, 2003 order, much of which has been done recently while consulting Plaintiff's counsel.

Defendants continue to work with Plaintiffs' counsel to refine the revised remedial plan in efforts to perfect a viable revocation system that affords appropriate process.

With this in mind, neither Plaintiffs nor Defendants desire the Court to rule immediately on the adequacy of the revised remedial plan. Rather, they hope to resolve the issues soon and, of course, will advise the Court of the outcome of their efforts.

Sincerely,

THOMAS S. PATTERSON
Deputy Attorney General
Attorney for Defendants

For BILL LOCKYER
Attorney General

DONALD SPECTER
Prison Law Office
Attorney for Plaintiffs

Exh A

# Valdivia Remedial Plan



# VALDIVIA REMEDIAL PLAN POLICY OUTLINE

## VIOLATION OCCURS

There are a myriad of circumstances under which a Parolee can violate his or her conditions of parole. There are approximately 100,000 parole violations referred to the Board of Prison Terms each calendar year.

Currently about 60% of the reported violations are the result of arrests by local law enforcement. Of that 60% arrested by local law enforcement, many are charged in the local jurisdictions for crimes against the state, while others are not charged locally but instead referred to the Board of Prison Terms for administrative disposition.

The remaining 40% are arrests that involve the Parole officer, which may also result in local charges or referral to the Board of Prison Terms for administrative disposition.

The average parole violator's term in prison is five and one half months.

Approximately 66% of the cases referred to the Board of Prison Terms are resolved prior to the revocation hearing. Last year, the Board of Prison Terms conducted approximately 37,000 revocation hearings.

## REMEDIAL SANCTIONS

As part of the overall reform of the revocation process, the Parole and Community Services Division of the Department of Corrections will begin using remedial sanctions/community based treatment placement in January of 2004.

Some of the remedial sanctions/community based treatment programs that will be used are the Substance Abuse Treatment Control Units, Electronic Monitoring, Self-Help Outpatient/aftercare programs, and alternative placement in structured and supervised environments.

These remedial sanctions are not considered violations of parole because participation in the remedial sanctions program is voluntary and participation in the remedial sanctions program will not make the parolee presumptively ineligible for discharge at 13 months.

The goal is to reduce the number of returns to prison for violations of parole by up to 10% in 2004 and by up to 30% by 2006.

**IF REMEDIAL SANCTIONS ARE DEEMED INAPPROPRIATE AND A PAROLE HOLD IS PLACED ON THE PAROLEE, A PROBABLE CAUSE DETERMINATION/REVIEW WILL TAKE PLACE WITHIN 48 HOURS OF THE HOLD AND IF THE HOLD IS PLACED ON A WEEKEND OR HOLIDAY, THE PROBABLE CAUSE REVIEW WILL BE CONDUCTED NO LATER THAN THE NEXT BUSINESS DAY FOLLOWING THE HOLD BEING PLACED.**

Although this probable cause review for parolees is not required under any of the current, relevant case law, it is being put in place in an attempt to take a second look at those individuals who have been placed into custody to determine if the "present danger to public safety" concern still exists or if remedial sanctions/community based treatment is possible at this juncture.

As an example, a parolee who was strung out on dope may have "dried out" sufficiently that he or she is no longer a danger to him or herself or the public and may be an appropriate candidate for community based treatment in a structured, supervised program.

Under such a scenario, the parolee would be released to a community based treatment program with the understanding that a specific condition of his or her release is the completion of the program and any other special conditions of parole that the Parole Agent deems appropriate.

Current regulation and case law require any special conditions of parole to have a nexus to the parolees' commitment offense or behavior.

**PAROLEE IS GIVEN ACTUAL WRITTEN NOTICE OF CHARGES WITH A SHORT FACTUAL SUMMARY OF THE BEHAVIOR; THE NOTICE OF RIGHTS REGARDING THE REVOCATION PROCESS; AND THE BPT 1073 ADA DETERMINATION IS MADE VIA A FACE TO FACE INTERVIEW WITHIN 3 BUSINESS DAYS OF THE HOLD BEING PLACED.**

If the remedial sanctions are deemed inappropriate, within three business days of the hold being placed, the parolee shall be served actual notice of the charges against him or her accompanied by a short factual summary of the behavior; he or she shall be interviewed; an a ADA determination shall be made; the BPT form 1073 shall be completed, and parolee shall be provided with a written notice of rights regarding the revocation process and time frames. (Hereinafter referred to as "notice.")

The principles of "effective communication" apply to the revocation process. ADA accommodation must be provided for all parolees when necessary. In addition, all forms shall be printed in Spanish and English and a Spanish speaking person shall be available to interpret and explain the forms to the parolee where necessary.

**THE PROBABLE CAUSE HEARING SHALL BE CONDUCTED WITHIN 10 BUSINESS DAYS FOLLOWING THE DATE OF ACTUAL SERVICE OF THE NOTICE OF CHARGES, THE ADA DETERMINATION, AND THE NOTICE OF RIGHTS.**

Within the first 3 days after the parolee has been served with notice, the violation report must be completed and submitted to the Parole Unit supervisor.

On or before the fourth business day, the Unit Supervisor must review the report and: (1) determine if there is sufficient basis for the revocation to go forward; (2) determine if the report is accurate, complete, and contains the correct Title 15 violation sections; and (3) review the report and consider whether or not remedial sanctions/community based treatment is appropriate in lieu of proceeding with referral to the Board of Prison Terms with a recommendation that the parolee be returned to prison.

On or before the 4th business day, the revocation packet is reviewed by the Parole Administrator to determine whether or not there is a sufficient basis for the case to move forward and whether or not Remedial Sanctions/Community Based Treatment is appropriate at this juncture.

On or before the 5th business day, the revocation packet is forwarded to the decentralized revocation unit where the parolee is being held.

On or before the 6th business day, the parolee (including non-Armstrong class members) shall be appointed an attorney and the attorney shall be provided with a copy of the revocation packet, which shall contain a signed copy of the notice of charges, notice of revocation of rights, and a completed BPT 1073.

Attorney shall meet with the Parolee, provide the parolee with a copy of the revocation packet, and shall communicate any offer or offers made by the Board of Prison Terms Deputy Commissioner/Parole Administrator prior to the probable cause hearing.

In the event the parolee can make a sufficient offer of proof of a complete defense to the charges the Board of Prison Terms Deputy Commissioner/Parole Administrator, an expedited Probable Cause Hearing with Documentary and/or live testimony shall be scheduled. As an example, if the parole has uncontroverted documentary evidence that he or she was in Santa Rita jail when this violation allegedly occurred in Los Angeles, parolee shall be allowed to present such evidence at an expedited probable cause hearing between the 6th and 8th business day or at the earliest time possible thereafter if parolee is unable to produce such evidence by the 6th to 8th day.

On or before the 6th to 8th business day, a return to custody assessment (an offer) is made by the Deputy Commissioner/Parole Administrator, and the offer shall be communicated to the parolee's attorney.

On or before the 10th business day, a Probable Cause Hearing shall be held with the Deputy Commissioner/Parole Administrator, the parolee, and parolee's attorney.

The Deputy Commissioner/Parole Administrator conducting the hearing shall be the same Deputy Commissioner/Parole Administrator who made the return to custody assessment (offer) where practicable.

Parolee shall be permitted to present documentary evidence and hearsay testimony by way of offer of proof through his or her attorney in mitigation or as a partial or complete defense to the charges and/or the proposed disposition.

The Deputy Commissioner/Parole Administrator shall have the complete range of options to resolve the case. (Continue on parole, credit for time served, release from custody with pending charges, remedial sanctions/community based treatment, reduce the offer downward, dismiss some or all of the charges)

The Deputy Commissioner shall not have the authority to adjust the return to custody assessment upward at or during the probable cause hearing.

Parolee shall have the right to waive time as to any of these hearing time constraints with or without good cause.

Attorney shall have the right to a continuance upon the showing of good cause in the absence of his or her client's consent in cases of emergency or illness or upon such other showing that the Deputy Commissioner/Parole Administrator can make a finding of good cause.

There shall be a written record of this proceeding and the basis for any decisions made therein.

It is not necessary that the Probable Cause Hearing be audio/video recorded.

If at the conclusion of the probable cause hearing, the parolee has rejected the offer, parolee shall provide the Deputy Commissioner/Parole Administrator with a list of witnesses he or she would like to call at the revocation hearing. The location of the hearing shall be determined (within 50 miles of the violation), and the Deputy Commissioner/Parole Administrator shall make an independent ADA accommodation determination.

REVOCATION HEARING

The revocation hearing shall be held at the earliest possible time and in no case later than 35 calendar days after the parole hold has been placed.

DECLARATION OF SERVICE BY U.S. MAIL

Case Name: JERRY VALDIVIA, et al. v. GRAY DAVIS, et al.

No.: USDC E.D. #CIV-S-94-0671 LKK GGH P

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 21, 2003, I served the attached

DEFENDANTS' REVISED REMEDIAL PLAN

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, San Francisco, California 94102-7004, addressed as follows:

Michael W. Bien, Esq.
Rosen, Bien & Asaro
155 Montgomery Street, 8th Floor
San Francisco, CA 94104

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

Stephen J. Perrello, Jr.
P.O. Box 880738
San Diego, CA 92168

Alexander L. Landon
Law Offices of Alex Landon
2442 Fourth Avenue
San Diego, CA 92101

Karen Kennard
Kristen A. Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 21, 2003, at San Francisco, California.

A. ALBANO — Declarant

Albano — Signature

40004164.wpd

DECLARATION OF SERVICE BY U.S. MAIL

Case Name: *Jerry Valdivia, et al. v. Gray Davis, et al.*

No.: USDC, Eastern District of California, Case No. CIV-S-94-0671 LKK GGH P

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On November 18, 2003, I served the attached

STIPULATED ORDER FOR PERMANENT INJUNCTIVE RELIEF

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, P.O. Box 944255, Sacramento, California 94244-2550, addressed as follows:

Karen L. Kennard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

Michael W. Bien
Rosen, Bien & Asaro
155 Montgomery Street, 8th Floor
San Francisco, CA 94104

Alex Landon
Law Offices of Alex Landon
2442 Fourth Avenue
San Diego, CA 92101

Stephen J. Perrello, Jr.
Law Offices of Stephen J. Perello
P.O. Box 880738
San Diego, CA 92168

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 18, 2003, at Sacramento, California.

R. Wells — Declarant

R Wells — Signature

10023232.wpd

ndd

United States District Court
for the
Eastern District of California
March 9, 2004

* * CERTIFICATE OF SERVICE * *

2:94-cv-00671

Valdivias

v.

Schwarzenegger

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on March 9, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Stephen J Perrello Jr AR/LKK
Law Office of Stephen J Perrello
P O Box 880738
San Diego, CA 92168

Alexander L Landon
Law Offices of Alex Landon
2442 Fourth Avenue
San Diego, CA 92101

Karen Kennard
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111

Michael W Bien
Rosen Bien and Asaro
155 Montgomery Street
Eighth Floor
San Francisco, CA 94104

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

William Vernon Cashdollar
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA 94244-2550

Erika C Aljens
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA 94244-2550

Benjamin Laurence Pavone
Law Office of Benjamin Pavone
7676 Hazard Center Drive
Fifth Floor
San Diego, CA 92108-4503

Thomas Stuart Patterson
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

John T Philipsborn
Law Offices of John T Philipsborn
507 Polk Street
Suite 250
San Francisco, CA 94102

Kristen A Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Peter D Nussbaum
Altshuler Berzon Nussbaum Rubin and Demain
177 Post Street
Suite 300
San Francisco, CA 94108

Mark F Adams
San Diego Criminal
Defense Bar Association
962 Fifth Avenue
Suite 214
San Diego, CA 92101

Michael J McCabe
Criminal Defense Lawyers
Club of San Diego
2442 Fourth Avenue
San Diego CA 92101

Jack L. Wagner, Clerk

by: Deputy Clerk

EXHIBIT (O) 15

9/27/07; HEARING TAPE

# DECLARATION OF SERVICE BY MAIL

I, Manny Valenzuela, the undersigned, declare:
Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

CDC No. V-72187 Housing G-282
San Quentin State Prison
San Quentin, CA 94974

On 10/15/07 , ____, I served the following document(s):
Month/Day Year

(1) PETITION FOR WRIT OF HABEAS CORPUS
(2) EXHIBITS (A) THROUGH (N)
(3) BPH HEARING TAPE FROM 9-14-07
(4) PRAYER FOR RELIEF
(5) DECLARATION OF SERVICE BY MAIL

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

Marin County Superior Court
Criminal Division
P.O. Box 4988
San Rafael, Calif.
94913

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this 15th day of October, 2007, at San Quentin, CA, County of Marin.

[signature]
Signature of declarant

FROM: THEODORE T. KING # V30188
SAN QUENTIN STATE PRISON
SAN QUENTIN CA, 94964

10/15/07

ATTENTION CLERK OF THE SUPERIOR COURT, COUNTY OF MARIN.

THIS IS TO INFORM YOU THAT ON 10-3-07, I FILED A PETITION FOR WRIT OF HABEAS CORPUS, PETITION # SC.156010A.

I AM NOW VERY CONFIDENT IN MY BELIEF THAT THE ORIGINAL PETITION IS INADEQUATE AS IT WAS LACKING (1) PRAYER FOR RELIEF (2) FULL STATEMENT OF THE CASE (IN IT'S ENTIRETY) AND EXHIBITS # C # J # K # L # M # N ALONG WITH THE HEARING TAPE.

I AM NOW REQUESTING OF THE CLERK TO SUBSTITUTE THIS NEWER AND PROPER VERSION OF SAID WRIT, AS I AM NOW CONFIDENT IT IS PROPER IN IT'S FULL FORM AND CONTENT AS A COMPLETE PETITION.

I ALSO REQUEST A STAMPED AND FILED COPY FOR MY OWN PERSONAL FILES.

I THANK YOU FOR YOUR TIME AND UNDERSTANDING IN THIS MATTER.

RESPECTFULLY SUBMITTED
DATED: 10-15-07 THEODORE FRANKLYN KING
Theodore F. King # V30188

PEACE TO YOU AND YOURS = MINDS - BODY AND SOULS.
A.K.A. EAST BAY GHOST RIDA.

# DECLARATION OF SERVICE BY MAIL

I, G. ANDERSON, the undersigned, declare:
Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

CDC No. T 59848 Housing 2-H-6-up
San Quentin State Prison
San Quentin, CA 94974

On 01-10-08, ______, I served the following document(s):
Month/Day Year

(4) PETITION FOR WRIT OF HABEAS CORPUS
EXHIBITS # A # THROUGH # P
(2) BPH HEARING TAPES (1) FROM 9-14-07 (2) FROM 9-27-07
PRAYER FOR RELIEF
DECLARATION OF SERVICE BY MAIL

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

NO POSTAGE (NON SAFISHENT FUNDS) NSF

CLERK OF THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF CALIFORNIA,
450 GOLDEN GATE AVE,
BOX 36060
SAN FRANCISCO, CA, -94102-

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this 10th day of JAN, 2008, at San Quentin, CA, County of Marin.

G. Anderson
Signature of declarant



THEODORE F. KING # V30188
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA
94964
LEGAL MAIL
UNITED STATES POSTAGE
PITNEY BOWES
$ 06.42⁰
02 1M
0004248283 JAN 16 2008
MAILED FROM ZIP CODE 94964
CLERK OF THE UNITED STATES
DISTRICT COURT OF THE NORTHERN
DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE.
BOX 36060
SAN FRANCISCO, CA 94102
SI